HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMPASS, INC. AND COMPASS WASHINGTON, LLC<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWEST MULTIPLE LISTING SERVICE,<br><br>Defendant. | Case No. 2:25-cv-00766-JNW<br><br>DEFENDANT NWMLS' REPLY IN SUPPORT OF MOTION TO DISMISS |

REPLY IN SUPPORT OF MOTION TO DISMISS
(Case No. 2:25-cv-00766-JNW)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT ........................................................................................................................... 2

    I.    Compass Fails to State a Federal or State Antitrust Claim. .................................. 2

        A.    Compass misconstrues antitrust law. ........................................................ 2

            1.    Compass mischaracterizes statements from enforcers and unrelated organizations. ................................................................ 2

            2.    Compass relies entirely on the distinguishable PLS.com case. ................................................................................................. 3

        B.    Compass fails to allege harm to competition in a relevant market. ........... 4

            1.    Compass fails to plead a cognizable relevant geographic market. ................................................................................................. 5

            2.    Compass fails to plead NWMLS' conduct caused any harm to competition. .................................................................................... 6

                a.    Compass only alleges it should be entitled to free ride. ............................................................................................. 6

                b.    Compass fails to allege harm to both sides of the putative relevant market. ........................................................ 8

        C.    Compass fails to plead antitrust injury. ..................................................... 9

        D.    Compass fails to plead other elements of a Section 2 claim. ................... 10

            1.    Compass fails to plead NWMLS committed unlawful exclusionary conduct. ................................................................... 10

            2.    NWMLS has no antitrust duty to deal with Compass. ................. 11

    II.    Compass Fails to Allege Its State-Law Tort Claims. ........................................... 12

CONCLUSION ..................................................................................................................... 13

REPLY IN SUPPORT OF MOTION TO DISMISS - i
(Case No. 2:25-cv-00766-JNW)

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

# TABLE OF AUTHORITIES

**Cases**

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
    472 U.S. 585 (1985)..................................................................................................11

*Bhan v. NME Hosps., Inc.*,
    929 F.2d 1404 (9th Cir. 1991) ......................................................................................5

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1192 (9th Cir. 2012) ......................................................................................6

*Cal. Dental Ass'n v. FTC*,
    526 U.S. 756 (1999)......................................................................................................5

*Eastman Kodak Co. v. Image Technical Services, Inc.*,
    504 U.S. 451 (1992)....................................................................................................11

*Fed. Trade Comm'n v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ........................................................................................7

*Greensun Grp., LLC v. City of Bellevue*,
    436 P.3d 397 (Wash. App. 2019)................................................................................12

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
    626 F.3d 1327 (11th Cir. 2010) ....................................................................................6

*Kieburtz & Assocs., Inc. v. Rehn*,
    842 P.2d 985 (Wash. App. 1992)................................................................................12

*Leingang v. Pierce Cnty. Med. Bureau, Inc.*,
    930 P.2d 288 (Wash. 1997).........................................................................................12

*Life Designs Ranch, Inc. v. Sommer*,
    364 P.3d 129 (Wash. App. 2015)................................................................................12

*MetroNet Servs. Corp. v. Qwest Corp.*,
    383 F.3d 1124 (9th Cir. 2004) ....................................................................................10

*Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*,
    63 F.3d 1540 (10th Cir. 1995) ....................................................................................10

REPLY IN SUPPORT OF MOTION TO DISMISS - ii
(Case No. 2:25-cv-00766-JNW)

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

*name.space, Inc. v. Internet Corp. for Assigned Names & Nos.*, No. 12-8676, 2013 WL 2151478 (C.D. Cal. Mar. 4, 2013), *aff'd*, 795 F.3d 1124 (9th Cir. 2015) ...................................................................................................8

*In re National Football League's Sunday Ticket Antitrust Litigation*, 933 F.3d 1136 (9th Cir. 2019) ..................................................................................10, 11

*Ohio v. Am. Express Co.*, 585 U.S. 529 (2018) ...............................................................................................7, 8

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370 (7th Cir. 1986) ..............................................................................................10

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438 (2009) ..................................................................................................11, 12

