FILED (DROP BOX)

JUL 23 2024

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY  WESTERN DISTRICT OF WASHINGTON
                                    DEPUTY

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF WASHINGTON**

COMPASS, INC. AND COMPASS )
WASHINGTON, LLC, )
) Case No. 2:25-cv-00766-JNW
Plaintiffs, )
) BRIEF OF MINDCAST AI LLC
v. ) AS AMICUS CURIAE IN SUPPORT
) OF DEFENDANT NORTHWEST
NORTHWEST MULTIPLE LISTING ) MULTIPLE LISTING SERVICE
SERVICE, )
)
Defendant. )

## TABLE OF CONTENTS

I. STATEMENT OF INTEREST ................................................................................ 1

II. SUMMARY OF ARGUMENT ................................................................................ 2

III. ARGUMENT ............................................................................................................ 3

A. Compass's Claims Fail Due to Internally Contradictory Market Definitions ......... 3

B. NWMLS Rules Prevent Free-Riding and Enhance Competition ............................ 5

C. Compass's Multi-Jurisdictional Litigation Strategy Reveals

   Coordinated Institutional Manipulation .................................................................. 7

IV. CONCLUSION ........................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519 (1983) ........ 8

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ........................................ 6

*Chicago Professional Sports Ltd. Partnership v. National Basketball Ass'n*, 961 F.2d 667 (7th Cir. 1992) .................................................................................................................. 5

*Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977) ........................................... 8

*FTC v. Indiana Federation of Dentists*, 476 U.S. 447 (1986) ................................................. 8

*Nevada v. Department of Energy*, 400 F.3d 9 (D.C. Cir. 2005) ............................................. 1

*Ohio v. American Express Co.*, 585 U.S. 529 (2018) ................................................... 4, 5

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210 (D.C. Cir. 1986) ............ 6

*Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961) ........................................... 4

*Tanaka v. University of Southern California*, 252 F.3d 1059 (9th Cir. 2001) ........................ 4

**Statutes**

Sherman Antitrust Act, 15 U.S.C. §§ 1-7

**Rules**

Fed. R. Civ. P. 7

## I. STATEMENT OF INTEREST

MindCast AI LLC ("MCAI") is an artificial intelligence law and economics analysis platform specializing in cross-jurisdictional litigation analysis and institutional behavior modeling. MCAI provides independent analysis of complex antitrust matters, with particular expertise in identifying coordinated litigation campaigns across multiple federal jurisdictions.

MCAI has no financial interest in the outcome of this litigation and seeks to assist the Court under established amicus curiae principles. *See Nevada v. Department of Energy*, 400 F.3d 9, 15 (D.C. Cir. 2005) (recognizing value of independent amicus analysis in complex regulatory matters).

MCAI has substantial interest in this matter because its analysis has identified that Compass's lawsuit against NWMLS is part of a coordinated multi-jurisdictional strategy. Simultaneously with this action, Compass has filed parallel litigation against Zillow Group, Inc. in the Southern District of New York. *See Compass, Inc. v. Zillow Group, Inc.*, Case No. 1:25-cv-05425 (S.D.N.Y. filed June 23, 2025). Both cases advance substantially similar claims challenging transparency requirements that limit Compass's "Private Exclusive" business model.

As an independent AI analysis platform without financial relationships or conflicts with any real estate industry participants, MCAI offers a perspective unavailable from traditional industry participants or legal counsel. MCAI's analysis reveals strategic patterns in Compass's litigation approach that warrant this Court's consideration in evaluating Defendant's Motion to Dismiss.

## II. SUMMARY OF ARGUMENT

Compass's antitrust claims suffer from fundamental deficiencies that MCAI's cross-jurisdictional analysis illuminates. First, Compass advances internally contradictory geographic market definitions, claiming injury in a narrow "Seattle and King County" market while simultaneously operating a nationwide marketing strategy for the very listings at issue. This contradiction undermines the foundation of its antitrust claims.

Second, NWMLS's challenged rules prevent free-riding rather than restrict competition. Compass seeks access to competitors' listings while withholding its own through "Private Exclusive" arrangements—classic free-riding behavior that courts have consistently held enhances rather than restricts market competition.

Third, MCAI's multi-jurisdictional analysis reveals that Compass's litigation strategy employs deliberate venue fragmentation to prevent comprehensive judicial review. By pursuing substantially similar claims in distant federal jurisdictions, Compass ensures that no single court can evaluate the full scope of its coordinated campaign to dismantle market transparency requirements while preserving its own exclusive access advantages.

## III. ARGUMENT

### A. Compass's Claims Fail Due to Internally Contradictory Market Definitions

Compass's antitrust claims rest upon a geographic market definition that its own business model contradicts. Compass defines the relevant market as "the city of Seattle and King County," yet simultaneously operates its challenged "Private Exclusive" program by marketing these same listings to its "nationwide network of 34,000 agents and their millions of clients." *See* Complaint ¶¶ 42, 49, 79.

This contradiction is fatal to Compass's antitrust standing. Proper geographic market definition requires identification of the actual "area of effective competition." *Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 327-28 (1961). A plaintiff cannot credibly claim antitrust injury in a narrow local market while simultaneously operating a business model that depends fundamentally on nationwide networks to generate competitive advantages.

The Ninth Circuit has consistently rejected artificially narrow geographic market definitions that contradict plaintiffs' actual business practices. *Tanaka v. University of Southern California*, 252 F.3d 1059, 1063-64 (9th Cir. 2001) (rejecting local market definition where plaintiff's conduct demonstrated broader geographic scope). Compass's attempt to gerrymander its market definition while operating a national marketing strategy demonstrates the weakness of its underlying antitrust theory.

