The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMPASS, INC. AND COMPASS WASHINGTON, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWEST MULTIPLE LISTING SERVICE, <br><br> Defendant. | CASE NO. 2:25-cv-00766-JNW <br><br> **STIPULATION AND AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.    General Principles**

1. An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the

application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

**B.    ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2. <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain non-duplicative discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.    ESI Discovery Procedures**

1. <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. <u>Search methodology.</u> The parties shall timely meet and confer and cooperate in good faith to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies. The parties shall continue to cooperate in good faith to revise the appropriateness of the search methodology. The parties shall not delay implementing searches and related production for search methodologies that are not in dispute while seeking resolution on others.

    a. The parties' meet and confer discussions shall include:

        i. The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information.

        ii. After disclosure, if needed, the parties will engage in an additional meet and confer process regarding any additional terms sought by the non-producing party.

        iii. The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. The producing party shall evaluate the terms proposed by the requesting party in good faith. If the producing party refuses to incorporate any of the additional search terms it shall identify each search term or query returning overbroad results and provide a counter proposal correcting the overbroad search or query.

3. <u>Format.</u>

    a. The parties shall produce their information in the following format: single-page TIFF and/or JPG images and associated multi-page text files containing extracted text,

1  unless otherwise agreed.

2        b.    Unless otherwise agreed to by the parties, files that are not easily converted
3  to image format, such as spreadsheet, databases/database reports, media files, and drawing files,
4  will be produced in native format. A requesting party may request that a producing party
5  reproduce particular documents in native format if the documents are not reasonably legible after
6  being converted to image format.

7        c.    Each document image file shall be named with a unique number (Bates
8  Number). File names should not be more than twenty characters long or contain spaces. When a
9  text-searchable image file is produced, the producing party must preserve the integrity of the
10 underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable,
11 the revision history.

12       d.    If a document is more than one page, the unitization of the document and
13 any attachments and/or affixed notes shall be maintained as they existed in the original document.

14       f.    The full text of each electronic document shall be extracted ("Extracted
15 Text") and produced in a text file. The Extracted Text shall be provided in searchable format and
16 shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of
17 the corresponding production version of the document followed by its file extension).

18     4.    <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial
19 and non-custodial data sources via industry standard MD5 or SHA-1 hash comparison, provided
20 the duplicate custodian information removed during the de-duplication process tracked in a
21 duplicate/other custodian field in the database load file. Emails shall be deduplicated at the family
22 level and loose electronic documents shall not be compared to email attachments for
23 deduplication purposes.

24

6. <u>Metadata fields.</u> In addition to the fields necessary for the functioning of an eDiscovery review database (e.g., BegBate, EndBates, BegAttach, EndAttach) the parties agree that only the following metadata fields need be produced, and only to the extent each is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author; from; to; cc; bcc; title; edoc subject; email subject; file name; file size; file extension; original file path; date and time created, modified, sent, received; Company; IntMsgID; and hash value. The list of metadata is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices. The parties shall provide supplemental metadata if reasonably available for any sources that cannot be adequately searched via the metadata fields agreed in this Order.

7. <u>Hard-Copy Documents.</u> The production of hard-copy documents in electronic format will include a cross-reference file that indicates document breaks (*e.g.*, BegBates, EndBated, BegAttach, EndAttach) page count, and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable text files will be produced, unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D.    Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R.

Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

   a. Deleted, slack, fragmented, or other data only accessible by forensics.

   b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

   c. On-line access data such as temporary internet files, history, cache, cookies, and the like.

   d. Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

   e. Back-up data that are duplicative of data that are more accessible elsewhere.

   f. Server, system or network logs.

   g. Data remaining from systems no longer in use that is unintelligible on the systems in use.

   h. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that

a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.  Privilege**

1. A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. The parties will meet and confer regarding any entries where the receiving party claims in good faith that it cannot evaluate the claim of privilege based on the available metadata. The parties shall cooperate in good faith to resolve any disputes. Privilege logs will be produced to all other parties no later than 30 days before the deadline for filing motions related to discovery, unless otherwise agreed to by the parties.

2. Redactions need not be logged. The parties will meet and confer regarding any redactions where the receiving party claims in good faith that it cannot evaluate the claim of privilege based on the available information. The parties shall cooperate in good faith to resolve any disputes.

3. With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B) and need not be included in privilege logs.

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party.

DATED: August 14, 2025

| | |
|---|---|
| *s/Ethan Glass* | *s/Vanessa Soriano Power* |
| Ethan Glass (*Pro Hac Vice*) | Vanessa Soriano Power, WSBA No. 30777 |
| COOLEY LLP | Christopher R. Osborn, WSBA No. 13608 |
| 1299 Pennsylvania Avenue | Harrison L.E. Owens, WSBA No. 51577 |
| Suite 700 | STOEL RIVES LLP |
| Washington, DC 20004 | 600 University St |
| Telephone: +1 202 842 7800 | Suite 3600 |
| Fax: +1 202 842 7899 | Seattle, WA 98101-3197 |
| Email: eglass@cooley.com | Telephone: 206-386-7653 |
| | Email: vanessa.power@stoel.com |
| Sarah M. Topol (*Pro Hac Vice*) | Email: chris.osborn@stoel.com |
| Alessandra V. Rafalson (*Pro Hac Vice*) | Email: harrison.owens@stoel.com |
| COOLEY LLP | |
| 55 Hudson Yards | Claude Szyfer (*admitted pro hac vice*) |
| New York, NY 10001 | HOGAN LOVELLS US LLP |
| Telephone: +1 212 479 6000 | 390 Madison Avenue |
| Fax: +1 212 479 6275 | New York, NY 10017 |
| Email: stopol@cooley.com | Telephone: 212-918-3000 |
| Email: arafalson@cooley.com | Email: claude.szyfer@hoganlovells.com |

| | |
|---|---|
| Christopher B. Durbin (41159)<br>COOLEY LLP<br>1700 Seventh Avenue<br>Suite 1900<br>Seattle, WA 98101<br>Telephone: +1 206 452 8700<br>Fax: +1 206 452 8800<br>Email: cdurbin@cooley.com<br><br>*Attorneys for Plaintiffs Compass, Inc. and Compass Washington, LLC* | Liam Phibbs (*admitted pro hac vice*)<br>HOGAN LOVELLS US LLP<br>Columbia Square<br>555 Thirteenth St NW<br>Washington, DC 20004-1109<br>Telephone: 202-637-5600<br>Email: liam.phibbs@hoganlovells.com<br><br>*Attorneys for Defendant Northwest Multiple Listing Service* |

# ORDER

Based on the foregoing, IT IS SO ORDERED.

DATED: _____

_____
The Honorable Jamal N. Whitehead
UNITED STATES DISTRICT JUDGE

321978299