HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMPASS, INC. AND COMPASS WASHINGTON, LLC<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWEST MULTIPLE LISTING SERVICE,<br><br>Defendant. | Case No. 2:25-cv-00766<br><br>NWMLS'S OPPOSITION TO MOTION TO COMPEL |

Plaintiffs Compass, Inc. and Compass Washington, LLC's ("Compass") motion to compel should be denied because there is nothing to compel. Northwest Multiple Listing Service ("NWMLS") has addressed every issue raised in the motion. In an attempt to avoid wasting judicial resources, NWMLS engaged with Compass to ensure all alleged deficiencies had been addressed and asked Compass to withdraw the motion. Compass then raised different issues. NWMLS in turn addressed every one of Compass's latest issues. Despite NWMLS's good faith efforts, and despite addressing all issues raised, Compass proceeded in forcing the Court to consider its motion.

Compass complains about alleged delay and the need to confer about discovery. But it is Compass that issued 72 broad requests for production in a case asserting antitrust claims. Compass fails to account for NWMLS's continued engagement in the iterative process of discovery, NWMLS's agreement to add, over months of conferral, every single custodian sought by Compass,

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 1

and the parties' multi-month process to come to agreement on search terms. Nor does Compass acknowledge that in the interim, NWMLS has been producing documents since August 28, 2025. Compass's mischaracterization of the facts and process is disappointing, at best, and an attempt to mislead the Court, at worst.

Compass seeks an order directing NWMLS to produce all documents responsive to Compass's First and Second Requests for Production, with rolling productions to be made "a minimum of one every two weeks" and "complete responses." (Dkt. 56-1.) NWMLS has already produced all responsive documents except those pending the addition of new custodians recently agreed to and pending privilege review. NWMLS has already agreed to make rolling productions through the parties' agreed substantial production deadline of January 30, 2026. And NWMLS has already agreed to further supplement Interrogatory No. 3, the only specific interrogatory Compass has identified as requiring further supplementation. NWMLS will continue to honor its agreements. There is nothing to compel.

## I. RELEVANT BACKGROUND

NWMLS provides the following background facts to put Compass' motion in full context.

NWMLS is a non-profit, broker cooperative that provides multiple listing services in Washington and Oregon. (Dkt. 1 at ¶¶ 24–25.) Members of NWMLS, including Plaintiff Compass, are real estate brokerage firms that operate as shareholders and owners of NWMLS. (*Id.*) NWMLS is governed by rules with which members must comply to participate in NWMLS's offered services. (*Id*. at ¶ 36.) This case stems from NWMLS's enforcement of those rules, and Compass' challenge to NWMLS rules. Compass alleges that NWMLS, through enforcement of its rules, violated Sections 1 and 2 of the Sherman Act, violated state antitrust law under the Consumer Protection Act, and engaged in tortious interference. (*See generally id*.)

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 2

151476738.2 0068832-00015

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

1    **A.    NWMLS's Motion to Dismiss and Motion to Stay Discovery.**

On June 30, 2025, NWMLS responded to the Complaint, filing a motion to dismiss all claims under Rule 12(b)(6). (Dkt. 27.) If granted, the motion will be dispositive of the case. (*Id.*) The motion was fully briefed as of July 28, 2025. (Dkt. 36.) The Court heard oral argument on September 30, 2025, and took the matter under advisement. (Dkt. 51.) Because the motion to dismiss remains pending, NWMLS has not yet answered the complaint, asserted defenses, or asserted counterclaims against Compass.

In the interim, NWMLS sought to stay discovery because the motion to dismiss was pending and Compass had not sought temporary or preliminary injunctive relief. NWMLS first asked Compass to agree to suspend discovery pending resolution of the motion; Compass refused. (*See* Dkt. 25 at 1, 4-6 (explaining that NWMLS is a modest non-profit company and discovery in antitrust cases is notoriously burdensome and costly).) On June 24, 2025, Compass issued its First Interrogatories and First Requests for Production. (Dkt. 57-1.) NWMLS then filed a motion for protective order to stay discovery. (Dkt. 29.) On July 25, 2025, Compass issued its Second Requests for Production. (Dkt. 57-2.) On August 6, 2025, the Court denied NWMLS's motion to stay discovery. (Dkt. 38.) In light of the Court's ruling, discovery has proceeded.

