HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMPASS, INC. AND COMPASS WASHINGTON, LLC<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWEST MULTIPLE LISTING SERVICE,<br><br>Defendant. | Case No. 2:25-cv-00766<br><br>**REPLY IN SUPPORT OF NWMLS'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF** |

Compass's response to NWMLS's motion addressing the SDNY Order[1] proves supplemental briefing is warranted. NWMLS filed this motion because Compass declined NWMLS's offer to submit additional briefing, and claimed this Court would not benefit from the parties briefing the relevance of the SDNY Order to NWMLS's motion to dismiss. Tellingly, Compass's response engaged in full on the substance of the SDNY Order, but failed to provide any compelling reason this Court should ignore the SDNY's comprehensively reasoned decision to deny Compass's motion for an injunction. In short, the SDNY Order offers many direct parallels relevant to the Court's consideration of NWMLS's pending motion to dismiss, particularly with respect to the SDNY's finding of a nationwide relevant market, and its analysis of the importance

---

[1] Capitalized terms are as defined in the Motion (Dkt. 72).

REPLY IN SUPPORT OF MOTION FOR LEAVE
TO FILE SUPPLEMENTAL BRIEF - 1
(CASE NO. 2:25-CV-00766-JNW)

\\4165-6205-3734  v1
152191270.3 0068832-00015

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

of the buy-side market for Compass' business, and its antitrust impact. Supplemental briefing as proposed by NWMLS should be considered.

Compass tries to downplay the relevance of *Compass v. Zillow* on procedural grounds. Of course, different standards apply under Federal Rules of Civil Procedure 12 and 65. The relevance of the SDNY Order, however, is not specific to the procedural posture of the case.

In the *Zillow* action, Compass alleged that Zillow's Listing Access Standards ("ZLAS") requires that any exclusive listing must be submitted to a multiple listing service within one business day of its first public marketing before the property will be displayed on a Zillow website. Compass further alleged that Zillow's ZLAS thus prevented Compass from offering its 3PM program to sellers raising both Section 1 (group boycott) and Section 2 (monopolization) Sherman Act claims. Indeed, similar to its claims in the *Zillow* action, here, Compass alleges that NWMLS's enforcement of its Rules prevents it from offering its 3PM program to sellers in violation of Section 1 (group boycott) and Section 2 (monopolization) of the Sherman Act. (*See, e.g.*, Dkt. 1 at ¶¶ 121-123; ¶¶ 97-106.) The SDNY's analysis of these claims provides this Court with significant insights and supports NWMLS' assertions (1) that the relevant geographic market cannot be confined to just the Seattle/King County area, and (2) that Compass competes vigorously for buyers in the market for real estate brokerage services, underscoring the critical importance of the two-sided nature of both the multiple listing service and real estate brokerage markets.

### 1. The SDNY Order Supports NWMLS's Argument That Compass Fails to Establish a Cognizable Relevant Geographic Market.

In its motion to dismiss, NWMLS argues that Compass's local geographic market confined to just the Seattle/King County area fails as a matter of law, and that such failure is incurable. (Dkt. 27 at 16-18.) The SDNY Order supports NWMLS's argument. (*See* Dkt. 69-1 at 34-37.)

In *Zillow*, Compass actually argued that the geographic reach of the relevant market for online home search services was *nationwide,* and rejected any claim that such a market was local,

REPLY IN SUPPORT OF MOTION FOR LEAVE
TO FILE SUPPLEMENTAL BRIEF - 2
(CASE NO. 2:25-CV-00766-JNW)

\\4165-6205-3734 v1
152191270.3 0068832-00015 Include Draft

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

without any regional exception (such as the Seattle area). (Dkt. 69-1, at 36 (citing to testimony of Compass' economic expert Dr. Debra Aron).) In its analysis holding that the relevant geographic market was nationwide, the SDNY Order found that "consumers often use these platforms to shop for homes in locations outside their immediate local real estate markets, *see, e.g.*, PX-077 at 1-2 (showing that more than 50% of Zillow webpage views for homes in Sacramento, California and Birmingham, Alabama occur in locations outside those cities)." (Dkt. 69-1, at 36). In its motion to dismiss, NWMLS demonstrated that a key attribute of the 3PM program involves Compass marketing its Private Exclusives to its own "nationwide network of 34,000 agents and their millions of clients"—who live outside the Seattle/King County area. (*See* Dkt. 1 at ¶ 49). In short, Compass's 3PM program confirms the SDNY Order's finding that buyers often search for homes outside their "local" area, and that the area of competition for real brokerage services—particularly on the buy-side occurs nationwide, and not just solely in the Seattle/King County area.

Further, Compass's own Complaint also concedes the crucial benefit of NWMLS's provision of real estate listings to other public facing aggregators of listings, like Zillow, as well as its provision of listings to other multiple listing systems for display of NWMLS listings to brokers and buyers in other regions. (Dkt. 1 at ¶ 34 ("[M]ultiple listing services syndicate those listings through data sharing feeds to other participants, including the other real estate brokers in the area and the large, public-facing aggregators like Zillow, Trulia, and Realtor.com. This is a powerful marketing tool as it allows *homeowners to widely publicize their homes beyond one multiple listing service or region to any potential buyer looking at the public-facing aggregator website.*" (emphasis added).) Compass's own allegations here confirm that buyers often search for homes outside their "local" region. In short, the SDNY Order's rejection of a "local" relevant geographic market applies with equal force here and its conclusion cannot be distinguished given Compass's allegations in its own Complaint. ((*See* Dkt. 27 at 16) (arguing that allegations attempting to define an artificially narrow geographic market are fatal to a plaintiff's antitrust claims).)

