HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

COMPASS, INC. AND COMPASS
WASHINGTON, LLC,

                Plaintiffs,

     v.

NORTHWEST MULTIPLE LISTING
SERVICE,

                Defendant.

Case No. 2:25-cv-00766-JNW

**DEFENDANT NORTHWEST MULTIPLE LISTING SERVICE'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Northwest Multiple Listing Service ("*NWMLS*"), by and through its counsel, answers the allegations set forth in the Complaint filed by Plaintiffs Compass, Inc. and Compass Washington, LLC (collectively, "*Compass*"), alleges additional and/or affirmative defenses, and asserts amended counterclaims as follows. To the extent not specifically and expressly admitted, allegations of the Complaint are denied. Section headings are occasionally included only for purposes of clarity and organization, and NWMLS does not admit, but rather specifically denies, any factual or legal allegations in the headings used in the Complaint.

## ANSWER

1.     The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS admits that it is a private, member-owned, not-for-profit corporation. NWMLS further admits that it is governed by a Board of Directors which has included

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 1
CASE NO. 2:25-cv-00766-JNW

**STOEL RIVES** LLP
**ATTORNEYS**
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

a Compass broker until the Compass broker resigned from the Board. NWMLS admits that its Board of Directors is made up of brokers from a variety of brokerage firms, which has included Windermere; Lori Gill & Associates; Compass; CB Cascade; Century 21 Lund; John L. Scott; RE/MAX Platinum Services; NextHome 365 Realty; Van Dorm Realty; Keller Williams/Premier Partners; Ensemble; Lake & Company; and Best Choice Realty. NWMLS denies that it is a "monopolist and a combination of competing real estate brokers." NWMLS further denies that it has any interest in limiting competition among Seattle real estate brokers and any implication that the decisions of its Board are influenced by anticompetitive motivations. As to any remaining allegations, NWMLS denies the same.

2.    The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS admits that its members have adopted Bylaws and Rules and Regulations which are designed to promote competition in residential real estate and protect consumer interests by ensuring all members and consumers have fair and equal access to listings. NWMLS denies that its Rules force brokers and consumers to use its platform. NWMLS further denies that it is or has ever engaged in anticompetitive or tortious conduct, including conduct that harms homeowners, Compass, or Compass brokers. As to any remaining allegations, NWMLS denies the same.

3.    NWMLS is without sufficient information or knowledge to form a belief concerning the truth or falsity of Compass's allegations and therefore denies the same.

4.    NWMLS is without sufficient information or knowledge to form a belief concerning the truth or falsity of Compass's allegations and therefore denies the same.

5.    NWMLS is without sufficient information or knowledge to form a belief concerning the truth or falsity of Compass's allegations and therefore denies the same.

6.    Denied.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 2
CASE NO. 2:25-cv-00766-JNW

152984037.1 0068832-00015

7.    The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS is without sufficient information or knowledge to form a belief concerning the truth or falsity of Compass's allegations and therefore denies the same.

8.    NWMLS is without sufficient information or knowledge to form a belief concerning the truth or falsity of Compass's allegations and therefore denies the same.

9.    NWMLS is without sufficient information or knowledge to form a belief concerning the truth or falsity of Compass's allegations and therefore denies the same.

10.    The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS admits that its Board of Directors adopts and amends NWMLS Rules and Regulations from time to time according to its Bylaws. The documents speak for themselves, and NWMLS denies any mischaracterization. As to any remaining allegations, NWMLS denies the same.

    a.    NWMLS admits that it engaged in communications with Compass and declined to revise its Rules as requested by Compass. As to remaining allegations, NWMLS denies the same.

    b.    The allegations include legal conclusions to which no response is required. NWMLS admits that it amended Rule 4, consistent with its Bylaws. As to remaining allegations, NWMLS denies the same.

    c.    The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS admits that it found Compass to be out of compliance with the Rules. As to remaining allegations, NWMLS denies the same.

11.    The allegations include legal conclusions to which no response is required. NWMLS admits that, in accordance with its Rules, Bylaws, and Data Use Policy, it temporarily suspended Compass's access to Compass' IDX data feed for approximately 48 hours. As to remaining allegations, NWMLS denies the same.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 3
CASE NO. 2:25-cv-00766-JNW

12.     The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

13.     The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS is without sufficient information or knowledge to form a belief concerning the truth or falsity of Compass's allegations and therefore denies the same.

14.     The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

15.     The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

16.     The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

17.     Denied.

18.     The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

19.     The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

20.     NWMLS is without sufficient information or knowledge to form a belief concerning the truth or falsity of Compass's allegations regarding its corporate status, office locations, or affiliated brokers. NWMLS denies remaining allegations.

21.     NWMLS is without sufficient information or knowledge to form a belief concerning the truth or falsity of Compass's allegations.

22.     Denied.

23.     Denied.

24.     NWMLS admits that it is a not-for-profit corporation registered in the State of Washington with its principal place of business in Kirkland, Washington. NWMLS states that any

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 4
CASE NO. 2:25-cv-00766-JNW

152984037.1 0068832-00015

statements on its website speak for themselves. NWMLS admits that its service area covers Washington and parts of Oregon. NWMLS denies remaining allegations.

25. NWMLS denies that it is controlled by brokers. Remaining allegations are admitted.

26. The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS admits and states that it is a member-owned, not-for-profit corporation currently led by a Board of Directors. NWMLS further admits that five of its current Board members are affiliated with separately owned and operated Windermere franchisees. NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity regarding Compass's allegation that its members work for "traditional" brokerages and therefore denies the same. NWMLS admits that a Compass broker sat on its Board, until the Compass broker's voluntary resignation. NWMLS is without sufficient information or knowledge to form a belief regarding the truth or falsity of Compass's allegation as to why the Compass broker resigned and therefore denies the same. NWMLS denies remaining allegations.

27. Admitted.

28. Admitted.

29. Admitted that personal jurisdiction and venue are proper in this Court. NWMLS denies remaining allegations as to purported harm.

