The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

COMPASS, INC. and COMPASS WASHINGTON, LLC,

        Plaintiffs,

    v.

NORTHWEST MULTIPLE LISTING SERVICE,

        Defendant.

Case No. 2:25-cv-00766-JNW

**PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS**

NOTING DATE: June 25, 2026

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# Table of Contents

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND ................................................................................................ 3

    A.    NWMLS is a Private Organization of Brokerages that Dictates How Homeowners Can Sell their Homes. ............................................................. 3

        1.    NWMLS's Listing Database. ............................................................ 3

        2.    NWMLS's Rules. ............................................................................. 4

    B.    Compass is a Real Estate Brokerage with Innovative Strategies for Brokers and Homeowners. ......................................................................... 4

    C.    NWMLS Blocked 3PM Within Weeks of Compass's Highly Publicized Launch. ...................................................................................................... 6

    D.    NWMLS Makes Conclusory Claims of Deception and Harm. ................... 7

III.  LEGAL STANDARD ........................................................................................ 8

IV.   ARGUMENT ..................................................................................................... 8

    A.    NWMLS Lacks Article III Standing. ........................................................ 9

        1.    NWMLS lacks standing to sue on behalf of the public. ................... 9

        2.    NWMLS fails to plausibly allege organizational standing. ............ 10

    B.    Declaratory Judgment. ............................................................................ 13

        1.    The sole "actual controversy" is a mirror image of Compass's claims. ............................................................................................ 15

        2.    NWMLS's request for a declaration that 3PM violates its rules is moot. ............................................................................................. 15

        3.    NWMLS cannot seek a declaration on unspecified laws. ............... 15

    C.    Fraudulent Misrepresentation ................................................................. 16

        1.    NWMLS cannot manufacture fraud from unpleaded breaches of irrelevant statutes. ....................................................................... 17

        2.    No false representations. ................................................................ 18

        3.    No intent, ignorance, reliance, or damages. ................................... 19

    D.    CPA ......................................................................................................... 20

        1.    No unfair or deceptive act. ............................................................ 20

        2.    No proximately caused injury to NWMLS's business or property. ... 22

    E.    Tortious Interference ............................................................................... 23

        1.    No wrongful interference. .............................................................. 23

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

2. No pecuniary loss..........................................................................................25

V. CONCLUSION............................................................................................... 26

VI. CERTIFICATION OF CONFERRAL ............................................................ 27

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## I.    INTRODUCTION

Only a monopolist like NWMLS would sue its own customer, Compass, for standing up for competition and homeowner choice. This lawsuit arises because NWMLS *already* punished Compass and consumers by blocking Compass from delivering innovation and competition to the Seattle real estate market. Now, through its counterclaims, NWMLS tries to manufacture tort liability from Compass's efforts to help its brokers comply with their fiduciary duties and offer homeowners different options to market their homes. But NWMLS's own anticompetitive "success" in blocking those practices prevented any harm to *it*. Thus, its counterclaims serve only as an unveiled threat to Compass and any other Seattle-area brokers who might consider opposing NWMLS's mandates or breaking from the conspiracy of brokers it has organized.

NWMLS's counterclaims (as originally filed and as improperly amended)[1] target a fleeting moment in 2025 when Seattle-area homeowners could access 3-Phased Marketing ("3PM"), Compass's innovative offering that affords homesellers control over when, where, and how to market their homes—a choice available to homeowners in every other state. NWMLS, with its co-conspirators, forced an abrupt end to that autonomy. Within weeks of Compass first offering 3PM to Seattle-area homesellers, NWMLS flexed its immense monopoly power and ability to coordinate competitors against Compass and blocked homeowners in the Seattle area from having a choice in how to market their properties. As described in the Complaint, after NWMLS cut off Compass's access to its data feed, Compass had no choice but to stop offering 3PM in the Seattle area, which harmed Compass, brokers, and homeowners. Now, through counterclaims for fraud, CPA violations, and tortious interference, NWMLS seeks to weaponize its anticompetitive "success" with a fanciful theory that Seattle-area homesellers' access to 3PM for, at most, *weeks* deceived third parties—but not NWMLS—and "severely degraded" NWMLS's database which, at the time, contained more than 14,000 properties.

---

[1] *See* Dkt. 104.

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 1
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

NWMLS's counterclaims are baseless. As shown by the contemporaneous marketing and press highlighted by NWMLS, Compass did not conceal anything about 3PM or its launch in the Seattle market from anyone. Compass's marketing materials fully disclosed each aspect of its 3PM strategy and how *anyone* could access information about 3PM-marketed properties. Meanwhile, industry press and Compass's CEO publicized the first uses of 3PM in the Seattle area in real time.

Moreover, NWMLS does not allege any plausible injury of its own. Rather, it speculates injury to "consumers," "buyers," "sellers," "broker members," and the "public" to justify its claims. Setting aside that NWMLS's claims of harm (e.g., to consumers—a constituency that includes the homesellers whose interests it defied) are not plausible, NWMLS cannot establish standing by claiming alleged harms to third parties as its own. As emphasized by its actions here, NWMLS *is not a consumer organization*; it is a private, brokerage-owned organization controlled by incumbent firms that use its rules to dictate how homes can be marketed and sold.

The only "injuries" NWMLS alleges for itself are (1) conjecture that weeks of seller access to marketing strategies other than NWMLS's database "severely degraded" its value and (2) "costs" of its anticompetitive business. These are not cognizable injuries traceable to Compass. Moreover, by NWMLS's own telling, any "degradation" was less than *de minimis*. At most, its pleadings suggest that a single-digit number of its 14,000+ listings *could* have been "degraded" by Compass brokers honoring homeowners' decisions to use 3PM for a period of hours, days, or (at most) weeks before NWMLS forced them to list their properties against their wishes. In short, NWMLS's hooks for Article III standing are a mathematically impossible abstraction or voluntary business spend.

As none of NWMLS's claims is viable, all should be dismissed pursuant to Rule 12(b)(1) or 12(b)(6).

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 2
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## II.    BACKGROUND[2]

**A.    NWMLS is a Private Organization of Brokerages that Dictates How Homeowners Can Sell their Homes.**

NWMLS is a private, member-owned, not-for-profit corporation composed of competing member brokerages. Amended Answer ("Answer") ¶1. NWMLS does not buy or sell homes, represent buyers or sellers, or transact in real estate. Rather, it facilitates the exchange of listings and property data among its member brokerages. Amended Counterclaims ("CC") ¶11. NWMLS is governed by brokers who sit on its Board of Directors, including five affiliated with Windermere. Answer ¶¶1, 26. This Board adopts and amends NWMLS's rules. Answer ¶¶10, 83; CC ¶9.

