The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

COMPASS, INC. and COMPASS WASHINGTON, LLC,

        Plaintiffs,

    v.

NORTHWEST MULTIPLE LISTING SERVICE,

        Defendant.

Case No. 2:25-cv-00766-JNW

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS**

NOTING DATE: June 25, 2026

PLAINTIFFS' REPLY ISO MOTION TO DISMISS
DEFENDANT'S AMENDED COUNTERCLAIMS
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT..................................................................................................................... 1

        A.      Standing. ............................................................................................................... 1

                1.      NWMLS makes only conclusory allegations of injury.............................. 1

                2.      NWMLS ignores that standing is claim-specific. ..................................... 3

                3.      NWMLS cannot claim associational standing. ......................................... 4

        B.      Fraud. .................................................................................................................... 4

                1.      NWMLS does not satisfy Rule 9(b)........................................................... 4

                2.      NWMLS cannot avoid Rule 9(b). ............................................................... 6

                3.      NWMLS's fraud claim is otherwise defective............................................ 7

        C.      Consumer Protection Act........................................................................................ 8

                1.      NWMLS concedes it must satisfy Rule 9(b). ............................................ 8

                2.      NWMLS's CPA claim is not particularized or plausible............................ 8

                3.      NWMLS's own allegations defeat its theory of proximately caused
                        injury. ........................................................................................................ 9

        D.      Tortious Interference............................................................................................ 10

                1.      No wrongful interference........................................................................... 10

                2.      No pecuniary loss...................................................................................... 11

        E.      Declaratory Judgment. ......................................................................................... 11

                1.      NWMLS cannot seek a declaration on SB 6091. ..................................... 11

                2.      The claim is otherwise a mirror image. .................................................... 11

        F.      Compass's Request for Judicial Notice is Proper. ................................................ 12

III.    CONCLUSION................................................................................................................ 13

PLAINTIFFS' REPLY ISO MOTION TO DISMISS
DEFENDANT'S AMENDED COUNTERCLAIMS
Case No. 2:25-cv-00766-JNW - i

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

## I.    INTRODUCTION

NWMLS's opposition confirms that all of its already amended claims fail and should be dismissed with prejudice. Despite extensive discovery and ample opportunity to refine its allegations, NWMLS fatally fails to identify even one specific misrepresentation by Compass to support its primary theory of fraudulent listings. Nor does NWMLS plausibly allege any injury to itself from its swift takedown of Compass's transparently marketed offer of innovative 3PM marketing for Seattle-area homesellers. The Court should dismiss the counterclaims with prejudice.

## II.    ARGUMENT

**A.    Standing.**

**1.    NWMLS makes only conclusory allegations of injury.**

NWMLS's arguments on injury-in-fact ask this Court to accept conclusory allegations as true or assume facts nowhere alleged.

***Abstract database injury.*** NWMLS argues it does not matter that its pleading suggests only a "mathematically negligible" impact to its database. Resp., p.10. Not so. A handful of *possibly* flawed data fields in a database of 10,000-plus listings is not a "concrete" injury. Mot., pp.10-13.[1]

NWMLS tellingly does not defend its allegation of a "severely degraded" database. CC ¶¶50, 69; *see generally* Opp. For good reason: NWMLS offers no allegations to make the claim of "sever[ity]" plausible or the database injury otherwise concrete. Instead, NWMLS argues "pennies" would suffice, Resp., p.11, ignoring that it has not alleged a single penny of losses from any database injury, *see* Mot., p. 10. Without allegations of either a meaningful injury or resulting economic harm, the database injury is purely abstract.

***Unpled diversion of resources.*** NWMLS's new theory of diverted resources relies on unpled facts and inapplicable case law. Citing nothing, NWMLS claims this case "does not involve the mere expenditure of resources as part of NWMLS's ordinary activities….NWMLS was forced to

---

[1] Pin citations are to internal pagination.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS - 1
Case No. 2:25-cv-00766-JNW

divert resources from its mission of providing informational and educational services to members." Resp., p.10. But NWMLS alleges no "informational and educational services" or mission, let alone impairment thereof. *See generally* CC. Nor did NWMLS allege it was forced to divert resources from any business activities. *See* CC ¶35 (alleging "unnecessary costs" of enforcing its rules) *and id.* ¶64 ("increased operational costs, compliance and enforcement expenses").