*Papasan v. Allain*, 478 U.S. 265 (1986) .............................................................................................................6

*Pleas v. City of Seattle*, 774 P.2d 1158 (Wash. 1989) ...............................................................................................12

*PLS.com, LLC v. National Association of Realtors*, 32 F.4th 824 (9th Cir. 2022) ...................................................................................1, 3, 4, 7

*Polk Bros., Inc. v. Forest City Enterprises, Inc.*, 776 F.2d 185 (7th Cir. 1985) .................................................................................................7

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210 (D.C. Cir. 1986) ..............................................................................................7

*Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB (W.D. Mo. Oct. 31, 2023), ECF 1294 .............................................3

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780 (9th Cir. 1996) ................................................................................................9

*Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 279 P.3d 487 (Wash. App. 2012) ......................................................................................12

*Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961) .............................................................................................................5

*Texaco Inc. v. Dagher*, 547 U.S. 1 (2006) ................................................................................................................5

REPLY IN SUPPORT OF MOTION TO DISMISS - iii
(Case No. 2:25-cv-00766-JNW)

*Verizon Commc'ns v. Law Offs. of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004)...................................................................................................11

*Westmark Dev. Corp. v. City of Burien*,
   166 P.3d 813 (Wash. App. 2007).................................................................................12

**Statutes**

Sherman Act..........................................................................................................1, 10, 11

**Rules**

Fed. R. Civ. P. 2...........................................................................................................11

Fed. R. Civ. P. 4...........................................................................................................11

Fed. R. Civ. P. 6...........................................................................................................11

Fed. R. Civ. P. 8.............................................................................................................8

**Other Authorities**

Federal Trade Commission, The Residential Real Estate Brokerage Industry (Dec.
   1983), cover page, https://www.ftc.gov/system/files/ftc_gov/pdf/The-
   Residential-Real-Estate-Brokerage-Report--Butters-Report.pdf..................................2

Jean-Charles Rochet & Jean Tirole, *Platform Competition in Two-Sided Markets*,
   1 J. Eur. Econ. Assn. 990, 991-93 (2003) ...................................................................8

Organisation for Economic Co-operation and Development, Roundtable on Two-
   Sided Markets, Note by the United States submitted to the Competition
   Committee, ¶ 23 (June 4, 2009),
   http://justice.gov/sites/default/files/atr/legacy/2011/05/12/270430.pdf ......................8

REPLY IN SUPPORT OF MOTION TO DISMISS - iv
(Case No. 2:25-cv-00766-JNW)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

For all its bluster and obfuscation, Compass' Complaint is simple: Compass claims the Sherman Act *requires* that NWMLS give it license to display all other member brokers' listings on its website while Compass hoards its own Private Exclusive listings from other members. In other words, Compass wants what is good for the goose but denies the same benefit to the gander. NWMLS' rules do nothing more than make a broker benefiting from the listings of others share its own listings so that others may receive a commensurate benefit. That approach treats all brokers the same, gives sellers and buyers access to the same market information, and promotes competition among brokers. Rather than abide by those rules, Compass wants a special exemption for itself. Neither federal antitrust law nor Washington state law grants such relief.

Compass' antitrust arguments rely almost entirely on *PLS.com, LLC v. National Association of Realtors*, 32 F.4th 824 (9th Cir. 2022). But notwithstanding the many cherry-picked quotes from *PLS.com,* Compass never actually demonstrates how the case applies here. It does not. Compass also fails to demonstrate how it adequately pled key elements required to state rule of reason claims under Sections 1 and 2 of the Sherman Act and Washington's analogs, including Compass':

- failure to allege a cognizable relevant antitrust market;
- failure to allege harm to competition, not just to Compass;
- failure to allege cognizable antitrust injury;
- failure to allege unlawful exclusionary conduct; and
- failure to allege NWMLS owes any duty to deal on Compass' preferred terms.

Compass' state-law tort claims fare no better. The Complaint alleges only generalities, not facts, without identifying any contract or business expectancy with which NWMLS supposedly interfered. Further, Compass' allegations establish that NWMLS acted in good-faith reliance on its own rules, to which Compass agreed when it voluntarily joined as a member-owner of NWMLS.