4

Moreover, Compass's market definition serves a strategic purpose that courts should recognize: claiming antitrust injury in an artificially narrow market while capturing competitive advantages through nationwide exclusive access. This represents precisely the type of market manipulation that antitrust law prevents rather than protects. *See Ohio v. American Express Co.*, 585 U.S. 529, 541 (2018) (requiring plaintiffs to demonstrate actual competitive harm, not strategic advantages disguised as market injuries).

## B. NWMLS Rules Prevent Free-Riding and Enhance Competition

Compass fundamentally mischaracterizes NWMLS's cooperative listing rules as anticompetitive restraints. In reality, these rules prevent free-riding—the extraction of value without corresponding contribution—which courts have consistently recognized enhances rather than restricts competition.

Compass explicitly seeks continued access to all other brokers' listings while withholding its own through "Private Exclusive" arrangements. This constitutes textbook free-riding behavior. *Chicago Professional Sports Ltd. Partnership v. National Basketball Ass'n*, 961 F.2d 667, 674-75 (7th Cir. 1992) ("Firms that take advantage of costly efforts without paying for them, that reap where they have not sown, reduce the payoff that the firms making the investment receive").

Courts have consistently held that preventing free-riding promotes market efficiency and competition. *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 221-23 (D.C. Cir. 1986) (efforts to eliminate "the problem of the free ride" promote market efficiency and consumer welfare). NWMLS's rules ensure that all members contribute listings to the cooperative database in exchange for access to others' listings—a reciprocal arrangement that promotes rather than restricts competition.

Compass's "Private Exclusive" system creates systematic information asymmetries that artificially disadvantage competing brokers. During this phase, only Compass agents and buyers access listings while all other market participants remain excluded. This creates precisely the type of market distortion that cooperative industry rules are designed to prevent.

The antitrust laws protect competition, not competitors seeking unfair advantages. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977). Compass's claims seek judicial protection for a business strategy that systematically excludes competitors from relevant market information—the antithesis of the competitive marketplace that antitrust law promotes.

## C. Compass's Multi-Jurisdictional Litigation Strategy Reveals Coordinated Institutional Manipulation

MCAI's cross-jurisdictional analysis reveals a critical dimension unavailable to traditional single-case legal analysis: Compass's deliberate venue fragmentation strategy designed to prevent comprehensive judicial review of its coordinated institutional campaign.

Compass has filed substantially similar antitrust claims in geographically distant federal jurisdictions. While challenging NWMLS in this Court, Compass simultaneously pursues Zillow Group, Inc. in the Southern District of New York. *Compass, Inc. v. Zillow Group, Inc.*, Case No. 1:25-cv-05425 (S.D.N.Y. filed June 23, 2025). Both cases advance the same core theory: that transparency requirements constitute anticompetitive restraints on Compass's "Private Exclusive" business model.

This geographic separation is strategic rather than coincidental. By fragmenting litigation across distant federal jurisdictions, Compass ensures that no single court can evaluate the full scope of its coordinated campaign to dismantle market transparency infrastructure while preserving its own exclusive access advantages.

The consequences extend beyond procedural considerations. Venue fragmentation prevents coordinated industry responses, limits judicial resources for comprehensive analysis of related claims, and enables potentially contradictory legal arguments across jurisdictions without accountability. Most significantly, it obscures the systematic nature of Compass's challenge to industry transparency standards.

Federal courts should consider venue fragmentation as evidence of strategic litigation rather than good-faith antitrust enforcement. When a plaintiff's litigation strategy itself demonstrates coordinated efforts to avoid comprehensive judicial review, the underlying antitrust claims warrant heightened rather than deferential scrutiny.

This pattern is particularly relevant to evaluating Compass's claims under the rule of reason analysis applicable to cooperative industry arrangements. *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977); *FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 458-59 (1986). Courts analyzing such arrangements must consider their broader competitive effects, which venue fragmentation strategically prevents.

## IV. CONCLUSION

Compass's antitrust claims fail on multiple analytical levels. The company advances internally contradictory market definitions, seeks judicial protection for free-riding behavior, and employs venue fragmentation to prevent comprehensive judicial review of its coordinated institutional campaign.

MCAI's cross-jurisdictional analysis demonstrates that this case represents strategic litigation designed to preserve systematic market advantages rather than promote genuine competition. Compass seeks to dismantle transparency requirements that ensure fair access to market information while preserving its own exclusive access mechanisms.

The Court should grant NWMLS's Motion to Dismiss and decline to enable the weaponization of antitrust law to protect rather than prevent market manipulation. Protecting cooperative market structures that promote transparency serves the consumer welfare objectives that guide modern antitrust enforcement.

**DATED:** July 23, 2025

Respectfully submitted,

/s/ Noel Le

**Noel Le**

Founder | Architect

MindCast AI LLC

5306 156th Ave SE

Bellevue, WA 98006

Telephone: (850) 687-5445

Email: noel@mindcast-ai.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Local Civil Rule 7(g). This brief contains 1,698 words, excluding the parts of the brief exempted by Local Civil Rule 7(g).

/s/ Noel Le

**Noel Le**

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2025, I served a true and correct copy of the foregoing document upon all parties by filing same with the Court's CM/ECF system, which will automatically serve all counsel of record.

/s/ Noel Le

**Noel Le**