**B.    NWMLS's Responses to Compass's Document Requests.**

In total, through its First and Second Requests for Production, Compass issued 72[1] document requests. (*See* Dkt. 57-1, 57-2.) Compass' discovery requests are broad in scope and have forced NWMLS to invest substantial resources to collect, review, and prepare responses. (Declaration of Vanessa Soriano Power ("Power Decl.") ¶ 4.) These are not simple requests that call for production of a handful of readily available files, but instead call for identifying, collecting, and reviewing voluminous data and documents across the entirety of NWMLS's platform. For example, Compass's document requests demand:

---

[1] Compass' First RFPs end with Request No. 51 and Second RFPs begin with a different Request No. 51, bringing the total count to 72. (*See* Dkt. 57-1, 57-2.)

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 3

- *All Documents* relating to or reflecting Communications concerning Compass or a Compass-affiliated Broker. (*See* Dkt. 57-1 at Request No. 13.)
- *All Documents* relating to the role of NWMLSs in the market for real estate services, including any actual or potential competitors or alternatives to the NWMLSs. (*Id.*, Request No. 39.)
- *All Documents and data* concerning projected, estimated, planned or actual conditions in the markets for residential real estate and Real Estate Services, including (i) the extent, level, or type of competition; (ii) market share of the NWMLS; (iii) residential real estate costs, supply, and demand; (iv) consolidation, mergers, acquisitions, or joint ventures; (v) fixed or variable costs; (vi) substitute products; (vii) residential real estate, Broker, or agent capacity or supply; (viii) profits, revenues, and loss information; or (ix) other industry statistics. (*Id.* at Request No. 40.)
- *All Documents* concerning how pricing is set for NWMLS's products and services, including Documents concerning the price of sales of NWMLS listings to third parties including, but not limited to, Zillow; listings submitted by non-NWMLS members; broker membership and/or broker access; and non-member access to NWMLS products and listings. (Dkt. 57-2 at Request No. 51.)
- *Data on all sold homes* in Washington State from 2022 until the present, for sales both listed on the NWMLS and not, including lookup files for any and all coded fields related to the data. (*Id.* at Request No. 68.)
- *All data and information* recorded in logs from the key box system showing each instance a licensed real estate agent accessed a property for a buyer showing. (*Id.* at Request No. 69.)
- *All data* on lead origination and conversion rates for homebuyers and homesellers, including information regarding what source homebuyers and homesellers were acquired, and conversion rates and leads by source. (*Id.* at Request. No. 71.)

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 4

In response to Compass's requests, NWMLS issued objections. (Dkt. 57-4, 57-13.) NWMLS's objections flagged standard, threshold issues, including: (1) the lack of a protective order governing disclosure of confidential information (2) the lack of time or other scope limitations; and (3) the need for the parties to confer on search terms and custodians. (*See*, e.g. 57-8, generally.) The parties then engaged in multiple conferrals to address these issues. (Power Decl. ¶ 5.)

*ESI Agreement and Protective Order.* The parties conferred on August 4, 2025 about specific terms in the proposed ESI Agreement and protective order. (*Id.* ¶ 5(a).) By August 14, the parties reached agreement and filed a stipulated protective order and ESI Agreement for review and entry by the Court. (Dkt. 42, 43.)