REPLY IN SUPPORT OF MOTION FOR LEAVE
TO FILE SUPPLEMENTAL BRIEF - 3
(CASE NO. 2:25-CV-00766-JNW)

\\4165-6205-3734  v1
152191270.3 0068832-00015 Include Draft

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

In sum, the SDNY's conclusion that the relevant geographic market is national directly bears on the viability of Compass's fatally-framed antitrust claims against NWMLS and is germane to this Court's consideration of NWMLS's pending motion to dismiss.

**2. The SDNY Order Supports NWMLS's Argument That Compass Cannot Establish Harm to Both Sides of the Market.**

In its motion to dismiss, NWMLS argues that Compass's antitrust claims fall flat because Compass failed to allege facts that NWMLS's Rules harmed both buyers and sellers of real estate. (Dkt. 27 at 15-16.) But, as NWMLS pointed out, Compass's Complaint conspicuously omits references to *buyers*, alleging only that NWMLS's enforcement of its Rules harms *sellers* participating in Compass's 3PM program. The procompetitive justifications for NWMLS Rules supporting buyers and preventing free-riding must, however, also be weighed—even at the motion to dismiss stage. (Dkt. 27 at 20) ("[A]ccess to all listings is crucial for all brokers to compete; Compass concedes that NWMLS's Rules promote broker participation and market transparency, ultimately benefiting brokers and home buyers and sellers.") The SDNY Order confirms as much by finding that Compass itself competes vigorously for buyers in the two-sided *real estate brokerage market.*

For example, in connection with the real estate brokerage services market, the SDNY Order found that in addition to competing for sellers, "Brokerages also compete to provide services to home buyers…" (Dkt. 69-1, at 4). In describing the "market for brokerage services," the SDNY Order made clear that:

> In this market, brokerages contract with agents and brokers, whose job is to attract property listings by representing the seller in the sale of the property and to attract buyers to represent them in the purchase of real estate.

(*Id.*)

In addition, with respect to Compass specifically, the SDNY Order found "Compass engages agents as independent contractors to assist home sellers and home buyers." (*Id*. at 5). Moreover, the SDNY Order made clear that Compass generates revenue through "collecting a

REPLY IN SUPPORT OF MOTION FOR LEAVE
TO FILE SUPPLEMENTAL BRIEF - 4
(CASE NO. 2:25-CV-00766-JNW)

\\4165-6205-3734  v1
152191270.3 0068832-00015 Include Draft

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

share of the gross sales commissions that agents earn from representing sellers *and/or buyers in real estate transactions.*" (*Id.* at 5 (emphasis added).) The SDNY Order also found that "Compass's website and app"—where Compass admits its 3PM program listings appear—"*support[s] home buyers by helping them with properties and Compass agents who can assist with the purchase.*" (*Id.* at 5-6 (emphasis added); *see also* at 11-12 (explaining off-MLS marketing through 3PM).) Moreover, the SDNY Order found that the "current purpose of Compass' online platforms is to support Compass's primary business of brokerage services *by connection buyers and sellers to Compass agents.* (*Id*).

Thus, as NWMLS made clear in its motion to dismiss, to state a plausible injury caused by NWMLS's Rules, Compass must demonstrate harm to both sides of the real estate brokerage market—both to the seller side and the buyer side. (Dkt. 27 at 14, 15). The SDNY Order confirms the importance of buyers and the buy-side of the real estate brokerage. And, as Compass' own Complaint concedes, "the NWMLS database allows real estate brokers to provide their buyers with information about virtually all listed properties in which the customer might have an interest," (Dkt 1 at ¶ 33; see also ¶¶ 34-36) thus confirming that NWMLS's rules promote broker participation and market transparency, ultimately benefiting brokers and the buyers they represent.

### 3.  Conclusion

The SDNY Order warrants this Court's consideration with the benefit of supplemental briefing. NWMLS's motion seeks leave for the parties to simultaneously file briefs more fully addressing the relevance of the SDNY Order to the issues raised by NWMLS's motion to dismiss. The motion should be granted.

REPLY IN SUPPORT OF MOTION FOR LEAVE
TO FILE SUPPLEMENTAL BRIEF - 5
(CASE NO. 2:25-CV-00766-JNW)

\\4165-6205-3734  v1
152191270.3 0068832-00015 Include Draft

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

I certify that this memorandum contains 1,446 words, in compliance with the Local Civil Rules.

DATED: March 3, 2026					STOEL RIVES LLP

							*/s/ Vanessa Soriano Power*
							Vanessa Soriano Power, WSBA No. 30777
							Harrison L.E. Owens, WSBA No. 51577
							600 University Street, Suite 3600
							Seattle, WA  98101
							Telephone:  (206) 624-0900
							Email: vanessa.power@stoel.com
							Email: harrison.owens@stoel.com

							Claude Szyfer (*pro hac vice*)
							Hogan Lovells US LLP
							390 Madison Avenue
							New York, NY 10017
							Telephone: 212-918-3000
							Email: claude.szyfer@hoganlovells.com

							Liam Phibbs (*pro hac vice*)
							Holden Steinhauer (*pro hac vice*)
							Hogan Lovells US LLP
							Columbia Square
							555 Thirteen Street NW
							Washington, DC  20004-1109
							Telephone: 202-637-5600
							Email liam.phibbs@hoganlovells.com
							holden.steinhauer@hoganlovells.com

							*Attorneys for Defendant Northwest Multiple Listing Service*

REPLY IN SUPPORT OF MOTION FOR LEAVE
TO FILE SUPPLEMENTAL BRIEF - 6
(CASE NO. 2:25-CV-00766-JNW)

\\4165-6205-3734  v1
152191270.3 0068832-00015 Include Draft

**STOEL RIVES LLP**
**ATTORNEYS**
**600 University Street, Suite 3600, Seattle, WA  98101**
*Telephone 206.624.0900*