30. The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS states that the cited press release speaks for itself.

31. NWMLS is without sufficient information or knowledge to form a belief concerning the truth or falsity of Compass's allegations and therefore denies the same.

32. NWMLS admits that real estate brokerages that are members of NWMLS typically submit their listings to NWMLS. NWMLS denies the characterization of NWMLS's ownership and control, affirmatively stating that it is a member-owned, not-for-profit corporation. NWMLS denies remaining allegations.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 5
CASE NO. 2:25-cv-00766-JNW

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

33.    The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS admits and states that, as a result of the cooperative efforts of its collective members, its database contains many of the homes sold through members, including historical data, which is equally accessible, and provides benefits to both sellers and buyers. As to remaining allegations, NWMLS denies the same.

34.    NWMLS admits that the statements on its website speak for themselves. NWMLS further admits that it provides valuable services described in paragraph 34 of the Complaint to its members, among others. NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the remainder of allegations in this paragraph and therefore denies the same.

35.    NWMLS denies that real estate brokers cannot access NWMLS listings if they are not members. NWMLS is without sufficient information or knowledge to form a belief concerning the truth or falsity of Compass's remaining allegations and therefore denies the same.

36.    NWMLS admits and states that it promulgates Rules and Regulations from time to time, in accordance with its Bylaws. NWMLS further admits and states that final Rules are voted upon by its Board of Directors. NWMLS further admits and states that the violation of its Rules and related policies, including its Data Use Policy, may result in sanctions in the form of fines or other penalties against the individual sanctioned or their brokerage firm, including the temporary suspension of their access to the IDX data feed. As to remaining allegations, NWMLS denies the same.

37.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

38.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

39.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 6
CASE NO. 2:25-cv-00766-JNW

40.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

41.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

42.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

43.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

44.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

45.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

46.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

47.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

48.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

49.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

50.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

51.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

52.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 7
CASE NO. 2:25-cv-00766-JNW

**STOEL RIVES** LLP
ATTORNEYS
**600 University Street, Suite 3600, Seattle, WA  98101**
*Telephone 206.624.0900*

152984037.1 0068832-00015

53.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

54.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

55.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

56.    NWMLS states that Rule 2 speaks for itself. As to remaining allegations, NWMLS denies the same.

57.    NWMLS admits that a meeting between Compass and Justin Haag occurred. As to remaining allegations characterizing the meeting, NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations, and therefore denies the same.

58.    NWMLS states that it declined Compass's proposed change to Rule 2 based upon a recommendation from the Bylaws and Rules Committee. As to remaining allegations, NWMLS denies the same.

59.    NWMLS states that the email speaks for itself.

60.    NWMLS denies the characterization of his communication.

61.    NWMLS states that the email speaks for itself.

62.    NWMLS states that, before amending Rule 4 on March 28, 2025, NWMLS did not facilitate members taking "open" listings. NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

63.    NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

64.    NWMLS states that it informed Compass by telephone that it had received complaints regarding Compass's failure to enter listings into NWMLS, and directed compliance. NWMLS further admits that it received an email from Compass regarding its intent to continue its

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 8
CASE NO. 2:25-cv-00766-JNW

152984037.1 0068832-00015

conduct. NWMLS further states that, on March 25, 2025, NWMLS issued Compass a discipline complaint. As to remaining allegations, NWMLS denies the same.

65. NWMLS states that the referenced emails and press release speak for themselves. As to remaining allegations, NWMLS denies the same.

66. The allegations include legal conclusions to which no response is required. To the extent a response is required as to allegations relating to NAR policy and other multiple listing services, NWMLS admits that it does not follow NAR policy and states that is because NWMLS is not NAR-affiliated. NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of remaining allegations and therefore denies the same.

67. NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

68. NWMLS states that it temporarily suspended Compass's access to the IDX data feed for 48 hours beginning April 15, 2025 in response to Compass's non-compliance with Rule 2. As to remaining allegations, NWMLS denies the same.

69. NWMLS states that it provides useful data for members, subscribers, and the buyers and sellers that they represent. As to remaining allegations, NWMLS denies the same.

70. NWMLS states that it restored Compass's listing data access on April 17, 2025. NWMLS is without sufficient information or knowledge to form a belief as to the remaining allegations and therefore denies the same.

71. The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

72. NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

73. NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 9
CASE NO. 2:25-cv-00766-JNW

74.     NWMLS denies the allegations to the extent they characterize NWMLS's intent. NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

75.     NWMLS denies the allegations to the extent they characterize NWMLS's intent. The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

76.     The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

77.     The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

78.     The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

79.     The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

80.     The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

81.     The statement from the U.S. Department of Justice speaks for itself.

82.     NWMLS's website speaks for itself. Remaining allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 10
CASE NO. 2:25-cv-00766-JNW

83.    The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS admits and states that, in accordance with its Bylaws, its Board of Directors maintains Rules, and from time to time adopts new Rules or amends existing Rules. As to remaining allegations, NWMLS denies the same.

84.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

85.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

86.    The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

87.    The allegations include legal conclusions to which no response is required. To the extent a response is required, NWMLS is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations and therefore denies the same.

88.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

89.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

90.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

91.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

92.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

93.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 11
CASE NO. 2:25-cv-00766-JNW

94. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

95. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

### CAUSES OF ACTION

### Count I: Section 1 of the Sherman Act

96. NWMLS incorporates its prior responses by reference.

97. Section 4 of the Clayton Act speaks for itself. NWMLS denies that paragraph 97 contains a complete recitation.

98. NWMLS admits that Section 1 of the Sherman Act (not the "Sharman Act" as alleged), 15 U.S.C. § 1, is an antitrust law.

99. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

100. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

101. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

102. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

103. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

104. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

105. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 12
CASE NO. 2:25-cv-00766-JNW

106.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

## Count II: RCW 19.86.020 and 19.86.030

107.    NWMLS incorporates its prior responses by reference.

108.    RCW 19.86.090 speaks for itself. NWMLS denies that paragraph 108 contains a complete recitation.

109.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

110.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

111.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

112.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

113.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

114.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

115.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

116.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

## Count III: Section 2 of the Sherman Act

117.    Section 4 of the Clayton Act speaks for itself. NWMLS denies that paragraph 97 contains a complete recitation.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 13
CASE NO. 2:25-cv-00766-JNW

118. NWMLS admits that Section 2 of the Sherman Act (not the "Sharman Act" as alleged), 15 U.S.C. § 2, is an antitrust law.

119. NWMLS incorporates its prior responses by reference.

120. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

121. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

122. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

123. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

124. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

125. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

**Count IV: RCW 19.86.020 and 19.86.040**

126. NWMLS incorporates its prior responses by reference.

127. RCW 19.86.090 speaks for itself. NWMLS denies that paragraph 127 contains a complete recitation.

128. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

129. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

130. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 14
CASE NO. 2:25-cv-00766-JNW

131.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

132.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

133.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

### Count V: Tortious Interference with Contract

134.    NWMLS incorporates prior responses by reference.

135.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

136.    Denied.

137.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

138.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

139.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

### Count VI: Tortious Interference with Business Expectancy

140.    NWMLS incorporates prior responses by reference.

141.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

142.    Denied.

143.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

144.    The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 15
CASE NO. 2:25-cv-00766-JNW

145. The allegations include legal conclusions to which no response is required. To the extent a response is required, denied.

## PRAYER FOR RELIEF

NWMLS denies that Compass has been damaged by any act, whether direct or indirect, or omission of NWMLS. NWMLS denies that Compass is entitled to any of the relief sought in the Prayer for Relief, or in any other part of its Complaint. NWMLS further denies that Compass is entitled to attorneys' fees in the sum or sums alleged.

## JURY DEMAND

NWMLS denies that Compass is entitled to a jury trial on all claims and requests for relief.

## DEFENSES AND AFFIRMATIVE DEFENSES

NWMLS asserts the following defenses and affirmative defenses. By asserting distinct defenses together and in the alternative, NWMLS does not assume the burden of proof as to any matters that are to be borne by Compass. NWMLS reserves the right to assert additional defenses and affirmative defenses as established by the facts of this case and additional discovery.

## FIRST DEFENSE

### Failure to State a Cause of Action

Compass's Complaint, and each purported cause of action alleged, fails to state facts sufficient to support a cause of action against NWMLS.

## SECOND DEFENSE

### Lack of Antitrust Standing

Compass's claims are barred, in whole or in part, because Compass lacks antitrust standing, or because Compass's injuries, if any, are too remote to confer standing.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 16
CASE NO. 2:25-cv-00766-JNW

## THIRD DEFENSE

### Lack of Antitrust Injury

Compass's claims are barred, in whole or in part, because Compass has not suffered antitrust injury and/or is not an efficient enforcer of the antitrust laws.

## FOURTH DEFENSE

### *Noerr-Pennington* Doctrine

Compass's claims are barred, in whole or in part, by application of the *Noerr-Pennington* doctrine.

## FIFTH DEFENSE

### Legitimate Business Justification

Compass's claims are barred, in whole or in part, because NWMLS had and now has legitimate, non-competitive, non-tortious business justifications for the conduct alleged in this action.

## SIXTH DEFENSE

### Statute of Limitations

Compass's claims are barred, in whole or in part, by application of the statute of limitations.

## SEVENTH DEFENSE

### Unclean Hands/Waiver/Estoppel

Compass's claims are barred by the equitable doctrines of unclean hands, waiver and/or estoppel.

## EIGHTH DEFENSE

### Consent

Compass's claims are barred because Plaintiff, as a member of NWMLS, acquiesced or consented to the conduct about which it now complains.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 17
CASE NO. 2:25-cv-00766-JNW

## NINTH DEFENSE

### Fault of Plaintiff/Third Parties

Any injury or damage allegedly suffered by Compass was caused or contributed to by the negligence, fault, bad faith, breach of contract, or other wrongful or tortious conduct of Compass and its brokers, agents, employees, officers, independent contractors or affiliates, and such conduct offsets, eliminates, or comparatively reduces the liability of NWMLS, if any.

## TENTH DEFENSE

### Fault of Third Parties

Any injury or damage allegedly suffered by Compass was caused or contributed to by the negligence, fault, bad faith, breach of contract, or other wrongful or tortious conduct of third parties and such conduct offsets, eliminates, or comparatively reduces the liability of NWMLS, if any.

## ELEVENTH DEFENSE

### Failure to Plead a Cognizable Relevant Market

Compass's claims are barred, in whole or in part, because Compass fails to plead a cognizable relevant market.

## TWELFTH DEFENSE

### Proximate Cause Defense

Compass's claims are barred, in whole or in part, because NWMLS's alleged conduct was not the proximate cause of any damages suffered by Compass.

## THIRTEENTH DEFENSE

### Speculative Damages

Compass's claims are barred, in whole or in part, because any injury and/or damage it claims to have suffered is speculative and/or difficult to estimate.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 18
CASE NO. 2:25-cv-00766-JNW

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

152984037.1 0068832-00015

## FOURTEENTH DEFENSE

### Promotion of Interbrand Competition

Compass's claims are barred, in whole or in part, because the conduct alleged in the Complaint promotes Interbrand competition and/or improves the quality of services provided by firms which are members in NWMLS.

## FIFTEENTH DEFENSE

### Competitor's Privilege

To the extent that Compass claims that it is a competitor of NWMLS, its claims are barred, in whole or in part, because any alleged interference on the part of NWMLS was through lawful competition.

## SIXTEENTH DEFENSE

### No Improper Means/Improper Purpose

Compass's claims are barred, in whole or in part, because NWMLS did not engage in any wrongful conduct, use any improper means, or have an improper purpose.