### 1.    NWMLS's Listing Database.

NWMLS operates a database through which Seattle area brokers access residential real estate listings. *See* Answer ¶33. "These listings and property data include…the number of days a property has been listed on the market," which NWMLS defines here as "in short, how long it has been available for purchase and sale." CC ¶10. NWMLS does not allege how or by whom "days on market" is calculated.

NWMLS also maintains a public-facing website. CC ¶11. There, under boldface headings, NWMLS disavows the accuracy of the listings and warns every user that any weight they give to such information is "at your own risk."[3] "In addition to operating its own platform," NWMLS offers an "Internet Data Exchange ('*IDX*')" to member firms. CC ¶11. This pay-to-play tool provides access to a data feed of all members' listings. Brokerages like Compass depend on this feed, including to keep their own public-facing websites current. *See id.*

---

[2] Compass takes NWMLS's well-pleaded allegations as true for the purpose of this Motion.

[3] https://www.nwmls.com/terms-of-use/ (last visited May 19, 2026). The Court may take judicial notice of NWMLS's Terms of Use. *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *2 (W.D. Wash. Dec. 19, 2023) ("Public terms of service and privacy policies are proper subjects of judicial notice."); *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1042 (W.D. Wash. 2018) (statements on publicly available website are judicially noticeable for fact that the website contains those statements).

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 3
Case No. 2:25-cv-00766-JNW

## 2.    NWMLS's Rules.

NWMLS identifies three rules as relevant here: Rules 2, 4, and 6. CC ¶¶13, 34.

Rule 2, among other requirements, prohibits the promotion or advertising of certain properties (including all single-family homes) in any manner unless a listing for that property has been delivered to NWMLS. CC ¶13; Dkt. 28, p.9[4] (NWMLS's Rules and Regulations, last revised March 28, 2025, after Compass launched 3PM in Seattle area). Rule 4 identifies listings that are not accepted by NWMLS. Dkt. 28, p.10. Rule 6 provides that "unenforceable" listings will not be published—specifically, listings "containing a provision permitting the seller, in its sole discretion, to avoid payment of any Compensation Offer published in the listing even though an offer meets all terms of the listing and any required financing is available[.]" Dkt. 28, p.11.

These Rules have "exceptions." CC ¶14. Among them, NWMLS's "Unpublished Listing Policy" allows for some properties to "only appear in NWMLS database and only be available to licensed real estate brokers and appraisers," not to the public. *Id.*; Dkt. 28, p.43 (policy, submitted with NWMLS's motion to dismiss). NWMLS's Rule 2 does not ban pre-marketing of homes for sale by owner, which may be listed on NWMLS if the owner later engages a broker. CC ¶13; Dkt. 28, p.9 (Rule 2 contemplates "unlisted sales" of homes "for sale by owner" and its restriction on pre-marketing applies only to "members"). Rule 2 also "does not prohibit" a "builder from including a member's or subscriber's name and contact information in the builder's new construction promotions before the property is listed for sale." Dkt. 28, p.9.

## B.    Compass is a Real Estate Brokerage with Innovative Strategies for Brokers and Homeowners.

Compass is a residential real estate brokerage that operates in the Seattle area and across the United States. One of Compass's recent innovations is 3-Phased Marketing for homeowners (3PM). CC ¶20, n.1.[5] Through 3PM, homesellers (not those with Seattle area properties because of

---

[4] Docket pin citations are to the ECF-generated page number, not internal pagination.

[5] https://www.compass.com/private-exclusives/ (last visited May 19, 2026).

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 4
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

NWMLS) can choose to take advantage of Compass's pre-MLS opportunities to price test and maximize interest in their properties. *Id.* In Phase One, homeowners can list properties as "Private Exclusives," which are "showcased to 340,000 agents across our network of brokerages and their serious buyers, helping generate interest before the public launch – even while renovations or repairs are still underway." *Supra* n.4. Listing as "Private Exclusive" lets homeowners test the market and gather feedback about their property before listing it on an MLS. *Id.*[6]

Private Exclusives are not hidden or secret. As Compass explains to the public on its website, Private Exclusives are "available to 340,000 top agents across our network of brokerages and their clients – and to any buyer or brokerage who contacts a Compass agent."[7] As also explained on Compass's website:

> Every buyer and brokerage searching on Compass.com can see how many Private Exclusives match their criteria and connect with a Compass agent to learn more. In fact, while almost every real estate company in the United States has private listings, Compass is the only one that offers this level of transparency to consumers.[8]

In Phase Two, consumers can elect to list their properties as a "Compass Coming Soon" on the Compass.com website. CC ¶22 (misnaming this phase "the Private Coming Soon Phase"), n.2. Properties may also be contemporaneously marketed by Compass "through digital ads and newsletters." CC ¶24, n.2.[9]

---

[6] *Id.* ("Our structured launch strategy is designed to test pricing, build maximum exposure, and create a strong market debut. This approach helps protect your home from prolonged time on market, price reductions, and lost value.").

[7] https://www.compass-homeowners.com/ (last visited May 19, 2026). Although this particular webpage is not cited in NWMLS's pleading, it is incorporated by reference as NWMLS refers extensively to Compass's online marketing of 3PM. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Alternatively, the Court may take judicial notice of how Compass explains 3PM to the public. *Wilson*, 349 F. Supp. 3d at 1042.

[8] *Id.*

[9] https://docs.google.com/document/d/11XXXogG2LbxB2evu5Sv2dOM7-ii2Xc5Ex7XGxRsuHqI/edit?tab=t.0

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 5
Case No. 2:25-cv-00766-JNW

In Phase Three, homes are advertised "on the MLS and other public sites." *Supra* n.8.

Homeowners who elect 3PM enter a Compass 3-Phased Marketing agreement with a broker, *see* CC ¶34, n.2[10], who must comply with its terms. RCW 18.86.040 (a broker must "be loyal to the seller by taking no action that is adverse or detrimental to the seller's interest in a transaction" and must comply with the written contract).

**C.    NWMLS Blocked 3PM Within Weeks of Compass's Highly Publicized Launch.**

Compass first offered 3PM in the Seattle area in late March 2025. As reported in Realestatenews.com, the first Seattle area property listed as a Compass Private Exclusive was listed on the NWMLS after five days and went into contract shortly thereafter. CC ¶33, n.6. As publicized by Compass CEO Robert Reffkin on March 25, 2025, a Bainbridge Island home was the seventh Compass Private Exclusive in Washington state. CC ¶32, n.4. That day, NWMLS issued a discipline complaint to Compass based on reports that brokers had not entered listings on the NWMLS. Answer ¶64. Within three days, NWMLS revised its rules. Dkt. 28, p.4 (NWMLS Rules and Regulations "revised" March 28, 2025); Answer ¶62. Though NWMLS now alleges 3PM violates or "subvert[s]," its Rules, it does not specify whether it refers to Rule 4 as operative when 3PM launched or as revised in response thereto. CC ¶¶29, 34.