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) is inapposite. There, a fair housing organization, Housing Opportunities Made Equal (HOME), plausibly alleged it was forced to divert resources away from "core business activities" (counseling services) because of the defendant apartment owner's racial steering practices. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024) (describing *Havens*); *Havens*, 455 U.S. at 366. HOME specifically alleged Havens's steering practices "frustrated [HOME's] counseling and referral services, with a consequent drain on resources" and sued alongside individual plaintiffs, including testers HOME had employed to determine whether Havens practiced racial steering and a black renter who was falsely told no apartments were available. *Havens*, 455 U.S. at 368-69. On this record, the Court found HOME adequately alleged "injury in fact." *Id.* at 379. NWMLS makes no comparable allegations. CC ¶¶35, 64.

NWMLS also ignores that "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024); *id.* at 395 (finding plaintiffs were "incorrect" that under *Havens* "standing exists when an organization diverts its resources in response to a defendant's actions"). *Havens* and related authority addressing organizational standing "in a fair housing context" show the relative ease with which fair housing organizations can establish standing to sue under the Fair Housing Act. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 904 (9th Cir. 2002); *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (finding "[a]ny violation of the FHAA" would frustrate plaintiff fair housing organization's mission). NWMLS is not a fair housing

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS - 2
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

organization; it is a multiple listing service whose ordinary business activities include enforcement of its restrictive rules.[2]

### 2.    NWMLS ignores that standing is claim-specific.

On causation, NWMLS ignores that it must demonstrate standing for "*each claim.*" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 431 (2021) (emphasis added). NWMLS must show a "causal connection between the injury" it alleges and "the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

NWMLS offers one causation theory for all claims: that NWMLS incurred "enforcement costs" because Compass violated "rules that Compass had agreed, as a member of NWMLS, to follow." Resp., pp. 12-13 (arguing the enforcement costs were "necessitated by noncompliance" with NWMLS's rules).

Even indulging NWMLS's implausible claim that enforcing its listing rules is something other than normal course business activity, this theory establishes causation for *none* of NWMLS's claims. NWMLS does not bring a breach of contract claim predicated on a rule violation by Compass. NWMLS primarily asserts parallel fraud and CPA claims arising from *unspecified* listing misrepresentations and Compass's marketing labels. The causation inquiry on the fraud claim, for example, is whether NWMLS's reliance on specific fraudulent statements proximately caused the sole injury NWMLS identifies (enforcement costs). NWMLS does not even try to address this issue for *any* claim. *Compare* Mot., pp.12-13 (arguing, e.g., "NWMLS's CPA and fraud claims do not

---

[2] In claiming Compass's authority supports NWMLS, NWMLS again analogizes to a fair housing case. Resp., p.11 (citing only *Fair Housing Council of Oregon v. Travelers Home & Marine Insurance Co.*, 2016 WL 7423414 (D. Or. Dec. 2, 2016)). Compass cited *Fair Housing* in a footnote for the specific proposition NWMLS cannot predicate standing on litigation costs. Mot., n.14. As NWMLS highlights, the court found the "frustration of mission" requirement satisfied. As the court explained, specific to Fair Housing Act cases, the Ninth Circuit "has significantly relaxed this prong of the organizational standing analysis, and has held that any violation of the FHAA by definition frustrates the mission of a fair housing organization whose goals include the elimination of housing discrimination." *Fair Hous. Council of Oregon*, 2016 WL 7423414, at *3 (D. Or. Dec. 2, 2016) (citation modified).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISMISS DEFENDANT'S AMENDED
COUNTERCLAIMS - 3
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

turn on whether or not Compass's conduct violated NWMLS rules"), *with* Resp., pp.12-13 (nowhere addressing this issue).