REPLY IN SUPPORT OF MOTION TO DISMISS - 1
(Case No. 2:25-cv-00766-JNW)

Compass' Opposition, like the Complaint, also reinforces the procompetitive benefits NWMLS provides to all participants in real estate transactions, including home sellers, buyers, and their brokers. Nor can Compass effectively amend the Complaint by asserting different facts regarding its Private Exclusive and "Pre-Marketing" programs to bring the claims within antitrust or state tort laws. Respectfully, the Court should dismiss this case with prejudice.

## ARGUMENT

### I. Compass Fails to State a Federal or State Antitrust Claim.

Compass attempts to salvage its doomed antitrust claims in three ways: (1) injecting information not contained in its Complaint; (2) recasting its allegations to conform to clearly distinguishable case law; (3) treating legal conclusions in its Complaint as factual allegations. All are unavailing.

### A. Compass misconstrues antitrust law.

*1. Compass mischaracterizes statements from enforcers and unrelated organizations.*

Compass' recounting of the history of mandatory submission rules is a red herring. Compass makes much of the 1983 "Butters Report," an FTC staff report that has no legal force and "do[es] not necessarily reflect the views of the [FTC]…." Federal Trade Commission, The Residential Real Estate Brokerage Industry (Dec. 1983), cover page, https://www.ftc.gov/system/files/ftc_gov/pdf/The-Residential-Real-Estate-Brokerage-Report--Butters-Report.pdf. The report pre-dates the advent of the internet, and concludes that "mandatory listing requirements" prevent "vest pocket listings"—such as the Private Exclusives Compass touts as new and innovative—which "help[] in suppressing a practice which can do substantial injury to consumers." Butters Report at 130-31.

Compass also cites National Association of Realtors ("NAR") policies allowing "office exclusive" listings. NWMLS, however, is not affiliated with NAR, and the Complaint fails to allege otherwise. NAR is neither a governmental body nor a beacon of antitrust guidance, given

REPLY IN SUPPORT OF MOTION TO DISMISS - 2
(Case No. 2:25-cv-00766-JNW)

the recent antitrust judgment against its mandatory commission rules, resulting in a jury verdict totaling $5.4 billion. Jury Verdict, *Sitzer v. Nat'l Ass'n of Realtors*, No. 4:19-cv-00332-SRB (W.D. Mo. Oct. 31, 2023), ECF 1294. NAR's policies are irrelevant here.

### 2. Compass relies entirely on the distinguishable *PLS.com* case.

Compass puts all its antitrust eggs in one basket: *PLS.com*. But amidst its ubiquitous citations to *PLS.com*, Compass never explains the analogy—and with good reason. Despite generally involving residential real estate, the case fails to support Compass' claims.

*PLS.com* involved an alleged group boycott in which NAR-affiliated MLSs owned by local Realtor Associations ("NAR MLSs") purportedly agreed to stifle competition from a rival startup MLS ("PLS MLS"). Three critical facts distinguished the PLS MLS from NAR MLS: (1) agents could submit "pocket listings" with very limited property information to PLS MLS; (2) PLS MLS had its own public-facing website to display listings nationwide; and (3) PLS MLS was open to all agents and at a lower cost than NAR MLSs. 32 F.4th at 830. Two years after its founding, PLS MLS claimed that in response to the rise of pocket listings NAR adopted a Clear Cooperation Policy ("CCP") requiring brokers of NAR MLSs to submit all listings to the relevant NAR MLS within one day of publicly marketing the listing, thereby eliminating nascent competition from PLS MLS. *Id*. PLS MLS alleged that after CCP, listings were systematically removed from PLS MLS and placed on NAR MLSs. *Id*. at 830-31. The Ninth Circuit held these allegations survived a motion to dismiss. *Id*. at 836-37. In so holding, it reiterated the orthodox antitrust law that while the rule of reason is the default standard for all agreements, in limited situations group boycotts may be *per se* unlawful. *Id*. Nothing in the Complaint brings Compass' claims within those narrow circumstances.