In asserting objections, NWMLS suggested that the parties confer. (*See* Dkt. 57-8, 57-13.) ("NWMLS proposes that the parties meet-and-confer on appropriate date ranges, search terms, and custodians prior to production of non-privileged responsive documents and ESI, if any exist, to avoid undue burden on the parties.") The parties conferred on August 28, 2025. (Power Decl. ¶ 5(b).) NWMLS agreed to: (a) re-process and re-produce its initial production with a metadata overlay; (b) by September 5, supplement its responses to Compass's First and Second Requests for Production to more clearly indicate if no responsive documents exist, and if responsive documents would be produced or are being withheld; (c) make a planned production that day, August 28; and (d) identify NWMLS's document custodians and search terms by September 4.[2] (Dkt. 57-14 at p. 3.) NWMLS honored its agreement. (Power Decl. ¶ 5(b); Dkt. 57-19 at pp. 7-8.)

*Date Range.* Compass's requests had no date limitations. NWMLS proposed a date range of April 1, 2023 – May 31, 2025. Compass responded with a proposed date range of January 1, 2022 – May 31, 2025. (Dkt. 57-19 at pp. 6-7.) NWMLS agreed to Compass's proposal, to be applied to both NWMLS's and Compass's productions. (*Id.* at p. 4.)

---

[2] In contrast, Compass did not provide NWMLS with its search terms until a month and a half later, on October 20, 2025, despite multiple requests from NWMLS. (Dkt. 57-19 at pp. 2, 4, 5.)

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 5

*Custodians.* As promised in the conferral on August 28, 2025, NWMLS provided Compass with its list of proposed document custodians on September 4. (Dkt. 57-19 at p. 7.) NWMLS promptly commenced review of custodial records, and with each additional custodian added, has run searches against the additional records. Compass sought additional custodians. (*Id.* at p. 5.) NWMLS has agreed to add each of them. (Power Decl. ¶ 5(d); Ex. E.)

*Search Terms.* As promised in the conferral on August 28, 2025, NWMLS provided Compass with its proposed search terms on September 4. (Dkt. 57-19 at pp. 7-8.) Compass sought modifications and additional search strings. (*Id.* at 6.) Several of Compass's proposed search strings had errors and others returned overwhelming results. (Power Decl. ¶ 5(e).) NWMLS worked with Compass to come to agreement on workable modifications. (Dkt. 57-19 at p. 4.; Dkt. 57-20.) Contrary to Compass's contentions, NWMLS did not delay its searches or productions in the interim. NWMLS began running searches against agreed custodians using agreed search terms, and as those have been modified and supplemented, has now been supplementing its searches with modified search terms and additional custodians. (Power Decl. ¶ 5(e).) It is an iterative process.

*NWMLS Productions and Categories of Documents Produced.* NWMLS began producing documents on August 28, 2025. (Power Decl. ¶ 6.) To date, NWMLS has produced seven (7) volumes of responsive documents. (*Id.*) NWMLS's productions have included NWMLS organizational documents, legal bulletins, board of directors materials, custodial emails, voluminous data sets, and re-production of material previously produced in response to civil investigative demands. (*Id.*) NWMLS is underway in its review of additional documents for production. (*Id.*) Compass's complaint that NWMLS has failed to produce custodial documents is flat wrong. Indeed, 170,364 of the 174,896 pages of over 34,000 responsive documents in Volume 7 of NWMLS's production were from custodial email files. (*Id.* at Ex. B.) Review for privilege has been time-consuming because two of the NWMLS custodians for whom significant documents were returned in response to searches include NWMLS's current and former general counsel. (*Id.*) NWMLS has represented that it will make rolling productions as documents are released from

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 6

review, including a supplemental production on January 2, 2026, and following on a weekly basis through the parties' agreed substantial production deadline of January 30, 2026. (*Id.*)