## SEVENTEENTH DEFENSE

### State Action Defense

Compass's claims are barred, in whole or in part, because NWMLS acted in accordance with the laws, regulations, and authorized policies of the State of Washington, including but not limited to RCW 18.86, et seq.

## RIGHT TO AMEND

Because Compass's Complaint is couched in conclusory terms which are based upon speculation, conjecture, and vague references to information and belief, NWMLS cannot fully anticipate all affirmative defenses that may be applicable to this action. Discovery is ongoing. Accordingly, NWMLS reserves the right to amend its Answer to assert additional defenses and counterclaims in the future and to supplement those asserted herein upon further investigation and discovery.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 19
CASE NO. 2:25-cv-00766-JNW

## NORTHWEST MULTIPLE LISTING SERVICE'S COUNTERCLAIMS

By way of further Answer, and as Counterclaims against Counterclaim Defendants Compass, Inc. and Compass Washington, LLC (collectively, "*Compass*"), Counterclaim Plaintiff Northwest Multiple Listing Service ("*NWMLS*") alleges as follows:

### I.    PARTIES

1.    Counterclaim Plaintiff NWMLS is a member-owned, Washington not-for-profit corporation with its primary place of business at 11430 NE 120th Street, Kirkland, Washington, 98034-8220.

2.    One such member of NWMLS is Counterclaim Defendant Compass Washington, LLC ("*Compass Washington*"). Upon information and belief, Counterclaim Defendant Compass Washington is a Delaware limited liability company registered in Washington as a foreign limited liability company.

3.    Upon information and belief, Compass Washington is the wholly-owned subsidiary of Compass Brokerage, LLC, which is not a party to this lawsuit.

4.    Upon information and belief, Counterclaim Defendant Compass, Inc. is a Delaware corporation with its principal place of business located in New York City, New York, and is the parent company of Compass Brokerage, LLC.

### II.    JURISDICTION AND VENUE

5.    The Court has subject matter jurisdiction over NWMLS's counterclaim for declaratory judgment pursuant to 28 U.S.C. § 2201-2202, the Declaratory Judgment Act, and over NWMLS's state law counterclaims under 28 U.S.C. § 1367, which should be exercised in the interests of judicial economy, convenience, and fairness because NWMLS's state law claims are so related to claims over which the Court has original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

6.    The Court has personal jurisdiction over Compass by virtue of the underlying lawsuit by Compass, and because Compass regularly transacts business in Washington State.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 20
CASE NO. 2:25-cv-00766-JNW

7. Venue is proper with pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Compass and NWMLS transact business in the State of Washington and the events or omissions giving rise to NWMLS's counterclaims occurred in Washington.

## III.    FACTUAL BACKGROUND

**A.    NWMLS's Rules Foster Fairness, Efficiency, and Transparency in Real Estate Transactions.**

8. For decades, NWMLS has served consumers and brokerages across Washington and parts of Oregon. NWMLS's subscribers include more than 30,000 real estate brokers who represent both sellers and buyers. It is governed by an independent Board of Directors representative of brokerages with different business models.

9. Brokerages who join NWMLS's member-owned network agree to abide by a set of operating rules—the NWMLS Bylaws ("*Bylaws*") and NWMLS Rules and Regulations ("*Rules*"). Brokerage firms and their brokers who subscribe to NWMLS's services agree to abide by the Bylaws and Rules.

10. NWMLS's commitment to transparency and equal access benefits all parties involved in real estate transactions, including home buyers, sellers, listing brokers, buyer brokers, and appraisers. NWMLS establishes rules for its participating members to ensure that consumers, and the brokers they choose to have represent them, have access to residential real estate listings and property data on equal terms, regardless of sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, families with children status, honorably discharged veteran or military status, the presence of any sensory, mental, or physical disability, or the use of a trained dog guide or service animal by a person with a disability. These listings and property data include, but are not limited to, the number of days a property has been listed on the market—in short, how long it has been available for purchase and sale—as well as listing price changes, a seller's offer of broker compensation (if any), tax records, and sales histories.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 21
CASE NO. 2:25-cv-00766-JNW

11. In addition to operating its own platform that centralizes data for consumers and brokers, NWMLS also provides its members with other valuable products and services, including access to listings and property data through its Internet Data Exchange ("**IDX**") program, which consolidates all of its members' listings in a data feed (the "**IDX Data Feed**") that member firms can then license to use to populate their own public facing websites. By receiving a license to the IDX Data Feed, member firms, regardless of their size, can then populate their public facing websites with significant inventory of real estate listings that are available for sale for consumers.

12. To ensure fairness and transparency for all and to prevent free-riding by recalcitrant members, NWMLS Rules prohibits members from promoting or advertising any property for which listing data has not been submitted.

13. Thus, NWMLS Rule 2 provides:

a. Initial Listing Input. The listing firm shall deliver to NWMLS or input all listings not later than the date specified in the listing agreement ("List Date"), which date shall not be more than 90 days from the effective date of the agreement.

\* \* \*

c. No Promotion/Advertising When Listing Not Published. Members shall not promote or advertise any property in any manner whatsoever, including, but not limited to yard or other signs, flyers, websites, e-mails, texts, mailers, magazines, newspapers, open houses, previews, showings, and tours, unless a listing for that property has been delivered to NWMLS or input by the member and has not been cancelled, expired, or taken temporarily off the market.

14. In addition to the many choices for sellers (e.g., various marketing options, control over showings and property access, undisclosed seller information), NWMLS Rules and policies provide for important exceptions to accommodate a seller's unique privacy, health, safety, or security concerns. For example, NWMLS's Undisclosed Address/Tax Identification or

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 22
CASE NO. 2:25-cv-00766-JNW

Unpublished Listing Policy allows listing brokers to comply with NWMLS Rule 2 while also accommodating their clients' potential unique needs.