On April 15, 2025, 11 days after public reporting on the first and seventh Compass Private Exclusives in the Seattle area, NWMLS suspended Compass's access to the IDX data feed and mandated that Compass brokers list all properties on NWMLS. CC ¶¶35-36, 39. NWMLS admits its penalty had the intended effect of blocking 3PM in the Seattle area and that NWMLS accordingly restored Compass's IDX feed on April 17. *Id.* ¶39.

Aside from the facts reported in NWMLS's cited sources (seven properties listed as Private Exclusives, one for five days), NWMLS does not allege any facts about properties for which homeowners elected 3PM. Nor does NWMLS allege any facts about any specific listing it published

---

[10] https://docs.google.com/document/d/11XXXogG2LbxB2evu5Sv2dOM7-ii2Xc5Ex7XGxRsuHqI/edit?tab=t.0

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 6
Case No. 2:25-cv-00766-JNW

for a property previously listed as a Private Exclusive or Compass Coming Soon, not even the publicized first and seventh properties. Notwithstanding the absence of any such details, NWMLS alleges that the unspecified listings it forced Compass to enter onto its database were inherently deceptive. CC ¶¶55, 71-72, 75, p.33.

Compass sued NWMLS, alleging antitrust and tortious interference claims, each of which this Court has found plausible. Dkt. 86 (Order).

**D.    NWMLS Makes Conclusory Claims of Deception and Harm.**

NWMLS's counterclaims allege that, at the request of homesellers, Compass briefly marketed some (unspecified) number of its clients' properties outside of NWMLS and, when NWMLS demanded Compass enter those properties into its database, the listings reported "days on market" and price history only from the date of NWMLS entry. CC ¶¶24, 36, 55-57. According to NWMLS, these listings therefore created a misleading impression to unidentified, non-party consumers and brokers. CC ¶¶10, 24, 55-57, 59. As for the impact to NWMLS, it claims, "Compass's concealment of material information concerning the properties it provides NWMLS…ultimately causes harm to NWMLS because the value of the information it provides has been severely degraded." CC ¶¶15, 56, 75. For the first time in its amended pleading, NWMLS also claims it incurred "unnecessary costs investigating, monitoring, and enforcing Compass's compliance" including "staff time, as well as the expenditure of funds for legal resources, system resources, and administrative expenses." CC ¶¶35, 64.

NWMLS's theory assumes both that consumers and brokers are misled whenever NWMLS listings do not include pre-NWMLS marketing activity and that the resources NWMLS chose to direct toward forcing Compass to enter the very listings it now claims caused harm are an injury traceable to Compass. As explained below, NWMLS fails to substantiate either premise with well-pleaded allegations of fact.

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 7
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

### III.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although well-pleaded facts and reasonable inferences are accepted as true, the Court need not assume the truth of "conclusory" allegations, unwarranted deductions of facts, or unreasonable inferences." *State Farm Mut. Auto. Ins. Co. v. Peter J. Hanson, P.C.*, 2017 WL 3189026, at \*2 (W.D. Wash. July 27, 2017), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (no need to accept allegations contradicted by judicially noticeable facts). A court need not grant leave to amend where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Johnson v. American Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987).

Relevant to NWMLS's fraud and CPA counterclaims, Rule 9(b) further requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This heightened standard applies to claims "grounded in fraud"—*i.e.*, based on an alleged "unified course of fraudulent conduct," even if fraud is not an element. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

### IV.   ARGUMENT

NWMLS's claims of alleged consumer injury are meritless. The crux of its counterclaims is this: Compass introduced an innovative marketing strategy, some homeowners chose to use it for a few weeks (at most), and NWMLS forced them to stop. The alleged data injury is not sufficiently concrete or plausible for standing or damages; the alleged costs NWMLS incurred are not injury traceable to Compass; the absence of particularized allegations doom its fraud and CPA claims; the absence of actionable interference and proximately caused pecuniary harm defeat its interference

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 8
Case No. 2:25-cv-00766-JNW

claim; and NWMLS's request for declaratory relief is either duplicative of Compass's antitrust claims or inadequately pled.

## A.    NWMLS Lacks Article III Standing.

To establish Article III standing, NWMLS must demonstrate for "each claim…and for each form of relief" that (i) NWMLS "suffered an injury in fact that is concrete, particularized, and actual or imminent"; (ii) "the injury was likely caused by the defendant"; and (iii) "the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 431 (2021). An "injury in fact" requires harm that is "not conjectural or hypothetical." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). To pursue its damages claims, NWMLS must adequately plead concrete harm that has already materialized.  *TransUnion*, 594 U.S. at 431. As for causation, NWMLS must show a "causal connection between the injury [to it] and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

As a corporation, NWMLS must establish either organizational (direct) standing by showing it meets these elements on its own or associational standing (standing on behalf of its members). NWMLS fails to allege associational standing as it does not identify any member who would "otherwise have standing to sue in their own right." *Satanic Temple v. Labrador*, 149 F.4th 1047, 1050 (9th Cir. 2025) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)); *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (requiring "specific allegations establishing that at least one ***identified*** member had suffered or would suffer harm") (emphasis added)). The only member NWMLS *identifies* in its counterclaims is Compass. CC ¶18.

### 1.    NWMLS lacks standing to sue on behalf of the public.

NWMLS predicates its CPA and fraud claims on purported harm to "consumers" and the "public." CC ¶26 (claiming "harm" to "consumers"); CC ¶¶56-57 (predicating CPA claim on alleged deception of "consumers"); CC ¶75 (predicating fraud on same). But NWMLS is a private corporation owned by brokerages, not an attorney general. Answer ¶¶26, 32. No principle of Article III standing allows NWMLS to sue on behalf of consumers or the public.

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 9
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

## 2. NWMLS fails to plausibly allege organizational standing.

NWMLS does not allege a concrete injury to itself as required for organizational standing. For its tortious interference claim, NWMLS articulates no injury. CC ¶¶71-78, p.34 (alleging only that "NWMLS has been damaged in an amount to be proven at trial"). As for CPA and fraud, NWMLS alleges abstract concerns: namely, that NWMLS was "ultimately" harmed because the "value" of its "information" was "severely degraded." CC ¶¶50, 69. NWMLS's theory of "severely degraded" information is neither concrete nor plausible. And NWMLS's newly alleged monetary injury is of its own doing.