### 3. NWMLS cannot claim associational standing.

NWMLS does not identify a single member who would "have standing to sue in their own right." *Satanic Temple v. Labrador*, 149 F.4th 1047, 1050 (9th Cir. 2025) (citation omitted); *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (requiring "specific allegations establishing that at least one *identified* member had suffered or would suffer harm" (emphasis added)). This requirement is excused where "it is relatively clear, rather than merely speculative, that one or more members have been or will be adversely affected by a defendant's action, and where the defendant need not know the identity of a particular member to understand and respond to an organization's claim of injury." *Vasquez Perdomo v. Noem*, 148 F.4th 656, 676 (9th Cir. 2025). Here, it is not "relatively clear" that or how any member was affected.

Nor can NWMLS meet the third prong of associational standing as NWMLS cannot seek alleged monetary damages of its members without their participation. *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990) ("[N]o federal court has allowed an association standing to seek monetary relief on behalf of its members….[C]laims for monetary relief necessarily involve individualized proof and thus the individual participation of association members[.]").

## B. Fraud.

NWMLS's opposition confirms its fraud theory is untethered to any specific acts, let alone acts for which NWMLS can claim detrimental reliance.

### 1. NWMLS does not satisfy Rule 9(b).

No argument excuses NWMLS's failure to identify a *single* example of *any* listing that deceived *anyone*. NWMLS did not just fail to plead, in its words, "every evidentiary detail," Resp., p.16—it pleaded *no* evidentiary detail, instead relying on theoretical misrepresentations. Resp., p.16. But Rule 9(b) demands specifics: "the who, what, when, where, and how of the misconduct

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS - 4
Case No. 2:25-cv-00766-JNW

charged," and "what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). The "who" cannot be a defendant entity or unidentified brokers. *See Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F.Supp.3d 1123, 1134 (S.D. Cal. 2014) ("[M]erely attributing a misrepresentation to a corporate entity is inadequate; a specific person must be named, or at least identified."); *818 Media Prods., LLC v. Wells Fargo Bank, N.A.*, 2017 WL 3049565, at *5 (C.D. Cal. Feb. 9, 2017) ("[T]o state a fraud-based claim against a corporate entity…, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." (internal quotation marks omitted)). And the "what" and "how" cannot be "relevant categories of misrepresented or omitted facts." Resp., p.16 (emphasis omitted); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) ("[t]he pleader must state the time, place, *and specific content* of the false representations as well as the identities of the parties to the misrepresentation." (emphasis added)).

Here, as in *State of Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631 (N.D. Cal. 1997), NWMLS offers only "the *nature* of [an] allegedly fraudulent scheme"—there, "'short-filling' customers' prescriptions." *Id.* at 634-35. As the court held in dismissing the fraud claim, Rule 9(b) requires "*specific* examples":

> [P]laintiff…fails to provide any *specific* examples of the time, place, or content of the allegedly fraudulent scheme. For instance, he fails to identify (1) any particular prescription which was "short-filled"; (2) any particular pharmacy or pharmacist engaging in the practice of "short-filling" prescriptions; or (3) any particular Walgreen customer who failed to obtain the remainder of a "short-fill" prescription…

*Id.* NWMLS likewise (at most) alleges the nature of alleged fraud without specifics—no person allegedly deceived by any listing or marketing; no particular false or misleading information; no specifics as to why any particular statement was false; no details that would allow this Court to assess materiality; and so on.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISMISS DEFENDANT'S AMENDED
COUNTERCLAIMS - 5
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Finally, NWMLS cannot evade its heightened pleading requirements by recasting its pleading deficiencies as factual disputes. NWMLS claims that whether the labels "Private Exclusive" and "Coming Soon" were "misleading in context depends on how they were used, what consumers and brokers reasonably understood, and what information was omitted," and therefore cannot be resolved on the pleadings. Resp., p.17. NWMLS ignores that to get past the pleading stage *NWMLS must plead the context in which these labels are allegedly used*, which context must also plausibly support a claim of fraud. NWMLS also ignores that *it* must identify the alleged "consumers and brokers" and plead whatever understanding they held. But even that would not provide the basis for *NWMLS* to pursue a fraud claim: NWMLS is *not* a broker or consumer.