Compass' cherry-picked quotes from *PLS.com* obscure that the case has no relevance here because there are no facts—alleged or otherwise—establishing a group boycott. "The classic group boycott is a concerted attempt by a group of competitors at one level to protect themselves from competition from non-group members who seek to compete at that level. Typically, the

REPLY IN SUPPORT OF MOTION TO DISMISS - 3
(Case No. 2:25-cv-00766-JNW)

boycotting group combines to deprive would-be competitors of a trade relationship *which they need in order to enter (or survive in) the level wherein the group operates*." *Id*. at 834 (cleaned up; emphasis added).

Compass is a brokerage, not an MLS. Compl. ¶¶ 20-21. Moreover, the Complaint concedes, and Compass' Opposition does not dispute, that NWMLS briefly suspended only the IDX data feed license for Compass to display other NWMLS member listings on Compass' public-facing websites. NWMLS never paused, suspended, or terminated Compass' membership in NWMLS or its access to the NWMLS listings database for members, which Compass' Complaint admits is essential to a brokerage seeking to represent both buyers and sellers. *Id*. ¶ 33. Thus, NWMLS took no actions preventing Compass from competing as a brokerage or depriving it of trade relationships it needed to survive as a brokerage. Rather Compass remained able to list homes for sale on NWMLS *and* to access all NWMLS members' listings needed to assist its buyers. Mot. 7-8.

To the extent Compass attempts to amend its pleading through its Opposition to assert that Compass is, in fact, a participant in the market for MLSs, *see* Opp. 8 ("NWMLS has blocked competition between brokers and with NWMLS itself"), that is contrary to its pleading obligations. Furthermore, Compass is a broker member of NWMLS. NWMLS, however, owes no member any duty to assist its efforts to develop into a competing MLS under the antitrust laws. *Infra* I.D.2.

These factual distinctions with *PLS.com* defeat any claim that application of *per se* group boycott precedent should apply here. Compass offers no other legal support for its contention that NWMLS' conduct is *per se* unlawful. Accordingly, this case is firmly within the rule of reason, like virtually all other restraints analyzed under the antitrust laws.

**B. Compass fails to allege harm to competition in a relevant market.**

Because this is a rule of reason case, Compass must plead a relevant market. *Contra* Opp. 14-15; *see PLS.com*, 32 F.4th at 838 ("For rule of reason claims based on indirect evidence . . . a plaintiff must define the relevant market and show that the defendant has market power in that

REPLY IN SUPPORT OF MOTION TO DISMISS - 4
(Case No. 2:25-cv-00766-JNW)

market to prove that the challenged practice is anticompetitive."). An antitrust plaintiff gets a pass from that obligation only when "an observer with even a rudimentary understanding of economics" can conclude that the challenged practices facially "have an anticompetitive effect on customers and markets." *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 770 (1999). Compass comes nowhere close to pleading such practices. In fact, it is quite the opposite. Compass concedes that, NWMLS rules forbid it from free-riding on its competitors' listings while acknowledging the obvious procompetitive benefits associated with NWMLS' rules. *See Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991) (allegations that one person no longer worked for the employer were evidence of harm to one competitor but "not enough to demonstrate actual detrimental effects on competition"). Compass further claims NWMLS' very existence as "a horizontal agreement among … competing brokers" obviates its requirement to define a relevant market. Opp. 10. But simply suing a lawful joint venture is not a free pass into *per se* or truncated rule of reason territory. *Texaco Inc. v. Dagher*, 547 U.S. 1, 3 (2006) (setting of joint ventures prices by competing owners not *per se* unlawful); *Cal. Dental Ass'n,* 526 U.S. at 770. In short, the Complaint is doomed as a matter of law because Compass fails to plead facts establishing a relevant geographic market, and Compass alleges only harm to itself, not competition.