### C. NWMLS's Answers to Compass's Interrogatories.

NWMLS answered Compass's interrogatories—and issued supplemental answers three different times to address Compass's complaints, most recently on December 17, 2025, as NWMLS promised. (Power Decl. ¶ 7, Ex. C; Dkt. 57-5, 57-9, 57-17.) NWMLS acknowledges that in relying on Fed. R. Civ. P. 33(d) to answer certain interrogatories, it did not identify specific responsive documents in its initial answers. That was because, as NWMLS explained to Compass, document production remained pending. (Power Decl. ¶ 7.) That has been rectified. In NWMLS's third supplemental answers to interrogatories, as promised, bates numbers directing Compass to specific documents were provided. (*Id.*, Ex. C.) Since receiving NWMLS's third supplemental answers on December 17, Compass has raised only one issue, asking that NWMLS provide yet a further answer to a portion of Interrogatory No. 3. (*Id.*, Ex. B.) NWMLS has already agreed to do so. (*Id.*) (stating that "NWMLS will further supplement its answer to Interrogatory No. 3 to address the time period preceding April 15, 2025.")

### D. The Parties Sought an Agreed Extension of the Case Schedule.

In the midst of the parties' conferrals over the timing of discovery, they agreed that the case schedule was not workable. Indeed, as of November 18, 2025, Compass had only produced 18 documents totaling 315 pages; four of those documents were public SEC filings, one was an LLC agreement, and nine were listing agreements. (Power Decl., Ex. D.) Two other documents were completely illegible. (*Id.*) On November 18, 2025, NWMLS asked Compass to confer to address the deficiencies of Compass's (lack of) responses to discovery. (*Id.*) The parties agreed to confer—*about Compass's discovery deficiencies*—on November 24, 2025. (Power Decl. ¶ 8.) As part of that conferral, and due to *Compass's* utter failure to make progress on its own productions as of that date, NWMLS asked Compass to consider amending the case schedule. (*Id.*)

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 7

The parties exchanged proposals on an amended case schedule. (Power Decl., Ex. F.) They were able to come to agreement. (*Id.*) Compass requested, and NWMLS agreed to, the addition of deadline of January 30, 2026, for substantial completion of written discovery. (*Id.*) On December 5, 2025, NWMLS filed the parties' stipulated motion to amend the case schedule. (Dkt. 55.) NWMLS was shocked when, just six hours after the parties filed the stipulated motion, Compass filed its motion to compel.

**F.    NWMLS's Request to Compass to Withdraw its Motion to Compel as Moot.**

NWMLS takes its discovery obligations seriously. On December 12, 2025, NWMLS addressed every issue in Compass's motion and asked Compass to withdraw its motion as moot. (Power Decl. Ex. A.) In sum:

- NWMLS made supplemental productions on December 2 and December 8, 2025, including over tens of thousands of custodial records.[3]

- NWMLS represented that it would continue to make rolling productions as documents are released from review for confidentiality and privilege designations.

- NWMLS addressed Compass's apparent confusion about the scope of NWMLS's productions, including an explanation of the "NWMLS" custodial identifier for network files; the scope of review NWMLS was undertaking for documents that hit on search terms; and re-production of prior disclosures of data sets, documents, and custodial emails in the same format previously produced.

- NWMLS promised to further supplement its interrogatory answers by December 22, 2025 (and then did so on December 17, 2025).

---

[3] Oddly, Compass takes issue with the timing of NWMLS's production of Volume 6. NWMLS had expected to produce Volume 6 on Wednesday, November 26, 2025. NWMLS notified Compass on that date that it would be delayed until the following Monday, after the Thanksgiving holiday, due to a technical issue. Compass asked no questions, but in its motion appears to challenge the veracity of NWMLS's brief. NWMLS's letter explains that the delay was due to the need for additional processing time following the addition of custodians and re-application of filters to screen for confidentiality and privilege. (Power Decl., Ex. A.)