15.     The economic value of NWMLS's platform, including but not limited to the various products and services it provides—like the IDX Data Feed—depends on its accuracy, its completeness, and the uniform application of its Rules across members. NWMLS's platform and data services are a core component of its business. As explained below, Compass's conduct resulted in knowingly incomplete, misleading, or inconsistent listing data submitted to NWMLS causing a degradation of its data products and services. This degradation diminishes the economic value of NWMLS's paid services.

**B.      Compass Engages in Unfair and Deceptive Marketing Practices.**

16.     Marketing strategies that emphasize exclusivity and exclusion are not only detrimental to competition and consumers, but also contrary to the principles of fair housing. That is because "listings through private 'pre-marketing' or 'off market'" programs are just that, exclusionary—they create a two-tiered system that limits access to people and brokers who are not part of the listing broker's selected private, exclusionary network.

17.     Compass's Three-Phased Marketing Strategy ("*3PM*") represents a prime example of an exclusionary marketing strategy which disadvantages potential purchasers and brokers seeking to represent buyers who are not affiliated with Compass.

18.     Compass is a long-standing member of NWMLS and as a member, is familiar with the Bylaws and Rules, and when it joined NWMLS, it agreed to abide by those Bylaws and Rules. Indeed, until recently a Compass broker held a seat on NWMLS's Board of Directors. A Compass broker also serves on NWMLS's Bylaws and Rules Committee.

19.     Despite agreeing to abide by, and previously complying with, the Bylaws and Rules, in or about March 2025, Compass launched 3PM in Washington.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 23
CASE NO. 2:25-cv-00766-JNW

20. The first phase of 3PM is called the Private Exclusive phase (the "*Private Phase*"). In the Private Phase, Compass claims that it allows sellers to "test price, gather insights, and build anticipation before going public."[1]

21. In the Private Phase, a property is not publicly marketed or listed on NWMLS, but it is available for sale to a potential purchaser working with a Compass agent. Compass admits this. In the Private Phase, according to Compass's advertising materials, properties are "only accessible to Compass agents and their serious buyers." Thus, while Compass claims that it is engaging in the Orwellian-named practice of "pre-marketing," the Private Phase is a façade to gain entry to the marketplace at a critical juncture—when the property is new to the marketplace—while simultaneously withholding listing information from buyers and other brokers who are not working with a Compass agent. Such exclusionary marketing hurts sellers, buyers, and other brokers, and only benefits Compass and its brokers by allowing them a greater opportunity to participate on both sides of the sale (the sale side and the buy side), allowing Compass to receive the full commissions on the sale of a home rather than just one side of the transaction. It also serves as a recruiting tool for brokers licensed with Compass competitors.

22. While touting the purported benefits of 3PM, according to Compass's marketing materials, Compass admits that the Private Phase fails to result in sales almost 95% of the time. When the Private Phase fails, Compass's 3PM proceeds to a second phase called "Compass Coming Soon" (the "*Private Coming Soon Phase*"). In the Private Coming Soon Phase, again, a property is not publicly marketed. Instead, a property is accessible only on the Compass website, and only viewable by select brokers and their buyers who are subscribed to or visit Compass.com. Private Coming Soon Phase properties are not listed with NWMLS. A Private Coming Soon listing is not actually "coming soon," it is most certainly available for sale—in fact, even where the listing is marketed as "coming soon," if the listing broker receives an offer or other communication from

---

[1] *See* Compass Private Exclusives, https://www.compass.com/private-exclusives/ (last accessed Mar. 6, 2026).

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 24
CASE NO. 2:25-cv-00766-JNW

a potential buyer or their broker, the listing broker is required by RCW 18.86 to timely present it to the seller.

23. According to Compass's marketing materials, Compass also admits that most properties fail to sell in the second, Private Coming Soon Phase. Only in the third phase of 3PM does Compass finally submit the listing to NWMLS, where Compass's listings are finally exposed to the full public marketplace, all buyers and brokers can finally compete on equal terms for the sale of the property and the vast majority of Compass's listings finally sell.

24. Concerningly, Compass's practices do not end with manipulating the timing of listing properties on NWMLS. In addition, while properties in 3PM are in at least the first two phases of the program and are clearly available for purchase and sale, Compass intentionally withholds material facts regarding the listing from consumers and other brokers, including the time the property was listed "privately and exclusively" with Compass or any price changes that occurred while the property was in the Private Phase or Private Coming Soon Phase. Compass refers to such information as "negative insights" that a listing broker and seller should not disclose to a buyer's broker or buyer. Compass readily admits to this practice, promising listing brokers participating in 3PM that they will be able to list the property "without accumulating days on market and price drop history."[2] In short, Compass deliberately misleads consumers and brokers accessing information from NWMLS claiming that the 3PM property has not been available for sale, while Compass knows very well that the property has been available for sale and viewing for a significant period of time. Consumers and their non-Compass brokers accessing the property for the first time through NWMLS have thus been deprived of material and valuable information about the property, putting them at a distinct disadvantage to Compass-represented buyers and Compass brokers.

---

[2] *See* Compass, Disclosure Regarding The Compass Three-Phased Marketing Strategy, https://docs.google.com/document/d/11XXXogG2LbxB2evu5Sv2dOM7-ii2Xc5Ex7XGxRsuHqI/edit?tab=t.0 (last updated May 27, 2025).

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 25
CASE NO. 2:25-cv-00766-JNW

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

152984037.1 0068832-00015

25. "Negative insights," however, are valuable information and material facts a buyer and buyer's broker should know before making an offer on a property.

26. The Private Phase and the Private Coming Soon Phase of Compass's 3PM (jointly, the "Private Phases") also harm consumers by excluding those buyers and brokers the listing broker or seller wish to exclude from a portion of the housing market.