NWMLS offers no substantiating facts to transform the abstraction of "severely degraded" data into concrete harm. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) ("[N]ot all inaccuracies cause harm or present any material risk of harm."). NWMLS does not allege that even one of its 30,000+ subscribing brokers stopped using NWMLS or that it otherwise suffered any database-related pecuniary or reputational harm. CC ¶8. To the contrary, NWMLS's allegations confirm it suffered no injury at all (not even to its monopoly power). Brokers have no choice but to use NWMLS, and thus NWMLS could quickly force Compass to meet its dictates by cutting off Compass's access to the IDX data feed. Answer ¶¶36, 64, 68; CC ¶39. NWMLS's counterclaim allegations both destroy any claim of database injury NWMLS has and prove Compass's case that NWMLS has monopoly power.

Even if "severely degraded" data *alone* could be a concrete harm (it cannot), it is not *plausible* here. Given a generous interpretation, NWMLS alleges that the short-lived pre-marketing of some homes compromised NWMLS's database in one of two ways: either (1) the listings entered on NWMLS (at NWMLS's demand) after this brief moment of pre-marketing did not include pre-marketing days or price changes (information otherwise available through Compass), which NWMLS deems "inaccuracies"; or (2) during the pre-marketing phases, Compass brokers complied with homesellers' direction not to list properties on NWMLS.

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 10
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

NWMLS's pleadings defeat any *plausibility* in the first theory: they identify a potential population of *seven* listings that *could* have had any of the value-degrading "inaccuracies" they attribute to 3PM marketing. These examples come from the Real Estate News article (reporting the first 3PM-marketed property in Seattle and its listing on NWMLS after five days) and Instagram post (announcing a Bainbridge Island home as one of seven Compass Private Exclusives in Washington state as of March 25, 2025) that NWMLS incorporates by reference. CC ¶33, n.6 (article), CC ¶32, n.4 (post). NWMLS's own allegations do not identify even one such listing. Thus, at best, NWMLS predicates its claim of "severely degraded" data on seven properties listed on NWMLS (at its demand) that may have been pre-marketed for at most a few weeks before NWMLS blocked the practice on April 17, 2025. Around that time, NWMLS had 14,459 active listings (it now boasts 18,563).[11] Even indulging NWMLS's theory of 3PM-generated inaccuracies in listing data, that "harm" impacted an infinitesimal 0.00048412753 percent of listings—a quantum of degradation less than *de minimis.*

"Degradation" by omission is equally implausible. The omission of a handful of properties that sellers *chose* not to list on NWMLS from late March through April 17, 2025, did not plausibly degrade the *value* of NWMLS (again, it alleges no lost revenue or users). At most, this exercise of seller choice threatened NWMLS's claim of *monopolist* right to all listings, which is not a concrete injury.

Finally, any alleged imperfections in these listings (1) arose from NWMLS's own conduct in forcing Compass brokers to list these properties, (2) are consistent with listings permitted by NWMLS rules, as "days on market" and price history do ***not*** always reflect the total amount of time a home has been available for sale, e.g., where a home was first for sale by owner, and (3) are

---

[11] https://www.nwmls.com/real-estate-news/monthly-market-snapshot/#market-snapshot-graphic (last visited May 19, 2026) (comparing total active listings in April 2025 and April 2026). NWMLS's active listing count is judicially noticeable as it is publicly posted by NWMLS and not subject to reasonable dispute. Fed. R. Evid. 201(b).

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 11
Case No. 2:25-cv-00766-JNW

disclaimed by NWMLS's Terms of Use. Under the bold heading "**Reliance on Information Posted,**" those terms provide:

> The information presented on or through the Website is made available solely for general information purposes. We do not warrant the accuracy, completeness, or usefulness of this information. Any reliance you place on such information is strictly at your own risk. We disclaim all liability and responsibility arising from any reliance placed on such materials by you or any other visitor to the Website, or by anyone who may be informed of any of its contents.[12]

They also include a "**Disclaimer of Warranties**":

> Neither the NWMLS nor any person associated with the NWMLS makes any warranty or representation with respect to the completeness, security, reliability, quality, accuracy, or availability of the Website. Without limiting the foregoing, neither the NWMLS nor anyone associated with the NWMLS represents or warrants that the Website, its content, or any services or items obtained through the Website will be accurate, reliable, error-free…[13]

In other words, NWMLS already tells consumers and brokers that its listings may be imperfect.

So too, NWMLS's alleged monetary injury is not fairly traceable to Compass. NWMLS alleges it incurred costs "communicat[ing]" with Compass and enforcing its rules in the weeks preceding NWMLS's April 15 demand that Compass submit all listings in exchange for restored access to the IDX data feed. CC ¶¶35, 64. But it fails to plead facts suggesting the costs associated with a few weeks of enforcement directed to a handful of 3PM-marketed listings plausibly exceeded expenses it would have incurred to police its rules or respond to communications from members in the normal course. *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942 (9th Cir. 2021) ("Organizations divert resources when they alter their resource allocation to combat the challenged practices, but not when they go about their business as usual." (citation modified)).[14] And even if

---

[12] https://www.nwmls.com/terms-of-use/ (last visited May 19, 2026).

[13] *Id.*

[14] Likewise, a "diversion of resources to litigation *or investigation in anticipation of litigation* does not constitute an injury in fact sufficient to support standing[.]" *Fair Hous. Council of Oregon v. Travelers Home & Marine Ins. Co.*, 2016 WL 7423414, at *4 (D. Or. Dec. 2, 2016), *report and*

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 12
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

NWMLS had plausibly alleged incremental enforcement costs (it did not), those costs lack the required nexus to an alleged misrepresentation underlying NWMLS's CPA or fraud claims (not one of which NWMLS pleads with particularity). *Lujan*, 504 U.S. at 560 (injury must be fairly traceable *to the allegedly unlawful conduct*). If plausibly alleged, incremental costs NWMLS incurred to police compliance with its rules might conceivably support standing for claims premised on breach of those rules, but NWMLS's CPA and fraud claims do not turn on whether or not Compass's conduct violated NWMLS rules; they are predicated on alleged (although unidentified) misrepresentations to consumers.