NWMLS meets no element of fraud. Compass's "Private Exclusive" and "Coming Soon" marketing labels are, in fact, the *only* representations for which NWMLS's pleading identifies any specific context. That context is Compass's website, linked in NWMLS's pleading, which explains the meaning of each label on the very pages on which they are used. CC ¶20, n.1. NWMLS identifies no other specific context. *See generally* CC. NWMLS cannot predicate a fraud claim on hypothetical contexts in which these labels allegedly might confuse unidentified consumers and brokers. And again, NWMLS does not even purport to claim *it* was misled by these labels (or any other words), a fundamental requirement for *it* to pursue a fraud claim.

## 2.    NWMLS cannot avoid Rule 9(b).

The alleged misrepresentations are not within Compass's sole possession and control as might justify relaxing the requirements of Rule 9(b). Resp., p.16 (arguing "Compass's private listings were private" and that "NWMLS lacks full visibility"). NWMLS filed its counterclaims *after* Compass responded to discovery, including by specifically identifying 3PM-marketed properties. *See, e.g.*, Dkt. 109-1, ECF p.20. Even in NWMLS's amended allegations filed after Compass's first motion to dismiss, NWMLS fails to specify *any* misrepresentation in a 3PM-marketed property listing—not even with respect to publicly marketed properties and others NWMLS knew of without discovery. Resp., p.18 (NWMLS "investigate[d], hunting and pecking

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISMISS DEFENDANT'S AMENDED
COUNTERCLAIMS - 6
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

for information to identify properties at issue.").[3] NWMLS's continued failure to identify even one example of deception confirms that its fraud claim rests on speculation about what *could* have misled third parties, not facts of any fraud on NWMLS.

Nor can NWMLS avoid its burden to specify misrepresentations by pretending it asserts fraud by omission. Resp., p.16 ("Compass's misrepresentations stem from omissions"). The relaxed particularity standard for pleading fraud by omission exists because a plaintiff cannot point to a specific false statement when a defendant says nothing at all. *See, e.g.*, *Short v. Hyundai Motor Co.*, 444 F.Supp.3d 1267, 1280 (W.D. Wash. 2020) (failure to disclose a known defect to a purchaser). A representation is not treated as an omission because it "stem[s]" from one. Resp., p.16; *In re Natera Prenatal Testing Litig.*, 664 F.Supp.3d 995, 1005 (N.D. Cal. 2023) ("Plaintiffs also allege that certain of the statements Natera made in its marketing materials were misleading by omission; such partial misrepresentation claims are subject to the typical requirements of Rule 9(b)."). Here, NWMLS claims affirmative misrepresentations as the basis of its fraud theory. For example, "days on market," under NWMLS's theory, is an alleged misrepresentation that NWMLS was required to identify. *See Anderson v. Apple Inc.*, 500 F.Supp.3d 993, 1019 (N.D. Cal. 2020) ("Unlike in a pure omissions case, in a partial representation case, the plaintiff *will* be able to specify the time, place, and specific content of an omission as would a plaintiff in an affirmative false representation claim."). And even in pure omission cases, a plaintiff must still plead some particulars. *Short*, 444 F.Supp.3d at 1280. NWMLS pleads none.

### 3.    NWMLS's fraud claim is otherwise defective.

*Reliance*. NWMLS makes no attempt to plead *its own* reliance. CC ¶74, p.33. It now argues, however, that "NWMLS's database and users rely on complete and accurate property information." Resp., p.16 (emphasis added); *see also id.* at 18. NWMLS cannot invoke (unidentified) third-party

---

[3] *See, e.g.*, CC ¶32, n.4 (linking Compass CEO's March 25, 2025 Instagram post with the address of the seventh Private Exclusive in Washington); https://www.instagram.com/p/DHn64egxco-/?img_index=1.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS - 7
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

users' reliance to support its fraud claim. *See Hall v. John L. Scott Real Est.*, 2023 WL 195344, at *15 (Wash. Ct. App., Jan. 17, 2023) (fraud requires "a plaintiff's" reasonable reliance on the representation); *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 285 (Wash. Ct. App. 2008) (fraud requires that the speaker intended the representation "be acted upon by the plaintiff" and "plaintiff's reliance on the truth of the representation"). Nor does NWMLS explain how its "database" relied on the truth of any listing. NWMLS fails to meet its minimum burden to identify *a person* who did something in reliance on a false representation in a Compass listing. *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) ("With respect to the one pitchbook the TAC states Great Pacific received, the TAC fails to plead whether anyone at Great Pacific read the pitchbook or how Great Pacific personnel relied on the pitchbook. Thus, the TAC failed to plead with particularity the "who, what, when, where, and how" of its reliance.").