               1.     *Compass fails to plead a cognizable relevant geographic market.*

As set forth in NWMLS' Motion, Compass fails to plead a relevant geographic market, which is the "area of effective competition." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327–28 (1961). Compass alleges a geographic market limited to the "city of Seattle and King County." Compl. ¶ 79. But that conclusion is inconsistent with its assertion that its own Private Exclusive program markets homes nationally to all its agents and "millions of buyers." *Id*. ¶¶ 20, 45, 49. Moreover, while claiming that "a Seattle-area broker would not use a listing service that does not cater to the Seattle area," (Opp. 11), Compass ignores its own Private Exclusive program that markets homes nationally to all Compass agents and their "millions of buyers"—in other words, *Compass is the "Seattle-area broker"* who seeks to market properties outside the Seattle

REPLY IN SUPPORT OF MOTION TO DISMISS - 5
(Case No. 2:25-cv-00766-JNW)

area. The Complaint fatally gerrymanders its geographic market, and Compass is stuck with it. *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1338 (11th Cir. 2010) (denying plaintiff discovery to redefine the market alleged "because it would absolve [plaintiff] of the responsibility under *Twombly* to plead facts 'plausibly suggesting' the relevant submarket's composition").

Compass relies on legal conclusions in the Complaint to claim that it "alleged that this geographic market satisfied the hypothetical monopolist test." Opp. 11 (citing Compl. ¶¶ 77-78). Compass, however, alleges no facts in support of that conclusion, relying only on legal platitudes. This Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

    2.  *Compass fails to plead NWMLS' conduct caused any harm to competition.*

Compass agrees with NWMLS that the Complaint only pleads harm to Compass and its affiliates, not harm to competition. Opp. 18 (hurting "homesellers and residential real estate brokers"). But "plaintiffs must plead an injury to competition beyond the impact on the plaintiffs themselves." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012). Compass never alleges any consumer injury. It does not allege that consumers have paid higher commissions or seen output of brokerage or MLS services reduced. As a result, Compass is left with allegations of harm to "residential real estate brokers," but critically, Compass' Complaint identifies no broker harmed beyond itself. And the only alleged harm is also Compass-centric: Compass may not pocket its own listings to double-end transactions and drive-up home prices while free-riding on the listings of all other NWMLS members. *See* Compl. ¶ 43.

    *a. Compass only alleges it should be entitled to free ride.*

Compass complains that NWMLS' rules prevent it from withholding its own listings while simultaneously claiming it should have unfettered access to all other NWMLS member listings, including the license to display other members' listings on Compass' public-facing websites. *See id.* ¶¶ 42, 71, 74, 89. That is free-riding: the extraction of value without payment. But courts have long recognized that this common inefficiency in joint ventures can be addressed through

REPLY IN SUPPORT OF MOTION TO DISMISS - 6
(Case No. 2:25-cv-00766-JNW)

organizational rule making, thereby enhancing competition. *See Ohio v. Am. Express Co.* ("*Amex*"), 585 U.S. 529, 531 (2018) ("nothing inherently anticompetitive" about restrictions imposed to prevent free-riding); *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 221-23 (D.C. Cir. 1986); *Polk Bros., Inc. v. Forest City Enterprises, Inc.,* 776 F.2d 185 (7th Cir. 1985) ("The Supreme Court has recognized the control of free riding is a legitimate objective of a system of distribution." (collecting cases)). Compass again invokes *PLS.com*, claiming that the Ninth Circuit "rejected" justifications of rules prohibiting free-riding. Opp. 13-14. But that is impossible because there was no way to free ride in *PLS.com*, and the Ninth Circuit's decision never addressed free-riding. *Supra* I.A.2.

The allegations here are straightforward: Compass always maintained access to all NWMLS listings, but Compass deprived NWMLS members of access to all of Compass' listings both in the NWMLS members' listing database and from the licensed feed to display on their public-facing websites. Mot. 7 (citing Compl. ¶¶ 68, 93). Such allegations fail to raise cognizable anticompetitive harm; and the antitrust laws cannot be used to grant a single competitor a competitive advantage over all others. *See Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 993 (9th Cir. 2020).

Because Compass' arguments lack legal merit, it ludicrously attempts to turn the tables, claiming NWMLS is the free rider. Opp. 14. That frivolous argument fails to resuscitate its Complaint, and is flatly contradicted by Compass' own allegations that NWMLS provides members—like Compass—significant value. Compl. ¶ 25 (NWMLS "offers a comprehensive suite of tools, including a property listing system, public records database, online showing scheduling, electronic forms and signatures, mobile applications, cloud storage, data analytics, keybox services, and regional member service centers."), ¶ 33 (describing benefits of NWMLS' listings database).