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 8

(*Id.*) On December 18, 2025, Compass indicated that it would withdraw its motion to compel if NWMLS agreed to four items. (Power Decl, Ex. B.) NWMLS agreed (*see* NWMLS responses in **bold italics** below each Compass request):

1. Making rolling productions on dates certain (such as biweekly) going forward until NWMLS's document production is complete;

    ***NWMLS will make rolling productions as documents are released from review. NWMLS anticipates a supplemental production on January 2, 2026, and expects to make rolling productions on approximately a weekly basis following that date.***

2. Further correct its productions to properly identify document custodians and document family relationships as described above, and commit to working to promptly correct any further issues Compass identifies with NWMLS's document productions;

    ***NWMLS has been, and will continue to be, responsive to Compass' questions regarding its document productions.***

3. Commit to not producing clearly irrelevant documents going forward, such as Nordstrom's emails or other entirely non-responsive spam; and

    ***NWMLS will make every effort not to produce clearly irrelevant documents.***

4. Further supplement its response to Interrogatory No. 3 to, as requested, "*Describe the process by which You revoked Compass's listing data license* on or about April 15, 2025, including all Persons involved in the decision *and a timeline from the proposed revocation to April 15, 2025.*"

    ***NWMLS will further supplement its answer to Interrogatory No. 3 to address the time period preceding April 15, 2025.***

(*Id.*) NWMLS believed, in good faith, that the parties had resolved the issues raised in the motion to compel. At the end of the day on Friday, December 19 (the last business day before NWMLS's response to the motion to compel was due), Compass stated, without any explanation as to what

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 9

remains outstanding: "Based on the below, we do not agree that our motion has been mooted and will not withdraw it at this time." (*Id.*)

## II. ARGUMENT

The discovery process is necessarily iterative. That is especially so in cases involving antitrust claims such as this one, where "discovery tends to be broad, time-consuming, and expensive." *See In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007). Here, Compass's motion to compel fails to account for the iterative nature of discovery, NWMLS's good faith efforts and actual responsiveness, and most importantly, the fact that the issues raised in Compass's motion are moot. The motion should be denied as moot. *AAA Max 1 Limited v. The Boeing Company*, 2025 WL 2598422 at *1, Case No. 23-cv-1356-RSM (W.D. Wash. Aug. 12, 2025) (denying motion to compel as moot). NWMLS has already addressed or agreed to all of Compass's demands. There is nothing to compel.

### A. There is Nothing to Compel in Response to Compass's First and Second Requests for Production.

Compass identifies no specific document requests at issue. Instead, Compass makes vague complaints about delay but ignores its stipulated agreement to extend the case schedule to address both parties' need for additional time to complete discovery. Compass asks the Court to enter an order directing NWMLS to produce all documents responsive to Compass' First and Second Requests for Production, with rolling productions to be made "a minimum of one every two weeks." But NWMLS has already agreed to: "make rolling productions as documents are released from review" and has already represented that "NWMLS anticipates a supplemental production on January 2, 2026, and expects to make rolling productions on approximately a weekly basis following that date." (Power Decl., Ex. B.)

NWMLS takes issue with Compass's characterization of events, as NWMLS has engaged in discovery in good faith and has undertaken substantial efforts to ensure compliance. Indeed, just as it has done throughout the discovery process, NWMLS engaged with counsel for Compass.

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 10

**STOEL RIVES LLP**
*ATTORNEYS*
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

151476738.2 0068832-00015

NWMLS addressed all issues raised. (Power Decl., Exs. A and B.) For example, Compass complains that NWMLS made a "dump of documents produced in another matter." (Dkt. 56 at p. 8.) But Compass's own Requests for Production Nos. 6 and 7 call for production of all civil investigative demands that concern the challenged NWMLS rules or off-MLS marketing, "including all Communications regarding the CID and all Documents produced in response to the CID." (Dkt. 57-1 at Request Nos. 6, 7.) That is precisely what NWMLS produced. NWMLS should not be faulted for producing just what Compass requested.

In response to NWMLS's letter addressing the issues in Compass's motion, Compass claimed that there were still "significant deficiencies" with NWMLS's supplemental productions and answers. (Power Decl. at Ex. B.) But NWMLS addressed each and every allegedly "significant" issue, all of which appear to be Compass's misunderstanding of the production:

- Compass alleged that NWMLS failed to maintain familial relationships between documents. But the emails that Compass identified were produced as they were maintained by NWMLS, which was as PDFs in a subfile. This was disclosed to Compass in the production, which included metadata reflecting the document type, file extension, and Original file path information.