27. The Private Phases often result in worse outcomes for sellers, who end up simply delaying publicly marketing their property, and as a result, reducing their listing's exposure and accruing unproductive days on the market. Compass itself admits the Private Phases are generally ineffective for their sellers, conceding that "the vast majority of Compass's listings are ultimately marketed publicly to all buyers and sold on the local MLS."[3]

28. Despite the inefficiencies, ineffectiveness, poor consequences, and misinformation of the Private Phases for buyers and sellers, Compass still promotes the use of Private Phases because they serve the interests of Compass and its brokers.

29. At the time Compass launched 3PM in Washington in early 2025, Compass knew that the Private Phases violated NWMLS Rule 2. Indeed, before launching, Compass tried to get NWMLS to change its Rules to allow Compass to privately market properties to its own brokers and select buyers, and avoid public marketing. NWMLS's Bylaws and Rules Committee and the Board of Directors, which both included a Compass broker, declined to change the Rules to allow for such practices.

30. Instead of complying with NWMLS Rules, marketing properties to all brokers and consumers, and adhering to the values of fairness, comprehensive information and transparency, Compass created a strategy to flout the rules and plowed forward with 3PM.

31. At all times, Compass knew that the Private Phases of 3M violated the letter and spirit of NWMLS Rules.

---

[3] *See* Compass Newsroom, "Compass Sets the Record Straight: NWMLS's Claims Are Baseless and Self-Serving," https://www.compass.com/newsroom/press-releases/1DGIyUiV32ByzQdW423Hxb/ (July 2, 2025).

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 26
CASE NO. 2:25-cv-00766-JNW

32.    Compass leadership, however, actively and knowingly encouraged brokers to violate NWMLS Rules by engaging in the Private Phases. Compass CEO Robert Reffkin praised Compass brokers who breached their contract with NWMLS by engaging in the Private Phases and only marketing properties privately. Instead of encouraging compliance with longstanding Washington policies promoting transparency and fairness, Mr. Reffkin disparaged NWMLS's pro-competitive, consumer-protective Rules as "restrictive"[4] and "control[ling]."[5]

33.    Compass knew that encouraging brokers to engage in the Private Phases violated NWMLS Rules. Compass brokers reported to the press that Compass leadership told brokers it "remain[ed] committed" to covering any sanctions, including any financial penalties or fines, incurred by brokers for violating NWMLS's Rules.[6]

34.    Compass also subverted NWMLS Rules by encouraging sellers to execute listing agreements to avoid input requirements by attempting to subvert Rule 4 and Rule 6.

35.    Beginning in March 2025, NWMLS notified Compass that its practices were not in compliance with the Rules. Compass refused to come into compliance. Compass's intentional violation of the Rules caused NWMLS to incur unnecessary costs investigating, monitoring, and enforcing Compass's compliance. Such costs amount to an injury to NWMLS's business and property. This injury includes additional staff time, as well as the expenditure of funds for legal resources, system resources, and administrative expenses. After weeks of communications with Compass and weeks of Compass publicly flouting NWMLS Rules, NWMLS temporarily suspended Compass's IDX Data Feed license for 48 hours beginning April 15, 2025.

36.    NWMLS advised Compass how to receive a Participant Only feed (which contains Compass' listings), as well as how to have the IDX Data Feed license restored by providing

---

[4] https://www.instagram.com/p/DHn64egxco-/?img_index=1
[5] Robert Reffkin, LinkedIn https://www.linkedin.com/posts/robertreffkin_agents-shouldnt-be-fined-by-mlss-or-banned-activity-7358099611397283841-KmRN/
[6] *See* AJ LaTrace, "How Compass Staged Its Pre-Marketing Blitz in Seattle," Real Estate News (Apr. 4, 2025), https://www.realestatenews.com/2025/04/04/how-compass-staged-its-pre-marketing-blitz-in-seattle.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 27
CASE NO. 2:25-cv-00766-JNW

evidence that all of Compass's listings had been entered, and warranting that all of Compass's future listings would be entered consistent with the Rules.

37.    While Compass's IDX Data Feed license was suspended, Compass still qualified to receive a Participant Only feed. Compass, however, failed to avail itself of that opportunity.

38.    During the temporary suspension of its IDX Data Feed license, Compass brokers continued to have full access to the NWMLS member site, its comprehensive listing data, listing input and transaction forms, and the complete array of other services.

39.    After Compass agreed to comply with the Rules NWMLS restored Compass's IDX feed data license on April 17, 2025.

**C.    Washington Enacts Law Codifying NWMLS's Rule 2 Public Marketing Requirement.**

40.    On March 3, 2026, the Washington State Legislature passed Substitute Senate Bill 6091 ("the "***Public Marketing Law***"), which was signed by the Governor on March 17, 2026. The Public Marketing Law takes effect June 11, 2026.

41.    The Public Marketing Law adds a new section to Chapter 18.86 of the Revised Code of Washington, which governs real estate brokerage relationships. The new section dovetails with and effectively codifies NWMLS Rule 2, requiring marketing concurrently to (1) the general public and (2) to all other real estate brokers. It provides, in relevant part:

> A broker may not market the sale or lease of residential real estate to a limited or exclusive group of prospective buyers or brokers, or any combination thereof, unless the real estate is concurrently marketed to the general public and all other brokers, except as reasonably necessary to protect the health or safety of the owner or occupant. Marketing to the general public does not require an owner to allow access onto the residential real estate or into the residence.

SSB 6091, Sec. 1, 69th Leg. (Reg. Sess. 2026).

42.    In other words, Washington lawmakers have determined that it is unlawful for a broker to engage in selective, private marketing to either an exclusive group of consumers or a

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 28
CASE NO. 2:25-cv-00766-JNW

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

152984037.1 0068832-00015

select group of brokers. Any marketing of residential property requires simultaneous public marketing and marketing to all brokers.