Further, any alleged monetary injury was self-inflicted. "To the extent that an injury is self-inflicted or due to the plaintiff's own fault, the causal chain is broken and standing will not be established." *Craghtten v. United States*, 790 F. Supp. 3d 984, 990 (D. Idaho 2025) (quoting *Makaryan v. Volkswagen Grp. of Am., Inc.*, 2017 WL 6888254, at *6 (C.D. Cal. Oct. 13, 2017)); *Washington v. United States Dep't of Health & Hum. Servs.*, 482 F. Supp. 3d 1104, 1118 (W.D. Wash. 2020) ("'self-inflicted' costs that Washington imposes based on its desire to inform Washingtonians of changes in federal law" did not confer standing). Through the amended pleading, NWMLS—in addition to claiming its (speculative) database injury—now claims monetary injury through costs it voluntarily incurred to create the alleged database injury (*i.e.*, by forcing Compass to enter the listings it now hypothesizes were deceptive). NWMLS cannot manufacture its own harm.

**B.    Declaratory Judgment.**

NWMLS asks this Court to declare "that its Bylaws and Rules, on which NWMLS relies to prohibit the Private Phases of Compass's 3PM and related practices, are lawful and enforceable, and that the Private Phases of Compass's 3PM and related practices violate NWMLS's Bylaws and Rules." CC ¶52. This is either a mirror image of Compass's claims, moot, or inadequately pleaded.

---

*recommendation adopted*, 2017 WL 90373 (D. Or. Jan. 10, 2017) (citation modified); *see* CC ¶35 (claiming "expenditure of funds for legal resources").

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 13
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," but only "[i]n a case of actual controversy." 28 U.S.C. §2201(a). The "actual controversy" requirement mirrors the "case or controversy" requirement in Article III. *United States v. Schlenker*, 24 F.4th 1301, 1306 (9th Cir. 2022). "To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Even in a case of actual controversy, a court can decline to entertain a counterclaim for declaratory judgment. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008) ("Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment."). Using this discretion, courts have "dismiss[ed] 'mirror image' counterclaims that are redundant of affirmative defenses or claims found in the complaint." *Perez v. Roofing*, 2016 WL 898545, at *2 (W.D. Wash. Mar. 9, 2016) (striking declaratory judgment counterclaims); *Englewood Lending Inc. v. G & G Coachella Invs., LLC*, 651 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009) (dismissing counterclaim that "overlap[ed] with the relief sought" by plaintiffs); *see also* Fed. R. Civ. P. 12(f) (courts "may strike from a pleading…any redundant…matter"). Such counterclaims "do[] not serve the intended purpose of the Declaratory Judgment Act" as the counterclaimant "do[es] not live in fear of a potential suit; they are already obliged to defend against one." *Englewood Lending*, 651 F. Supp. 2d at 1145; *cf. Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) ("federal courts should generally decline to entertain reactive declaratory actions.").

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 14
Case No. 2:25-cv-00766-JNW

1. **The sole "actual controversy" is a mirror image of Compass's claims.**

The only "actual controversy" about the lawfulness and enforceability of NWMLS's rules is already raised by Compass's claims: whether NWMLS's rules and its use of those rules to block competition violate antitrust laws or tortiously interfere with Compass's contracts and business expectancies. As recognized by federal courts, including in this Circuit, mirror image counterclaims like NWMLS's here do "not serve the intended purpose [of] the Declaratory Judgment Act. Here [NWMLS] do[es] not live in fear of a potential suit; [it is] already obliged to defend against one." *Englewood Lending*, 651 F. Supp. 2d at 1145. The Court can and should, in its discretion, dismiss NWMLS's claim.

2. **NWMLS's request for a declaration that 3PM violates its rules is moot.**

As for NWMLS's request for a declaration that 3PM violates its rules, there is no actual controversy as the issue is moot. The doctrine of mootness "is embedded in Article III's case or controversy requirement" and "requires that an actual, ongoing controversy exist at all stages of federal court proceedings…. A case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome' of the litigation." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086-87 (9th Cir. 2011). NWMLS claims the dispute is not moot because it "expects" Compass to "press forward with 3PM" if it does not enforce its rules. CC ¶48. But NWMLS concedes it already forced Compass into compliance with its reading of the rules—*i.e.*, Compass is not currently offering 3PM to Seattle area customers (pending the outcome of its own claims against NWMLS). The issue of whether 3PM violates NWMLS's rules is not "live."

3. **NWMLS cannot seek a declaration on unspecified laws.**

Redundant dispute aside, NWMLS identifies no "actual controversy" as to the enforceability of NWMLS's rules.

NWMLS seeks a declaration that its "Bylaws and Rules" in their entirety are "lawful and enforceable" without specifying which provisions are at issue or what legal standards they purportedly satisfy. It is unclear, for example, whether NWMLS invokes antitrust, contract, or some

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 15
Case No. 2:25-cv-00766-JNW

other legal framework. This omission underscores the absence of an actual controversy: NWMLS asks for a broad endorsement of its rules in the abstract. The Declaratory Judgment Act does not authorize such open-ended relief.

Because NWMLS has not alleged an actual controversy distinct from Compass's claims, its declaratory judgment claim should be dismissed. *See Perez*, 2016 WL 898545, at \*2; *Englewood Lending*, 651 F. Supp. 2d at 1145.

**C.    Fraudulent Misrepresentation**

NWMLS predicates its fraud claim on its theory of listing "inaccuracies," irrelevant statutory duties, and accurate depictions of 3PM in Compass's marketing. The claim fails because NWMLS does not identify any specific misrepresentation of fact by Compass, let alone one for which NWMLS can claim ignorance and reliance.

NWMLS must adequately allege nine elements of fraud:

> (1) representation of an **existing fact**, (2) **materiality**, (3) **falsity**, (4) the speaker's **knowledge** of its falsity, (5) **intent** of the speaker that it should be acted upon by the plaintiff, (6) plaintiff's **ignorance** of its falsity, (7) plaintiff's **reliance** on the truth of the representation, (8) plaintiff's **right to rely** upon it, and (9) **damages** suffered by the plaintiff.

*Baxter v. Nat'l Safety Council*, 2006 WL 2473467, at \*3 (W.D. Wash. Aug. 25, 2006), *aff'd*, 275 F. App'x 632 (9th Cir. 2008) (emphasis added); *Adams v. King Cnty.*, 192 P.3d 891, 902 (Wash. 2008). It pleads none. NWMLS's allegations confirm its knowledge of 3PM and success blocking it. That is the opposite of deception, ignorance, reliance, or damage. Lacking any of the required elements for itself, NWMLS resorts to vague claims that "on information and belief" 3PM defrauds buyers and sellers without identifying a single example. CC ¶68.