**Damages.** NWMLS's two-sentence damages argument offers *no* nexus between its alleged damages and any misrepresentation. *See* Resp., p.18.

**C.   Consumer Protection Act.**

**1.   NWMLS concedes it must satisfy Rule 9(b).**

NWMLS's failure to particularize its fraud theory also dooms its CPA claim. NWMLS does not address Compass's argument that Rule 9(b)'s heightened pleading standard applies to CPA claims where, as here, the claim is predicated on allegations that a party had "the knowledge and intent to deceive their customers." *Nemykina v. Old Navy, LLC*, 461 F.Supp.3d 1054, 1058 (W.D. Wash. 2020) (applying Rule 9(b) to CPA claim); *e.g.*, CC ¶¶23, 51. NWMLS fails to offer any of the requisite particulars of unfair or deceptive listings or marketing terms. And as with the fraud claim, NWMLS cannot circumvent Rule 9(b) by pitching its pleading failures as fact issues. Resp., p.20.

**2.   NWMLS's CPA claim is not particularized or plausible.**

In arguing it plausibly alleged unfairness, NWMLS relies only on *Deegan v. Windermere Real Est./Ctr.-Isle, Inc.*, 391 P.3d 582 (Wash. Ct. App. 2017), a Washington Court of Appeals

decision. There, the court considered "hypothetical facts" at the pleading stage as permitted under state rules. *Id.* at 586-87 ("We regard the plaintiff's allegations in the complaint as true and consider hypothetical facts outside the record. Any hypothetical situation conceivably raised by the complaint defeats a CR 12(b)(6) motion if it is legally sufficient to support plaintiff's claim." (citation modified)). Here, by contrast, NWMLS's *actual* allegations must meet the federal plausibility standard, including Rule 9(b). *Nemykina*, 461 F.Supp.3d at 1058.

As for deception, courts can and do dismiss CPA claims on the pleadings where the deception (here, unspecified misrepresentations and publicly defined marketing labels) is not plausible. *See, e.g.*, *Gray v. Amazon.com, Inc.*, 653 F.Supp.3d 847, 859 (W.D. Wash. 2023), *aff'd*, 2024 WL 2206454 (9th Cir. May 16, 2024) (dismissing fraud-based CPA claim on the pleadings; finding that "[i]n light of Amazon's disclosures, consumers would have 'reason to anticipate' their injury and 'the means to avoid it' – i.e., by reviewing the Alexa Terms and declining to purchase and use an Alexa-enabled device.").[4]

### 3.    NWMLS's own allegations defeat its theory of proximately caused injury.

NWMLS again alleges causation by claiming "*Compass…*submitted or caused brokers to submit" (unidentified) 3PM property listings onto NWMLS, which "degraded NWMLS's products and services" and "NWMLS incurred costs responding to and remedying the conduct." Resp., pp.21-22. Setting aside the deficient "harms," *supra* §2.A., NWMLS's own conduct defeats causation. NWMLS concedes that it required submission of the very listings it now claims degraded its database, *knowing* properties had been marketed using Compass's 3PM strategy. CC ¶36 ("NWMLS advised Compass…how to have the IDX Data Feed license restored *by providing evidence that all of Compass's listings had been entered*[.]" (emphasis added)). Indeed, this allegation defeats causation *and* injury (as relevant to standing and the merits): in demanding submission, NWMLS

[4] NWMLS does not meaningfully address its Terms of Use, which disclaim the "accuracy" and "completeness" of listing information on its database. Having expressly warned users that listing information may be inaccurate or incomplete, NWMLS cannot plausibly claim unidentified inaccuracies were necessarily deceptive.

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

presumably ascribed value to having the listings in its database, notwithstanding any "degradation" it now claims.