REPLY IN SUPPORT OF MOTION TO DISMISS - 7
(Case No. 2:25-cv-00766-JNW)

> b. *Compass fails to allege harm to both sides of the putative relevant market.*

Antitrust law requires courts assessing harm to competition in a two-sided market to examine both sides of the market. *See Amex,* 585 U.S. at 546. Having no counter to binding Supreme Court precedent that compels dismissal of the Complaint, Compass boldly claims that this Court cannot apply *Amex* because Compass strategically drafted the Complaint to omit reference to buyers. Opp. 15. Nonsense. Rule 8 of the F.R.C.P. does not turn courts into ostriches, requiring that they bury their heads in the sand and ignore market reality; there cannot be a transaction by a seller without a buyer. Real estate is the quintessential two-sided market. Contrary to Compass' assertion, NWMLS does not simply rely on "conclusory statements in two academic papers" for this principle, *contra id.*; NWMLS relies on the same articles the Supreme Court used when deciding *Amex* and on which the Department of Justice has also relied. *See Amex*, 585 U.S. at 535-36 (citing Jean-Charles Rochet & Jean Tirole, *Platform Competition in Two-Sided Markets*, 1 J. Eur. Econ. Assn. 990, 991-93 (2003)); *see also* Organisation for Economic Co-operation and Development, Roundtable on Two-Sided Markets, Note by the United States submitted to the Competition Committee, ¶ 23 (June 4, 2009), http://justice.gov/sites/default/files/atr/legacy/2011/05/12/270430.pdf. The law requires Compass to allege facts that NWMLS' rules harmed both buyers and sellers of real estate. Compass fails to do so.

Knowing its assertion that buyers are not part of the market is unlikely to carry the day, Compass points to allegations that pre-marketing can identify a too-high asking price and sell homes faster. Opp. 15. But Compass' core factual allegations say instead that its programs will drive up prices for buyers by thousands of dollars per transaction. Compl. ¶¶ 6, 8, 40, 43 (establishing Private Exclusive/Coming Soon programs increase prices for homes by 2.9%). The failure of Compass to point to any harm to buyers from NWMLS' rule enforcement is not "irrelevant," Opp. 15, but instead dispositive of its antitrust claims, *see name.space, Inc. v. Internet*

REPLY IN SUPPORT OF MOTION TO DISMISS - 8
(Case No. 2:25-cv-00766-JNW)

*Corp. for Assigned Names & Nos.*, No. 12-8676, 2013 WL 2151478, at *6 (C.D. Cal. Mar. 4, 2013), *aff'd*, 795 F.3d 1124 (9th Cir. 2015); *see also SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (dismissal is "'appropriate where the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose'" (citation omitted)).

### C. Compass fails to plead antitrust injury.

Compass' failure to allege harm to competition reinforces its failure to allege antitrust injury. Compass fails to show antitrust injury when accepting as true, as the Court must, paragraph 69 of the Complaint: "Access to this data is critical for any real estate broker or brokerage to do business." *See also* Compl. ¶ 15. If brokerages, including Compass, must have access to NWMLS' listings to compete, then NWMLS facilitates competition: more listings means more competition, and according to Compass, lower prices for consumers. Compl. ¶¶ 8, 43. Allegations that Compass and sellers are harmed by NWMLS' practices which increase competition and drive down prices for consumers, are not cognizable antitrust injury. Compass claims it need only allege that NWMLS' conduct "reduced output" or "decreased quality." But the Complaint alleges no such facts. Nor could it, because NWMLS' requirement that brokers submit all listings has no effect on the quantity of listings or the quality of the properties for sale, or on the quantity or quality of brokers. In fact, the opposite is true—NWMLS levels the playing field for brokers such that they must compete on the price or quality of service because all have equivalent access to the same listings—not because one firm improperly hides their listings from other NWMLS members. And existing rules and policies, which Compass' Opposition ignores, already enable brokers to submit listings to NWMLS and accommodate sellers that require additional security, privacy, or other features identified as crucial in the Complaint.[1] Finally, even if the law were as Compass asserts (that alleging harm to Compass is enough to prove antitrust injury), Compass still failed to plead

---

[1] Compass never contests the Complaint incorporates NWMLS' Rules.