- Compass complained that NWMLS had not properly identified custodial productions, but the example Compass provided was from a re-production from a prior matter from November 2019. Productions specific to searches in this case, and not re-productions from prior cases, have complied with the parties' ESI Agreement. Where Compass has identified an irregularity, NWMLS has addressed it.

- Compass complained that some documents produced were plainly irrelevant. NWMLS has applied filters to attempt to cull any obviously irrelevant documents and is continuing those efforts.

(*Id.*) The bottom line is that there is nothing to compel here.[4]

---

[4] Compass argues that NWMLS waived its objections to Compass's interrogatories and requests for production. Not so. It was not until August 21, 2025, that the parties agreed to email service

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 11

NWMLS also agreed to all the terms sought by Compass to withdraw its motion. (Power Decl., Ex. B.) Rolling productions continue, and NWMLS is on track to meet the parties' agreed substantial production deadline of January 30, 2026. (Power Decl. ¶ 11.) Compass has identified nothing specific that remains to be compelled. The motion should be denied as moot, and for failure to clearly state what, if anything, Compass still seeks that is not already in progress through NWMLS's agreed, rolling productions. *See* Hon. Judge Whitehead's Chambers Procedure 3.1; Fed. R. Civ. P. 7(b)(1).

**B.    There is Nothing to Compel in Response to Compass's Interrogatories.**

In its motion to compel, Compass identified only one specific interrogatory as deficient, Interrogatory No. 3. (Dkt. 56 at 6.) But NWMLS has already supplemented that interrogatory and agreed, again, to further supplement its answer to specially address Compass's demand for an additional narrative response. (Power Decl, Ex. B.) At this point, given NWMLS's agreement to further supplement Interrogatory No. 3, NWMLS is not aware of any outstanding issues with respect to Compass's interrogatories. Again, there is nothing to compel.

### III.    CONCLUSION

Compass's motion to compel amounts to a waste of judicial and party resources. It was not necessary. As reflected in the summary of relevant background above, NWMLS has engaged in the iterative process of discovery in good faith. NWMLS has been responsive to every specific alleged deficiency identified in Compass's motion. All issues have been addressed; Compass is not permitted to come up with something new on reply just to keep its motion alive. There is nothing to compel.

---

in the case. (Dkt. 57-10 at p. 2.) Before that date, Fed. R. Civ. P. 6(d) governed. Further, NWMLS's initial position, that it need not respond to discovery pending the Court's resolution of its motion to stay discovery, was explained to Compass on July 25, 2025 (Dkt. 57-3) and again on July 29, 2025 (Dkt. 57-6 at p. 6). Following conferral with Compass, on August 1, 2025, NWMLS issued objections to Compass's then-issued discovery. (Dkt. 57-4, 57-5.) Following the Court's order denying NWMLS's motion to stay discovery, which mooted the issue, NWMLS supplemented its discovery responses. At most, Compass's complaint amounts to a dispute over a few days between July 28 – August 1, 2025, when NWMLS issued its objections.

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 12

*I certify that this memorandum contains 3,805 words, in compliance with the Local Civil Rules.*

DATED: December 22, 2025

STOEL RIVES LLP

*s/ Vanessa Soriano Power*
Vanessa Soriano Power, WSBA No. 30777
Harrison L. Owens, WSBA No. 51577
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500
Email: vanessa.power@stoel.com
Email: harrison.owens@stoel.com

Claude Szyfer (*pro hac vice*)
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
Telephone: 212-918-3000
Email: claude.szyfer@hoganlovells.com

Liam Phibbs (*pro hac vice*)
Hogan Lovells US LLP
Columbia Square
555 Thirteenth St. NW
Washington, DC 20004-1109
Telephone: 202-637-5600
Email: liam.phibbs@hoganlovells.com

*Attorneys for Defendant*
*Northwest Multiple Listing Service*

NWMLS'S OPPOSITION TO MOTION TO COMPEL - 13