43. In enacting the Public Marketing Law, the Legislature recognized that requiring brokers to publicly market to all consumers and all brokers is pro-competitive, and supported fairness in access to housing for first-time buyers and other marginalized groups. The Legislative history reflects:

> This bill is about competition and fairness in access to housing. It addresses an emerging model in which real estate firms and brokers only market property to a select group of buyers, renters, or brokers. It creates a two-tiered system where insiders get to see and compete for inventory earlier and with less competition, while outsiders including first-time homebuyers, immigrants, and lower wealth households may be shut out of opportunities.
>
> * * *
>
> Subtle forms of discrimination persist, often hidden within exclusive marketing strategies or selective outreach. Discrimination can be explicit, implicit, or simply unconscious. One study found that hidden listings may be reinforcing racial divides. … ***This is about the largest company in the country wanting to get both sides, the buyer's side and the seller's side, of the compensation***.

Senate Bill Report, SB 6091, 69th Leg. (Reg. Sess. Jan. 30, 2026) (emphasis added).

44. Compass knows that when the Public Marketing Law takes effect on June 11, 2026, the Private Phases and related practices will violate state law.

## FIRST CAUSE OF ACTION

## DECLARATORY JUDGMENT ACT

45. NWMLS incorporates the preceding paragraphs by reference.

46. An actual and justiciable controversy exists between NWMLS and Compass as to whether the Private Phases of Compass's 3PM and related practices violate NWMLS's Bylaws and Rules.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 29
CASE NO. 2:25-cv-00766-JNW

47.     An actual and justiciable controversy exists between NWMLS and Compass as to whether NWMLS's Bylaws and Rules, on which NWMLS relies to prohibit the Private Phases of Compass's 3PM and related practices, are lawful and enforceable.

48.     At the same time, Compass has aggressively implemented 3PM in other marketplaces across the country, now touting that it has a network of 340,000 agents. The limited period of implementation in Washington and Oregon, to date, thus does not reflect an intent by Compass to cease its efforts. Indeed, if NWMLS does not enforce its Rules, NWMLS expects that Compass will press forward with 3PM in Washington and Oregon. Thus, the dispute is not moot.

49.     NWMLS expects that if it does not enforce its Rules, Compass will promptly commence utilizing the 3PM in the state of Washington again and violate the Rules.

50.     There is no agreement or injunction in place stopping Compass from trying to utilize 3PM in Washington and Oregon.

51.     Because Compass listings under the Private Phases of 3PM are privately listed, NWMLS does not have full visibility into Compass's current conduct.

52.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, NWMLS seeks a judgment that its Bylaws and Rules, on which NWMLS relies to prohibit the Private Phases of Compass's 3PM and related practices, are lawful and enforceable, and that the Private Phases of Compass's 3PM and related practices violate NWMLS's Bylaws and Rules.

## SECOND CAUSE OF ACTION

## VIOLATION OF CONSUMER PROTECTION ACT

53.     NWMLS incorporates the preceding paragraphs by reference.

54.     The Washington Consumer Protection Act ("*CPA*"), RCW 19.86.020, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The fundamental purpose of the CPA is to "complement the body of federal law governing restraints of trade, unfair competition and unfair, deceptive, and fraudulent acts or practices in order to protect the public and foster fair and honest competition." RCW 19.86.920.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 30
CASE NO. 2:25-cv-00766-JNW

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

55. Compass has engaged in unfair and deceptive practices through the Private Phases of 3PM and related practices by marketing residential properties outside of NWMLS, then later submitting those properties to NWMLS with materially incomplete and misleading listing data, including artificially erasing "days on market," incomplete pricing history, and suppressed exposure history that Compass intended to  be incorporated into NWMLS's database and distributed to NWMLS members and subscribers.

56. Compass's unfair and deceptive practices include failing to publicly market listings, limiting who has access to listings, and concealing and misrepresenting material information concerning properties that Compass ultimately elects to list on a multiple listing service, such as NWMLS. Compass's concealment and misrepresentation of material information concerning the properties it provides NWMLS deceives consumers, deceives the broker members of NWMLS, and thus ultimately causes harm to NWMLS because the value of the information it provides has been severely degraded. As a direct and proximate cause of Compass's conduct, NWMLS suffered injury to paid data services, the value of which depends on the accuracy and reliability of listing information that Compass knowingly compromised.

57. By first engaging in Private Phases with select participants, and not simultaneously marketing listings publicly and to the brokerage community, Compass later submits deliberately misleading data to NWMLS. Compass knows that days on market and pricing data are material pieces of information concerning a property for sale in Washington, and are material to prospective purchasers' decision making. By failing to properly account for days on market and supplying full pricing data associated with listings that are marketed for sale during the Private Phases, Compass makes material misrepresentations that have the capacity to deceive, including deception that increased the cost to NWMLS of delivering accurate, reliable data products to its members and subscribers, as well as a substantial portion of the public. That is because buyers, especially those who are not represented by brokers, have no way to know that Compass's listing data may be false or to determine which Compass listings contain accurate data and which do not. Moreover, many

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 31
CASE NO. 2:25-cv-00766-JNW

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

brokers may not realize that they cannot rely on the accuracy of the data in Compass listings and other brokers, who may be aware of Compass's deceptive practices, will be forced to inquire about the accuracy of the data in every Compass listing.

58. Compass's practices occur in the context of trade or commerce, as they involve the advertisement, marketing, and sale of assets affecting the people of the state of Washington, including the marketing of residential real estate and submission of listing data to NWMLS's real estate listing and data-distribution systems.

59. Compass's practices impact the public interest. Compass's acts and practices directly impacted NWMLS's real estate data services relied upon by thousands of brokers and subscribers. Moreover, the impact on consumers is immense—the Private Phases cause more than just confusion. Compass's practices result in the direct degradation of the quality of information resulting in a loss of value of NWMLS's platform and services and an increased cost of delivery.

60. Compass's conduct has been willful. Compass promoted and incentivized participation in the Private Phases as part of its regular course of business, and continued to do so even after NWMLS notified Compass that the conduct violated NWMLS Rules and requires remediation.

61. Compass's practices have a substantial likelihood of repetition, as Compass has continued to endorse, promote, and litigate in favor of the challenged practices.