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 16
Case No. 2:25-cv-00766-JNW

Summit Law Group, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

**1.    NWMLS cannot manufacture fraud from unpleaded breaches of irrelevant statutes.**

NWMLS asserts fraud on statutory duties brokers owe homebuyers and homesellers, *not* NWMLS.[15] Although these statutes might be relevant to a buyer's or seller's claim for fraud or breach of statutory duties relating to a transaction, NWMLS does not explain their relevance to *its* claim of fraud.[16] At any rate, NWMLS pleads no possible breach: it identifies no buyer, no seller, and no relevant transaction.

Instead, NWMLS pleads generalities, asserting "[o]n information and belief" that "Compass brokers who engaged in the Private Phases of 3PM and related practices made material misrepresentations in NWMLS listings that (a) subverted their obligations to deal honestly and in good faith *with buyers* and the *buyers' brokers*, and (b) circumvented their duty to disclose material facts *to third parties*." CC ¶68 (emphasis added); CC ¶71, p.33 ("Compass encouraged and directed brokers to input false or misleading information into NWMLS listings"). Setting aside that this theory is predicated on duties owed and statements made to third parties, not NWMLS, the absence of specifics independently compels dismissal. "[A]llegations of fraud based on information and belief usually do not satisfy the particularity requirements under rule 9(b)." NWMLS particularizes *no* facts of this "fraud": it does not identify a single buyer, broker, or other consumer allegedly deceived by any listing; a single NWMLS listing containing purportedly "false or misleading information"; what specific statement in any listing was false and why; or any details that would allow the Court to assess materiality.

---

[15] RCW 18.86.030 lists broker "duties to their principal and to all parties in a transaction" (including the duty of loyalty owed homeowners). RCW 18.86.090 provides the circumstances under which a principle can be vicariously liable for a broker's breach of the statute. These statutes do not require brokers and homeowners to comply with any NWMLS rules or submit listings to NWMLS (which, regardless, would not help NWMLS plead *fraud*).

[16] Likewise, NWMLS's pleadings also cite Substitute Senate Bill 6091, claiming this new law "codified" NWMLS's Rule 2. 3PM fully complies with this new law which, contrary to NWMLS's suggestion, neither entitles NWMLS to listings nor codifies its rules. At any rate, the statute is not yet in effect and is irrelevant to their claims for past damages. CC ¶40 ("The Public Marketing Law takes effect June 11, 2026.").

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 17
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

In short, even indulging NWMLS's theory that it can claim fraud in listings based on duties owed others, the claim is inadequately pled.

### 2.      No false representations.

NWMLS's other "fraud" theories also lack *any* particularized misrepresentation or omission of then-existing material fact.

*First*, NWMLS engages in word games, attacking the labels "Compass Private Exclusives" and "Compass Coming Soon," *defined in Compass marketing*, claiming "Compass deceptively marketed 'non-exclusive' listings as 'private exclusives,'" CC ¶69, and "deceptively marketed properties as 'coming soon' where properties were not, in fact, 'coming soon' but were available for purchase," CC ¶70. Neither label is a false representation.

Starting with "private exclusives," as NWMLS well knows, a property can be both a "private exclusive" and a "non-exclusive listing." The latter term simply means the homeowner is free to work with any broker. *See* RCW 18.86.020(2)(b)(iii) ("The services agreement must include…Whether the agency relationship is exclusive or nonexclusive, and if the principal is a buyer, checkbox options for the buyer to select either an exclusive or nonexclusive relationship…."). This has nothing to do with 3PM or whether the property is marketed on an MLS or as a private exclusive. The mere overlap in the word "exclusive" does not create a contradiction, much less a misrepresentation—the terms of art simply hold different meanings.

The same is true for "coming soon." Compass's public materials make clear that this label refers to properties coming soon *to the MLS*. It does not suggest that the property is not yet available for purchase in any broader sense, and NWMLS offers no specific allegations suggesting otherwise. NWMLS's attempt to recast these straightforward labels as deceptive rests on semantics, not any plausible allegation of falsity.

*Finally*, NWMLS claims "Compass failed to disclose *to customers* that their listings contained false or misleading information." CC ¶¶71-72, p.33. NWMLS alleges no supporting facts.

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 18
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

Its failure to identify a single deceived "customer[]" renders its claim of deception implausible on its face. Further, NWMLS itself tells customers listings may contain inaccuracies.

More fundamentally, the detailed descriptions of 3PM on Compass's website defeat the suggestion that anything about 3PM is dishonest. No aspect of 3PM marketing misrepresents anything to buyers or brokers. Rather, each phase of 3PM markets a listing broadly to the public in a different way, to meet homeowner needs. NWMLS's claims target fully disclosed (indeed, publicized) 3PM marketing of homes by Compass brokers in the weeks before NWMLS blocked the practice. Then and now, any buyer or broker can find out whether a property was pre-marketed through 3PM, including from the listing broker. *See Docklight Brands Inc. v. Tilray Inc.*, 2022 WL 2718125, at \*10 (W.D. Wash. May 27, 2022), *report and recommendation adopted*, 2022 WL 2872241 (W.D. Wash. July 21, 2022) ("A fraudulent non-disclosure claim fails where the plaintiff 'had access to the same or similar information' as the defendant…."). NWMLS alleges no facts to suggest otherwise.

### 3. No intent, ignorance, reliance, or damages.

*Ignorance.* NWMLS does not plead ignorance of the falsity it alleges. NWMLS *admits* it well understood 3PM and knew that the listings it demanded Compass brokers enter could reflect "days on market" and pricing data from the date of entry. Yet, NWMLS still demanded the at-issue properties be listed. CC ¶36. This leaves only two possibilities: either NWMLS feigns its concern for deception now or it cares more about maintaining its monopoly than it ever did about listing integrity. NWMLS cannot claim fraud "where [it] ha[d] information, knowledge, or experience indicating the falsity of the alleged misrepresentation," as is the case here. *Tandiama v. NovaStar Mortg., Inc.*, 2005 WL 1287996, at \*3 (W.D. Wash. May 31, 2005).

*Reliance.* NWMLS cannot establish reliance because it alleges none. *E.g.*, *Wilson v. Bank of Am., N.A.*, 2013 WL 275018, at \*6 (W.D. Wash. Jan. 24, 2013) (no reliance where "Wilsons fail to allege in their pleadings that they took any actions in reliance on the allegedly fraudulent Assignment"). NWMLS does not allege, even in conclusory fashion, that *it* relied on any alleged

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 19
Case No. 2:25-cv-00766-JNW

misrepresentation. It claims, rather, that "[c]onsumers, brokers, appraisers and members of the public rely upon NWMLS data in real estate transactions to be accurate." CC ¶74, p.33. NWMLS cannot claim unidentified non-parties' alleged reliance for itself.