**D.    Tortious Interference**

**1.    No wrongful interference.**

NWMLS concedes its tortious interference counterclaim is predicated solely on alleged "improper means." Resp., pp. 22-23. NWMLS asks the Court to treat NWMLS's own rules as the "established standard of trade or profession" Compass allegedly violated. *Id.*, p.23. NWMLS's rules—the very restraints Compass has plausibly alleged are anticompetitive and anomalous—are internal policies of a private organization. *See* CC ¶¶8-9; Answer ¶¶1, 10, 26, 33. The allegations that NWMLS invokes[5] do not plausibly establish these rules codify well-recognized, industry-wide standards of conduct.

NWMLS cannot rely on RCW 18.86.030 and 18.85.361 as the source of "improper means." CC ¶17. NWMLS does not dispute that those provisions do not create a duty owed by Compass (or any of its brokers) to NWMLS. *See* Resp., p.23. Contrary to NWMLS's argument, not all conduct that violates a statute constitutes "improper means." *Id.* Because the referenced statutes do not establish that Compass "had a duty not to interfere," *Greensun Grp., LLC v. City of Bellevue*, 436 P.3d 397, 408 (Wash. Ct. App. 2019), they cannot be used to establish the "improper means" element of tortious interference. Further, NWMLS failed to plausibly allege any violation of the cited statutes—an issue NWMLS ignores. Mot., pp.24-25; Resp., p.23.

Finally, to the extent NWMLS claims "improper means" through its CPA or fraud counterclaims, Resp., p.23, its tortious interference counterclaim must be dismissed given that those claims fail. *E.g.*, *Zunum*, 2022 WL 3346398, at *13 (plaintiff could not establish improper means based on claims that should be dismissed).

---

[5] Resp., p.23 (citing Compl. ¶32; CC ¶9).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS - 10
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

## 2.    No pecuniary loss.

NWMLS identifies no broker who allegedly breached an agreement with NWMLS because of Compass, let alone resulting damages. And NWMLS cannot rely on "harm" it attributes to *Compass's* alleged rule violations, even if plausibly alleged. *See Reninger v. State Dep't of Corr.*, 951 P.2d 782, 788 (Wash. 1998) ("A party cannot tortiously interfere with its own contract.").

## E.    Declaratory Judgment.

### 1.    NWMLS cannot seek a declaration on SB 6091.

NWMLS now asserts it "seeks a declaration that the Private Phases of 3PM violate Washington's newly-amended law restricting private marketing and requiring public marketing of property listings." Resp., pp.13-14; *see also id.* at 15 (claiming "RCW chapter 18.86 now effectively codifies Rule 2, making Compass's private marketing practices not only a violation of NWMLS's Rules, but also a violation of state law."). This request is not pled. CC ¶¶45-52. Regardless, NWMLS cannot seek a declaration under SB 6091 because NWMLS has no private right of action under the new law, which is enforced by the Washington State Department of Licensing.[6] *Nikolich v. Progressive Cas. Ins. Co.*, 2026 WL 445566, at *4 (W.D. Wash. Feb. 17, 2026) (the Declaratory Judgment Act "does not provide a cause of action when a party…lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief." (quoting *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022)); *N. Cnty. Commc'ns Corp. v. California Catalog & Tech.*, 594 F.3d 1149, 1154–55 (9th Cir. 2010) (same).

### 2.    The claim is otherwise a mirror image.

NWMLS's alternative articulation of its declaratory relief claim likewise fails. NWMLS claims "NWMLS seeks a declaration that its enforcement of its Rules…is appropriate in response to Compass's private marketing scheme." Resp., p.15. This is, at best, a mirror image. *See Perez v.*

---

[6]    https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Bills/Session%20Laws/Senate/6091-S.SL.pdf?q=20260622171159;    https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Bill%20Reports/Senate/6091-S%20SBR%20FBR%2026.pdf?q=20260622170909

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISMISS DEFENDANT'S AMENDED
COUNTERCLAIMS - 11
Case No. 2:25-cv-00766-JNW

*Roofing*, 2016 WL 898545, at *2 (W.D. Wash. Mar. 9, 2016); *Englewood Lending Inc. v. G & G Coachella Invs., LLC*, 651 F.Supp.2d 1141, 1145 (C.D. Cal. 2009). Whether NWMLS's "enforcement of its Rules" is "appropriate" or not, to the extent a live dispute exists, is the subject of *Compass's* claims.