REPLY IN SUPPORT OF MOTION TO DISMISS - 9
(Case No. 2:25-cv-00766-JNW)

antitrust injury because Compass never actually lost access to any listings. *See id*. ¶ 98. The Complaint must be dismissed.

**D. Compass fails to plead other elements of a Section 2 claim.**

Compass' monopolization claims also fail. The Complaint is bereft of allegations that NWMLS engaged in exclusionary conduct or had a duty to deal with Compass on its desired terms.

*1. Compass fails to plead NWMLS committed unlawful exclusionary conduct.*

Compass fails to allege NWMLS committed any exclusionary act to obtain or maintain monopoly power in the relevant market. *See MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004). Exclusionary conduct is economically irrational business behavior that only harms the competitive process. *See Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Prof'l Publ'ns, Inc.*, 63 F.3d 1540, 1550 (10th Cir. 1995) (conduct not unlawful unless it lacks a "legitimate business justification"). Compass has not met that standard. It alleges only that NWMLS fairly enforced its rational rules that prohibit free-riding and to which Compass agreed. Mot. 18. Moreover, when Compass refused to share its listings with NWMLS, NWMLS only stopped sharing the automated IDX listing data feed, *while still allowing Compass and its brokers unfettered access to that same information through the NWMLS database.* That is not exclusionary conduct. *See Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 376 (7th Cir. 1986) (enforcing a contract against a breaching party is not exclusionary conduct under the Sherman Act).

Compass' reliance on *In re National Football League's Sunday Ticket Antitrust Litigation*, 933 F.3d 1136 (9th Cir. 2019), provides it no succor. *Sunday Ticket* stands for the long-standing proposition that a membership agreement that fixes prices or decreases output may be unlawful. *See id* at 1152. In *Sunday Ticket*, the NFL sold the television rights for out-of-market games exclusively to DirecTV. The Ninth Circuit held that plaintiffs stated a claim asserting that the DirecTV arrangement decreased output by restricting the amount of televised football. No such allegation exists in Compass' Complaint. In contrast, the Complaint here effectively concedes

REPLY IN SUPPORT OF MOTION TO DISMISS - 10
(Case No. 2:25-cv-00766-JNW)

NWMLS' challenged rules increase output by ensuring every broker can access and potentially bring a buyer for every available listing. *Sunday Ticket* fails to provide cover to a plaintiff weaponizing the Sherman Act to police *procompetitive* agreements.

      2. *NWMLS has no antitrust duty to deal with Compass.*

Except in extraordinarily limited circumstances, NWMLS is "free to choose the parties with whom [it] will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009).

Compass grasps at straws suggesting NWMLS has a duty to deal by pointing to *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), and *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992). But *Aspen Skiing* lies "at or near the outer boundary of § 2 liability" and is a "limited exception" to a firm's right to choose with whom to do business. *Verizon Commc'ns v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 399 (2004). And *Kodak* affirmatively recognizes that "[i]t is true that as a general matter a firm can refuse to deal with its competitors. . . . if there are legitimate competitive reasons for the refusal." 504 U.S. 483 n. 31. This case is neither *Aspen Skiing* nor *Kodak*. There is no years-long prior history of profitable dealing that NWMLS suddenly ended. To the contrary, Rule 2, which requires the mandatory submission of listings, has been a pillar of NWMLS for decades and Compass historically followed it. Compass alleges it then spent months attempting to amend Rule 2 without success. Compass' version of facts regarding Rules 4 and 6 further evince that it was the party seeking to subvert Rule 2's long-standing principles requiring brokers to submit all listings.