62. Compass's unfair and deceptive practices directly and proximately harm NWMLS's business and property. NWMLS seeks relief for injury to its own operations, proprietary data assets, and paid data services. In addition, Compass's unfair and deceptive practices undermine the values of consumer transparency, erode integrity and consumer trust in the residential real estate market, violate NWMLS Bylaws and Rules, and harm consumers.

63. Compass's practices are the proximate cause of harm to NWMLS.

64. As a direct and proximate result of Compass's CPA violations, NWMLS suffered objective economic loss, including increased operational costs, compliance and enforcement

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 32
CASE NO. 2:25-cv-00766-JNW

expenses, and impairment to the value of its listing database and related data services, in amounts to be proven at trial.

## THIRD CAUSE OF ACTION

### FRAUDULENT MISREPRESENTATION

65.    NWMLS incorporates the preceding paragraphs by reference.

66.    Under RCW 18.86.030(b) and (d), licensed real estate brokers have mandatory disclosure requirements, including the duty "[t]o deal honestly and in good faith" and "[t]o disclose all existing material facts known by the broker and not apparent or readily ascertainable to a party."

67.    Under RCW 18.86.090(1), Compass is vicariously liable for its brokers' violations of RCW Chapter 18.86 if it "participated in or authorized the act, error, or omission."

68.    On information and belief, Compass brokers who engaged in the Private Phases of 3PM and related practices made material misrepresentations in NWMLS listings that (a) subverted their obligations to deal honestly and in good faith with buyers and the buyers' brokers, and (b) circumvented their duty to disclose material facts to third parties.

69.    Compass deceptively marketed "non-exclusive" listings as "private exclusives."

70.    Compass deceptively marketed properties as "coming soon" where properties were not, in fact, "coming soon" but were available for purchase.

71.    Compass encouraged and directed brokers to input false or misleading information into NWMLS listings.

72.    Compass failed to disclose to customers that their listings contained false or misleading information.

73.    Compass knew, or had reason to know, that directing its brokers to misrepresent material information in listings was a breach of brokers' respective disclosure obligations under at least RCW 18.86.030(b) and (d).

74.    Consumers, brokers, appraisers and members of the public rely upon NWMLS data in real estate transactions to be accurate.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 33
CASE NO. 2:25-cv-00766-JNW

75.    Compass's concealment of material information concerning the properties it provides NWMLS deceives consumers, deceives the broker members in NWMLS, and thus ultimately causes harm to NWMLS because the value of the information it provides has been severely degraded.

76.    As a result of Compass's fraudulent misrepresentations, NWMLS has been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH CONTRACT

71.    NWMLS incorporates the preceding paragraphs by reference.

72.    NWMLS Bylaw 2, entitled "Bylaw[s] and Rules Contract Between NWMLS and Member" provides that the Bylaws and the Rules of NWMLS constitute a contract and agreement between the members with respect to the rights and obligations set forth herein.

73.    Members and brokers who subscribe to NWMLS's services are parties to a user agreement with NWMLS, under which they agree to abide by the Bylaws and Rules.

74.    The user agreement provides that brokers "shall comply with the then current NWMLS Bylaws, Rules and Regulations, and related policies." Members and brokers acknowledge that they "may be subject to disciplinary action for [their] failure to comply, including monetary sanctions, suspension or termination of services, and other penalties."

75.    Compass, as a member of NWMLS, knows of the user agreement between brokers and NWMLS.

76.    Compass intentionally interfered with NWMLS's agreements with brokers by encouraging and inducing brokers to violate Rules. Indeed, Compass actively incentivized brokers to violate Rules.

77.    Compass's interference was based on improper means because Compass knew, or had reason to know, that directing its brokers to misrepresent material information in listings was

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 34
CASE NO. 2:25-cv-00766-JNW

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

152984037.1 0068832-00015

a breach of brokers' obligations under at least RCW 18.86.030(b) and (d), RCW 18.85.361(3), and NWMLS Rules.

78.     As a result of Compass's tortious interference with contracts, NWMLS has been damaged in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, having answered the Complaint, asserted affirmative and/or additional defenses, and alleged its counterclaims, NWMLS seeks the following relief:

A.     Dismissal of the Complaint with prejudice and without recovery or relief of any kind to Compass;

B.     A declaration that NWMLS's Bylaws and Rules, on which NWMLS relies to prohibit the Private Phases of Compass's 3PM and related practices, are lawful and enforceable, and that the Private Phases of Compass's 3PM and related practices violate NWMLS's Bylaws and Rules.

C.     Judgment in favor of NWMLS and against Compass on NWMLS's counterclaims, and an award of damages in an amount to be proven at trial;

D.     An award of pre-judgment and post-judgment interest to the extent permitted by law;

E.     An award of fees, costs, and expenses, including, but not limited to, reasonable attorneys' fees and costs, to the extent permitted by law; and

F.     Such other relief as the Court deems just and proper.

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 35
CASE NO. 2:25-cv-00766-JNW

152984037.1 0068832-00015

DATED: May 14, 2026

Respectfully submitted

*s/ Vanessa Soriano Power*
Vanessa Soriano Power, WSBA No. 30777
Rachel Hay, WSBA No. 60245
STOEL RIVES LLP
600 University St
Suite 3600
Seattle, WA 98101-3197
Telephone: 206-386-7553
Email: vanessa.power@stoel.com
        rachel.hay@stoel.com

Claude Szyfer (admitted pro hac vice)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Telephone: 212-918-3000
Email: claude.szyfer@hoganlovells.com

Liam Phibbs (admitted pro hac vice)
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth St NW
Washington, DC 20004-1109
Telephone: 202-637-5600
Email: liam.phibbs@hoganlovells.com

*Attorneys for Defendant Northwest
Multiple Listing Service*

AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS - 36
CASE NO. 2:25-cv-00766-JNW

152984037.1 0068832-00015