*Intent.* By NWMLS's own allegations, Compass directed the challenged representations to consumers and their brokers, not NWMLS, and NWMLS pleads no facts suggesting that Compass intended that *NWMLS* act on the "misrepresentations." *Adams*, 192 P.3d at 902.

*Damages.* NWMLS fails to plead damages resulting from any alleged fraud. Its theory of database degradation is speculation and it does not plausibly allege, let alone particularize, lost revenue or subscribers, reputational harm, or any measurable economic injury from a misrepresentation by Compass. This independently warrants dismissal.

**D.    CPA**

NWMLS's CPA claim fails for similar reasons.

The stated intent of the CPA is "to protect the public and foster fair and honest competition." RCW 19.86.920. To allege a violation, NWMLS must adequately plead five elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) business or property injury to NWMLS; and (5) proximate causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). Rule 9(b)'s heightened pleading standard applies to CPA claims where, as here, the claim is predicated on allegations that a party had "the knowledge and intent to deceive their customers." *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020); *e.g.*, CC ¶¶23, 51. NWMLS's CPA claim mirrors its fraud claim and must be pleaded with particularity. *Nemykina*, 461 F. Supp. 3d at 1058.

NWMLS fails to plead elements one and five, let alone with particularity.

**1.    No unfair or deceptive act.**

NWMLS does not allege conduct deemed *per se* unfair, so it must identify "an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 20
Case No. 2:25-cv-00766-JNW

practice not regulated by statute but in violation of public interest." *Klem v. Washington Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013). It does not.

To establish a "deceptive" act or practice requires showing it "had the capacity to deceive a substantial portion of the public." *Panag v. Farmers Ins. Co. of Washington*, 204 P.3d 885, 894 (Wash. 2009). "Deception exists 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." *Id.* at 895 (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)).

The standard for "unfair" acts is not as well defined. Washington courts often look to a three-factor consumer-oriented test[17] from federal law under which an act or practice is unfair if it (1) causes or is likely to cause substantial injury to consumers (2) which is not reasonably avoidable by consumers themselves and (3) not outweighed by countervailing benefits to consumers or to competition. *Greenberg*, 553 P.3d at 640-41.

Whatever the meaning of unfair or deceptive, the CPA does not capture "acts or practices which are reasonable in relation to the development and preservation of business." RCW 19.86.920 ("It is, however, the intent of the legislature that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business[.]"); *Travis v. Washington Horse Breeders Ass'n, Inc.*, 759 P.2d 418, 424 (1988); *Boeing Co. v. Sierracin Corp.*, 738 P.2d 665, 677 (Wash. 1987) ("Where conduct is motivated by legitimate business concerns, there can be no violation of RCW 19.86.").

***No Deception.*** NWMLS claims deception of consumers from the listings NWMLS demanded for (unidentified) homes pre-marketed during the short window before NWMLS blocked that practice. *See* CC ¶57 ("By failing to properly account for days on market and supply full pricing

---

[17] The three factors reference *consumers*, suggesting the test may be limited to consumer transactions. *See Greenberg v. Amazon.com, Inc.*, 553 P.3d 626, 639 (Wash. 2024), *as amended* (Aug. 16, 2024) (noting unjustified *consumer* injury is primary focus of FTC Act from which these factors were adopted). Compass applies this test to NWMLS's decidedly non-consumer claims as the Supreme Court has yet to set forth an alternate standard for private disputes like this.

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 21
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

data associated with listings that are marketed for sale during the Private Phases, Compass makes material misrepresentations that have the capacity to deceive…"). But, as with its fraud claim, NWMLS offers no substantiating allegations to make its claims of "material misrepresentations" plausible. *See supra*, §IV.C. Also fatal to its CPA claim, NWMLS's predicates deception on the conclusory allegation that buyers "have no way" to know whether a property was pre-marketed—a claim *undermined* by Compass materials linked in NWMLS's pleading explaining how a property's status as a Private Exclusive or Compass Coming Soon *is* publicly available.[18] NWMLS's theory of deception separately fails because its own Rules permit this "deception" in other contexts and, relatedly, because its Terms of Use warn consumers listing information may be incomplete. *Gray v. Amazon.com, Inc.*, 653 F. Supp. 3d 847, 858 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024) (disclosures were unlikely to mislead reasonable consumer where "the applicable policies do not conceal Amazon's use of Alexa-captured voice data for advertising purposes, but instead contemplate that very practice"). NWMLS also does not explain how Compass is responsible for "deception" in listings NWMLS itself forced with knowledge that some Compass brokers had (briefly) offered 3PM services to Seattle area homesellers.

*No Unfairness.* As for unfairness, NWMLS claims 3PM is unfair because it allows for pre-marketing. CC ¶56. NWMLS cannot overcome the statute's carveout for reasonable business practices. 3PM offers homeowners a choice allowed by the National Association of Realtors.[19] NWMLS does not plausibly claim this nearly ubiquitous business practice is unreasonable.

### 2.    No proximately caused injury to NWMLS's business or property.

NWMLS also fails to allege proximately caused injury to its business or property. *Montes v. SPARC Grp. LLC*, 2026 WL 900481, at *4 (Apr. 2, 2026) (requiring "objective economic loss, not

---

[18] CC ¶20, n. 1; https://www.compass.com/private-exclusives/ (last visited May 19, 2026); *see also* supra n.6.

[19] *See* https://www.nar.realtor/about-nar/policies/mls-clear-cooperation-policy (last visitedMay 20, 2026); *cf.* Answer ¶66 (NWMLS "does not follow NAR policy"). The Court may take judicial notice of this policy. *See supra* n.2.

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 22
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

subjective disappointment"). NWMLS fails to tie its claims of objective economic loss to the alleged unfair or deceptive conduct; rather, it claims costs it elected to incur to enforce its own rules. *See supra* §IV.A.2.

**E.     Tortious Interference**

NWMLS's tortious interference claims fail for lack of plausible allegations regarding wrongful interference or damages.

"A plaintiff asserting a tortious interference claim must establish that '(1) there exists a valid contractual relationship or business expectancy, (2) the defendant had knowledge of the same, (3) the defendant's intentional interference induced or caused a breach or termination of the relationship or expectancy, (4) the defendant's interference was for an improper purpose or by improper means, and (5) the plaintiff suffered damage as a result.'" *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1188 (W.D. Wash. 2019) (cleaned up). NWMLS fails to plead elements four (wrongful interference) or five (damages).