NWMLS's mootness argument only highlights that the live issues are a mirror image of Compass's claims. Resp., p.15 (arguing there are live issues "especially" because "Compass continues to defend its private marketing scheme, litigate its lawfulness, and attack NWMLS's authority to prohibit such practices").

**F.    Compass's Request for Judicial Notice is Proper.**

In its motion, Compass asked the Court to take judicial notice of portions of the NWMLS, Compass, and NAR websites, specifically: (a) NWMLS's terms of use; (b) Compass's public description of 3PM; (c) NWMLS's reported total active listings in April 2025 and April 2026; and (d) NAR's  statement regarding its clear cooperation policy. Mot., nn.3, 7, 11-12, 19. Compass also asked the Court to consider specific portions of Compass's website[7] and various articles and social media posts based on their explicit reference or incorporation by reference in the Counterclaims. *E.g.*, Mot., nn.4-7, 9-10, 18. NWMLS does not oppose Compass's requests for consideration predicated on explicit reference or incorporation by reference,[8] nor does it dispute Compass's request for consideration of NAR's website. Resp., pp.24-25. NWMLS opposes only Compass's request for judicial notice of portions of its website and NWMLS's website, *id.*, and does so based on mischaracterizations of Compass's requests.

---

[7] Compass asked the Court to consider the portion of its website discussing 3PM under both the doctrines of judicial notice and incorporation by reference. Mot., n.7. The Court need only find one of the doctrines applies to consider it.

[8] The Court need not accept as true allegations that contradict documents incorporated by reference in the Counterclaims. *E.g.*, *Spy Optic, Inc. v. Alibaba.com, Inc.*, 163 F.Supp.3d 755, 762, 764-65 (C.D. Cal. 2015); *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
DISMISS DEFENDANT'S AMENDED
COUNTERCLAIMS - 12
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

Compass does not ask the Court to take any portions of NWMLS's and Compass's websites as true. Rather, Compass asks the Court to take judicial notice of *the existence of* specific statements and content—namely, how Compass describes 3PM to the public (on a website incorporated by reference into the complaint), the disclaimers in NWMLS's Terms of Use (which courts routinely find judicially noticeable), and the fact that NWMLS's own website stated that it had 14,459 active listings in April 2025. Mot., pp.5, 11-12, nn.3, 7, 11-12. The existence of this content is judicially noticeable because it is "not subject to reasonable dispute" given it is capable of "accurate[] and read[y] determination from sources[—i.e., Compass's and NWMLS's websites—]whose accuracy cannot be reasonably questioned." FRE 201(b)(2).[9] Accordingly, Compass requests that the Court take judicial notice of the cited portions of Compass's and NWMLS's websites and "not accept as true allegations contradicted by [such]…judicially notice[able]" facts. *Spy Optic*, 163 F.Supp.3d at 762, 764-65; *St. Clare v. Gilead Scis., Inc.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### III.  CONCLUSION

NWMLS's counterclaims should be dismissed with prejudice.

DATED this 25th day of June, 2026.

SUMMIT LAW GROUP, PLLC

*Attorneys for Plaintiffs Compass, Inc. and Compass Washington, LLC*

I CERTIFY THAT THIS BRIEF CONTAINS 4,189 WORDS, IN COMPLIANCE WITH THE LOCAL CIVIL RULES.

By: */s/ Diana Siri Breaux*
Diana Siri Breaux, WSBA #46112
dianab@summitlaw.com
Alexander A. Baehr, WSBA #25320
alexb@summitlaw.com
Eva Sharf Oliver, WSBA #57019
evao@summitlaw.com

---

[9] NWMLS does not argue the cited webpages' accuracy can "be reasonably questioned."

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS - 13
Case No. 2:25-cv-00766-JNW

SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

Selby P. Brown, WSBA No. 59303
selbyb@summitlaw.com
Molly J. Gibbons, WSBA No. 58357
mollyg@summitlaw.com
315 Fifth Avenue S., Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS - 14
Case No. 2:25-cv-00766-JNW