Nor is NWMLS restricting Compass' ability to deal with rival brokerages. *Contra* Opp. 19. Compass' Complaint never alleges that NWMLS suspended, terminated, or even paused Compass' membership in NWMLS, and Compass admits it retained full access to NWMLS' listings database at all times. It is Compass that restricted rival brokerages' ability to compete by hiding Private Exclusives—behavior Compass voluntarily agreed it would not do. NWMLS has not restricted Compass' ability to compete with rivals and the antitrust laws do not impose a duty

REPLY IN SUPPORT OF MOTION TO DISMISS - 11
(Case No. 2:25-cv-00766-JNW)

on NWMLS to deal with Compass differently than any other brokerage.  *See Pac. Bell*, 555 U.S. at 448-49.

## II.  Compass Fails to Allege Its State-Law Tort Claims.

Compass' state-law tort claims fare no better.  Compass failed to plead NWMLS' knowing interference with a valid contract or business expectancy held by Compass.  *See* Mot. 28–29 (*citing Kieburtz & Assocs., Inc. v. Rehn*, 842 P.2d 985, 989 (Wash. App. 1992); *Greensun Grp., LLC v. City of Bellevue*, 436 P.3d 397, 405 (Wash. App. 2019); *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997)).  Rather than rebut this argument, Compass confirms it: Compass relies on the same vague allegations that fail to identify a specific contract or business expectancy of which NWMLS had knowledge, and claims without basis that NWMLS' defense of its legal rights somehow interfered with the same.  *See* Opp. 20–21.  *Life Designs Ranch, Inc. v. Sommer*, 364 P.3d 129, 337 (Wash. App. 2015), provides Compass no help because there was no question the defendant knew of the plaintiff's business expectancy and acquired a domain name similar to the plaintiff's website to divert business and harm plaintiff.  *See id*. at 337–38.  For this reason alone, Compass' state-law tort claims are properly dismissed.

Compass also fails to establish—in its Complaint or Opposition—that NWMLS' good-faith enforcement of the rules to which Compass agreed constituted action with an improper purpose or means.  Washington law requires a plaintiff to plead that the defendant improperly interfered by breaching a duty of non-interference, and a defendant's good-faith exercise of its legal interests is insufficient as a matter of law.  *See Pleas v. City of Seattle*, 774 P.2d 1158, 1163 (Wash. 1989); *Leingang*, 930 P.2d at 300; *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 279 P.3d 487, 498 (Wash. App. 2012).  Compass acknowledges NWMLS was authorized to act following Compass' violations of NWMLS' rules, and offers only vague allusions to bad faith by NWMLS when discussing enforcement of those rules.  *See* Compl. ¶ 36.  Compass ignores that its own breaches of NWMLS' rule necessitated such action, and the caselaw it relies on is inapposite.  *See* Opp. 26–27; *Westmark Dev. Corp. v. City of Burien*, 166 P.3d 813, 823 (Wash. App. 2007)

REPLY IN SUPPORT OF MOTION TO DISMISS - 12
(Case No. 2:25-cv-00766-JNW)

(recognizing "a municipality may not 'single out' a building project and use its permitting process to block the project's development" (citation omitted)). Compass' state-law tort claims are properly dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

*I certify that this memorandum contains 4,197 words, in compliance with the Local Civil Rules.*

DATED: July 28, 2025

STOEL RIVES LLP

*s/ Vanessa Soriano Power*
Vanessa Soriano Power, WSBA No. 30777
Christopher R. Osborn, WSBA No. 13608
Harrison L.E. Owens, WSBA No. 51577
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500
Email: vanessa.power@stoel.com
Email: chris.osborn@stoel.com
Email: harrison.owens@stoel.com

Claude Szyfer (*pro hac vice*)
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
Telephone: 212-918-3000
Email: claude.szyfer@hoganlovells.com

Liam Phibbs (*pro hac vice*)
Hogan Lovells US LLP
Columbia Square
555 Thirteenth St. NW
Washington, DC 20004-1109
Telephone: 202-637-5600
Email: liam.phibbs@hoganlovells.com

*Attorneys for Defendant*
*Northwest Multiple Listing Service*

REPLY IN SUPPORT OF MOTION TO DISMISS - 13
(Case No. 2:25-cv-00766-JNW)

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

\\4160-9979-8879 v9