**1.     No wrongful interference.**

"'"Interference for improper purpose" is interference with an intent to harm' the plaintiff…." *Zunum Aero, Inc. v. Boeing Co.*, 2022 WL 3346398, at \*12 (W.D. Wash. Aug. 12, 2022) (quoting WPI 352.03). Interference by improper means requires *both* interference *and* an independent "duty not to interfere." *Greensun Grp., LLC v. City of Bellevue*, 436 P.3d 397, 408 (Wash. Ct. App. 2019); *Libera v. City of Port Angeles*, 316 P.3d 1064, 1068 (Wash. Ct. App. 2013). Such a duty can be established by "a statute, regulation, recognized common law, or established standard of trade or profession." *Greensun*, 436 P.3d at 408; *Moore v. Com. Aircraft Interiors, LLC*, 278 P.3d 197, 200 (Wash. Ct. App. 2012).

NWMLS does not claim improper purpose. Its pleadings nowhere suggest Compass intended to harm NWMLS. In fact, its allegations suggest the opposite: that Compass sought to offer an innovative solution to homeowners, give its brokers a competitive edge, fulfill legal obligations to its clients, and challenge rules it believes are unlawful.

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 23
Case No. 2:25-cv-00766-JNW

As for improper means, it claims that "Compass's interference was based on improper means because Compass knew, or had reason to know, that directing its brokers to misrepresent material information in listings was a breach of brokers' obligations under at least RCW 18.86.030(b) and (d), RCW 18.85.361(3), and NWMLS Rules." CC ¶77. Thus, NWMLS predicates its claim of improper means on Compass's alleged violations of statutes, its Rules, and perhaps "recognized common law"—i.e., its fraud claim.[20]

If NWMLS claims "improper means" through its other claims, all of which fail, its tortious interference claim must be dismissed. *E.g.*, *Zunum*, 2022 WL 3346398, at *13 (plaintiff could not establish improper means based on claims that should be dismissed).

Nor can NWMLS rely on alleged violations of RCW 18.86.030(b), (d) and RCW 18.85.361(3). CC ¶77. These provisions govern brokers' duties to *clients* during transactions and the grounds upon which the Washington Real Estate Commission can discipline brokers.[21] They do not define any duty owed by Compass (or any of its brokers) to NWMLS as necessary to establish interference by improper means. *See Greensun*, 436 P.3d at 408.

Further, NWMLS has not plausibly alleged any violation of these statutes. *E.g.*, *Moore*, 278 P.3d at 200-01 (improper means based on statutory violation requires showing each element of statutory claim). NWMLS identifies no misled buyer or negatively impacted transaction; makes no plausible allegations that off-NWMLS marketing constitutes "material facts" that are not readily ascertainable; alleges no facts showing that "days on market" or price history as reported and interpreted by NWMLS is understood in the industry or by consumers to include off-MLS marketing activity; and offers no example of a Compass broker making a false statement or failing to truthfully

---

[20] NWMLS claims improper means through the same inadequately pleaded theory of material misrepresentations underlying its fraud and CPA claims. *See* CC ¶¶57-62, 68-73, p.33; *id.* ¶¶76-77, p.34.

[21] E.g., these statutes set forth a broker's obligations to act honestly and in good faith during transactions, to disclose material facts not readily ascertainable to parties to a transaction, and to not knowingly commit material fraud, misrepresentation, or concealment. RCW 18.86.030(b), (d); RCW 18.85.361(3).

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 24
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

answer questions from a buyer or broker regarding pre-NWMLS marketing. Rather, NWMLS speculates that unidentified buyers *might* have been misled by allegedly inaccurate "days on market" or "price history" data for a handful of listings Compass brokers delivered to NWMLS between March and April 2025, after briefly marketing them outside of NWMLS during the same period. *See* CC ¶¶19, 24, 29, 39, 55-57, 68-72, 77. Such conjecture cannot establish that Compass brokers violated any statutory duties or that Compass knowingly encouraged such alleged violations.

Finally, NWMLS cannot rely on alleged violations of its own rules as "improper means." CC ¶77. NWMLS's rules—the very restraints that Compass challenges in this action—are internal policies of a private organization that regulate the conduct of member brokers and brokerages who use NWMLS's listing platform. *See* CC ¶¶8-9; Answer ¶¶1, 10, 26, 33. There are no allegations that such rules codify well recognized, industry-wide standards of conduct, nor would such allegations be plausible. To treat NWMLS's rules as an "established standard of trade or profession" as a matter of law, especially where, as here, Compass has plausibly alleged that such rules are anticompetitive and an industry anomaly,[22] would give them unjustified authority.

### 2.    No pecuniary loss.

NWMLS fails to plausibly allege pecuniary loss caused by improper interference. *See Tamosaitis v. Bechtel Nat., Inc.*, 327 P.3d 1309, 1314 (Wash. Ct. App. 2014); *supra* §IV.A.2 (no plausible theory of pecuniary injury caused by Compass).

---

[22] *See* Dkt. 86 (Order).

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 25
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

## V.   CONCLUSION

NWMLS's counterclaims fail and should be dismissed. NWMLS has already tried and failed to cure the deficiencies in its claims. Further amendment would be futile. The Court should dismiss the damages counterclaims with prejudice.

DATED this 28th day of May, 2026.

SUMMIT LAW GROUP, PLLC

*Attorneys for Plaintiffs Compass, Inc. and Compass Washington, LLC*

I CERTIFY THAT THIS MOTION CONTAINS 8,394 WORDS, IN COMPLIANCE WITH THE LOCAL CIVIL RULES.

By: */s/ Alexander A. Baehr*
    Alexander A. Baehr, WSBA #25320
    alexb@summitlaw.com
    Eva Sharf Oliver, WSBA #57019
    evao@summitlaw.com
    Selby P. Brown, WSBA No. 59303
    selbyb@summitlaw.com
    Molly J. Gibbons, WSBA No. 58357
    mollyg@summitlaw.com
    315 Fifth Avenue S., Suite 1000
    Seattle, WA  98104
    Telephone: (206) 676-7000

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 26
Case No. 2:25-cv-00766-JNW

## VI.   CERTIFICATION OF CONFERRAL

In accordance with Section 5.6 of the Standing Order, the parties conferred prior to the filing of this Motion.  The parties were unable to reach an agreement that would obviate the need for the instant Motion.

By *s/ Alexander A. Baehr*
Alexander A. Baehr, WSBA #25320

PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S
AMENDED COUNTERCLAIMS - 27
Case No. 2:25-cv-00766-JNW

Summit Law Group, pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001